FILED

SEP 07 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br>v.<br><br>PEP RESEARCH, LLC, a Texas Limited Liability Company dba International Peptide; BRIAN REYNDERS, an individual; FRED REYNDERS, an individual; MASTERCARD INTERNATIONAL INCORPORATED, a Delaware Corporation; AUTHORIZE.NET, a Utah Corporation; AMAZON PAYMENTS, a Washington Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 16cv2328-WQH-BLM<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the motion to dismiss filed by Defendants PEP Research LLC, Brian Reynders, and Fred Reynders. (ECF No. 11).

**I. BACKGROUND**

On December 30, 2016, Plaintiff Nutrition Distribution LLC filed a first amended complaint. (ECF No. 11). The amended complaint alleges a cause of action for false advertising in violation of § 42(a)(1)(B) of the Lanham Act against Defendant PEP Research LLC dba International Peptide ("PEP") and a cause of action for a

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against Defendants PEP, Brian Reynders, Fred Reynders, Mastercard International Incorporated, Authorize.net, Amazon Payments, and Does 1 through 10.[1] *Id.*

On January 13, 2017, PEP, Brian Reynders, and Fred Reynders ("Defendants") filed a motion to dismiss for failure to state a claim. (ECF No. 11). On February 20, 2017, Plaintiff filed a response in opposition. (ECF No. 13). On February 27, 2017, Defendants filed a reply. (ECF No. 14).

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff is a "cutting edge sports supplement manufacturer and marketer" and "leader in the nutritional supplement market, specifically for bodybuilding." (ECF No. 9 at ¶ 24). "Plaintiff has several categories of bodybuilding products, including pre-workouts, muscle-gainers, fat burners, and male performance enhancement." *Id.* ¶ 25. "Plaintiff has introduced numerous natural supplements that directly compete with Defendant's 'Research Chemicals,' including but not limited so, 'Advanced PCT,' "Ultra Reps,' 'Stacked BCAA,' 'SuperSize,' 'Gym Juice,' and 'German Creatine.'" *Id.* ¶ 28.

Defendant PEP is a competing supplement company. *Id.* ¶ 29. Defendant PEP is engaged in "false and misleading advertising and statements in connection with its various purported 'research peptides and chemicals,' including but not limited to, numerous well-known prescription only drugs, Selective Androgen Receptor Modulators ('SARMS') and synthetic peptides (collectively, the 'Research Chemicals')." *Id.* ¶ 1. Defendant PEP offers "prescription-only drugs" such as Sildenafil Citrate and Talafadil for sale on its website. *Id.* ¶ 2. "Like the other products advertised and available for sale on its website, Defendant [PEP] has

---

[1] The docket reflects that no proof of service has been filed for Defendants Mastercard International Incorporated, Authorize.net, and Amazon Payments. Further, Plaintiff mentions Visa and American Express in the portion of the complaint related to the RICO cause of action but the complaint does not otherwise name Visa and American Express as defendants.

mislabeled these products as 'not for human consumption' and intended for laboratory research only.'" *Id.*

"Defendant [PEP] markets and sells various SARMs, which are synthetic drugs with similar effects to illegal anabolic steroids . . . [and] may pose significant health and safety risks to consumers." *Id.* ¶ 4. Defendant PEP "fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to bodybuilders, competitive athletes, and other consumers seeking to improve their physical performance and physiques." *Id.* ¶ 5.

"Furthermore, Defendant [PEP] advertises and offers for sale various synthetic peptides, which cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potentially harmful effects." *Id.* ¶ 6. "Defendant [PEP] mislabels these products as 'not for human consumption' and 'intended for laboratory research only,' but clearly markets its 'research chemicals' to consumers for personal use." *Id.* ¶ 6.

> Defendant represents to consumer that its so-called "research chemical" Sermorelin is commonly used as a "doping substance in sports," and assures consumers of the product's safety for personal use, "Sermorelin alone or combined with GHRP-2 and GHRP-6 is a harmless and efficient way to stimulate and enhance your body's growth hormone production."

*Id.* ¶ 7.

> [T]he product description for Defendant's "research chemical" Clenbuterol acknowledges human consumption, despite its purported "disclaimers" – "Clenbuterol has been popularized in the public mind recently by media potrayals of off-label use for fat loss, as well as some professional athlete doping scandals involving the drug." [Defendant PEP] then proceeded to post advertisements on its Facebook account containing a free product give away contest for Clenbuterol, and to award a personal fitness trainer as the contest recipient of a free bottle of Clenbuterol."

*Id.* ¶ 8. "Defendant's use of falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers . . . into believing that they are purchasing a product with different characteristics." *Id.* ¶ 50. "The deception is material because it is likely to influence a consumer's purchasing decision, especially

if the consumer is unaware of the serious risks of using these purported 'Research Chemicals,' and/or steroids or illegal substances." *Id.* ¶ 51. "[Defendant PEP's] 'Research Products' directly compete with Plaintiff's products . . . ." *Id.* ¶ 53. "Defendant's false and misleading advertising is harmful to the marketplace for dietary and natural nutritional supplements, including Plaintiff's products, and potentially to individual consumers." *Id.* ¶ 39. "[U]sers of [Defendant PEP's] 'Research Chemicals' have little incentive to use Plaintiff's natural nutritional supplements until they are hurt or the 'Research Chemicals' are taken off the market." *Id.* "Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to [Defendant PEP] and the loss of goodwill in Plaintiff's products." *Id.* ¶ 54.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and

reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

# IV. DISCUSSION

## A. Lanham Act

Defendant PEP contends that the false advertising claim under the Lanham Act must be dismissed because Plaintiff fails to plead a false or misleading statement, deception, or materiality of the alleged deception. (ECF No. 11-1 at 5-7). Defendant PEP contends that Plaintiff fails to allege a false advertising injury and that PEP's alleged statements are "inapposite to the type of statements that generally give rise to false advertising injury." *Id.* at 6, 7-8.

Plaintiff contends that the amended complaint sufficiently alleges false and misleading statements, deception, and materiality. (ECF No. 13 at 3-5). Plaintiff contends that it has standing to bring a Lanham Act claim because Plaintiff adequately alleges "a commercial injury based on a misrepresentation that harms its ability to compete." *Id.* at 6.

The Lanham Act provides,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1); *see also Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).

> The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself

to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). "[A] false advertising cause of action under the Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). However, the alleged false statement must "contain the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action under the Act." *Id.* at 246.

Plaintiff alleges that Defendant PEP markets and advertises various "research chemicals" for personal use and consumption despite the fact that the products are unsafe for these purposes. Specifically, Plaintiff alleges that Defendant PEP

> represents to consumers that its so-called "research chemical" Sermorelin is commonly used as a "doping substance in sports," and assures consumers of the product's safety for personal use, "Sermorelin alone or combined with GHRP-2 and GHRP-6 is a harmless and efficient way to stimulate and enhance your body's growth hormone production." . . . Similarly, the product description for Defendant's "research chemical" Clenbuterol acknowledges human consumption, despite its purported "disclaimers" – "Clenbuterol has been popularized in the public mind recently by media portrayals of off-label use for fat loss, as well as some professional athlete doping scandals involving the drug." International Peptide then proceeded to post advertisements on its Facebook account containing a free product give away contest for Clenbuterol, and to award a personal fitness trainer as the contest recipes of a free bottle of Clenbuterol.

(ECF No. 9 at ¶¶ 7-8). Plaintiff alleges that the "use of falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers . . . into believing they are purchasing a product with different characteristics." *Id.* ¶ 50. Finally, Plaintiff alleges that the "deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is unaware of the serious risks of using these purported 'Research Chemicals,' and/or steroids or illegal substances." *Id.* ¶ 51. The Court concludes that these factual allegations are sufficient to support a reasonable inference that Defendant PEP made "a false statement of fact

... in a commercial advertisement about its own ... product." *See Southland Sod Farms*, 108 F.3d at 1139. Further, the Court concludes that Plaintiff alleges facts sufficient to support a reasonable inference that the statements "actually deceived or ha[ve] the tendency to deceive a substantial segment of its audience" and that "deception is material, in that it is likely to influence the purchasing decision." *Id.*

Additionally, Defendant PEP contends that the Lanham Act cause of action must be dismissed for failure to adequately plead a false advertising injury. (ECF No. 11-1 at 7-8). To bring a false advertising suit under § 43(a) of the Lanham Act, a "plaintiff must show: (1) a commercial injury that is based on misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (quoting *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995)). Where a plaintiff directly competes with a defendant and the defendant's misrepresentation has a tendency to mislead consumers, a "misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826-27 (9th Cir. 9011).

Plaintiff has alleged that it "introduced numerous natural nutritional supplements that directly compete with Defendant's 'Research Chemicals.'" (ECF No. 9 ¶ 28). Further, Plaintiff alleges, "Defendant's false and misleading advertising is harmful to the marketplace for dietary and natural nutritional supplements, including Plaintiff's products.... Indeed, users of [PEP's] 'Research Chemicals' have little incentive to use Plaintiff's natural nutritional supplements until they are hurt or the 'Research Chemicals' are taken off the market." *Id.* ¶ 39. Plaintiff alleges that it has suffered "economic loss of money and reputational injury by the diversion of business from Plaintiff to [PEP]." *Id.* ¶ 54. The Court concludes that Plaintiff has alleged sufficient facts to plead a false advertising injury under the Lanham Act.

**B. Primary Jurisdiction Doctrine**

Defendants contend that dismissal is warranted pursuant to the primary

jurisdiction doctrine because "[t]his case involved technical and unsettled questions about the propriety of the chemicals and peptides which would be more adequately addressed after the FDA or the appellate court provides guidance." (ECF No. 11-1 at 9). Plaintiff contends that the primary jurisdiction doctrine is inapplicable to this matter. (ECF No. 13 at 7-8).

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). The doctrine allows a federal court to abstain from deciding a case within its subject matter jurisdiction if it determines that the "initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The application of the doctrine of primary jurisdiction is "committed to the sound discretion of the court." *Id.* at 781 (citing *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). "[C]ourts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.*

In this case, Defendants seek dismissal of the case pursuant to the primary jurisdiction doctrine because the amended complaint is "replete with disingenuous allegations about health concerns" and "squarely falls within the purview of the [Food and Drug Administrations's] authority." (ECF No. 11-1 at 9). Plaintiff's claims require the Court to determine whether PEP's advertisements are false and misleading because they market "research chemicals" for personal use and consumption despite

also labeling the products as "not for human consumption." (ECF No. 9). The technical and policy expertise of the Food and Drug Administration is not necessary to determine whether the advertisements are misleading. *See Nutrition Distribution, LLC v. New Health Ventures, LLC*, No. 16-CV-02338-BTM-MDD, 2017 WL 2547307, at *3 (S.D. Cal. June 13, 2017). The Court concludes that this matter does not warrant dismissal under the primary jurisdiction doctrine. *See, e.g., Nutrition Distribution LLC v. Custom Nutraceuticals LLC,* 194 F. Supp. 3d 952, 955 (D. Ariz. 2016).

**C. RICO, 18 U.S.C. § 1962**

Defendants contend that Plaintiff fails to state a RICO claim because the amended complaint fails to sufficiently allege RICO conduct, the existence of an enterprise entity distinct from its alleged members, and a requisite predicate act. (ECF No. 11-1 at 10-11). Defendants contend that Plaintiff also fails to plead a RICO claim based on conspiracy. *Id.* at 11. Defendants contend that Plaintiff "cannot use RICO as a means to circumvent the FDCA's express prohibition against private enforcement." *Id.* Defendants contend that Plaintiff lacks standing to bring the RICO claim because it fails to adequately allege injury and causation. *Id.* at 12.

Plaintiff contends that it adequately alleges racketeering activity. (ECF No. 13). Plaintiff contends that the amended complaint alleges the predicate act of "the introduction or delivery for introduction into interstate commerce of a misbranded drug . . . as well as misbranding" and wire fraud "by including defendants' payment processors." *Id.* at 9. Plaintiff contends that it may bring a RICO claim "based on allegations of mail or wire fraud (in the form of deceptive advertising)." *Id.* at 9. Plaintiff contends that the amended complaint adequately pleads a quantifiable injury through allegations that Defendants' racketeering activities have diverted sales to Defendants' website, which is in direct competition with Plaintiff. *Id.* at 10.

The Racketeer Influenced and Corrupt Organizations ("RICO") Act provides for civil and criminal liability. *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C. §

- 9 -

16cv2328-WQH-BLM

1964(c)). "Under RICO's civil enforcement mechanism, 'any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." *Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C. § 1964(c)). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Id.* (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

"Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).

Pursuant to 18 U.S.C. § 1962(c),

> It shall be unlawful for any person employed by or associated with any enterprise engages in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

18 U.S.C. § 1962(c). "The elements of a civil RICO claim [under § 1962(c)] are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)); *see also Odom*, 486 F.3d at 547; *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years." *Canyon Cty*, 519 F.3d at 972. Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

Plaintiff alleges that Defendants Fred Reynders and Brian Reynders "formed [PEP] to sell illegal peptides through www.internationalpeptide.com . . . which is engaged in a comprehensive scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises, including the illicit sale of peptides and other pharmaceuticals." (ECF No. 9 at ¶ 61). Plaintiff alleges, "Co-conspirators Mastercard, Visa, American Express, Authorize.net, and Amazon Payments handle merchant processing for [PEP] and benefit from [PEP's] sale of misbranded drugs." *Id.* ¶ 62.

Only certain violations of federal law, listed in 18 U.S.C. § 1961(1), constitute a RICO predicate act. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) ("'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code ..."). Plaintiff fails to allege sufficient facts to identify two or more instances in which Defendants violated a statute listed in § 1961(1). Accordingly, Plaintiff fails to allege sufficient facts to adequately allege a pattern of racketeering activity. Plaintiff fails to state a RICO cause of action pursuant to § 1962(c) or a cause of action pursuant to § 1962(d) for a conspiracy to violate RICO *United Bhd. of Carpenters*, 770 F.3d at 837 (holding that to state a claim under § 1962(c) a complaint must allege a pattern of racketeering activity); *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

**V. ATTORNEYS' FEES**

Plaintiff requests that the Court award attorneys' fees in the amount of $4,550 pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. Plaintiff contends that attorneys' fees are warranted because Defendants failed to provide "direct controlling authority" to the Court and pursued frivolous arguments. (ECF No. 13 at 10-11). Defendants contend that the motion to dismiss was not made in bad faith and that Defendants' counsel had a good faith argument why the non-binding authority should

not apply to this case. (ECF No. 14 at 9-10).

Pursuant to 28 U.S.C § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 sanctions must be supported by a finding of bad faith or recklessness. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan*, 78 F.3d at 436 (citing *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1989)). The bad faith requirement sets a high threshold. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Sanctions pursuant to § 1927 are also available for "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Federal courts also have inherent power to impose sanctions against attorneys and parties for bad faith conduct in litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-47 (1991). "Before awarding sanctions under its inherent powers . . . the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith." *Mendez v. Cty of San Bernardino*, 540 F.3d 1109, 1131 (9th Cir. 2008) (quoting *Primus*, 115 F.3d at 648) (internal quotation marks omitted), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

The Court does not find that Defendants' motion to dismiss was frivolous; nor does the Court find that Defendants' counsel litigated this motion recklessly or in bad faith. The Court declines to exercise its discretion to award attorneys' fees as a

sanction under either § 1927 or its inherent power.

**VI. CONCLUSION**

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants PEP Research LLC, Brian Reynders, and Fred Reynders (ECF No. 11) is DENIED as to the Lanham Act cause of action against Defendant PEP Research LLC and GRANTED as to the RICO cause of action against Defendants PEP Research LLC, Brian Reynders, and Fred Reynders.

DATED: 9/7/16

**WILLIAM Q. HAYES**
United States District Judge