Robert Tauler (SBN 241964)
Valerie Saryan (SBN 297115)
Tauler Smith LLP
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
(310) 590-3927
rtauler@taulersmith.com
vsaryan@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION, LLC

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION, LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>PEP RESEARCH, LLC, a Texas Limited Liability Company dba International Peptide; Brian Reynders an individual; Fred Reynders, an individual and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  16-CV-2328 WQH-BLM<br><br>**PLAINTIFF' NUTRITION DISTRIBUTION, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES AND PRODUCTION OF DOCUMENTS; MEMORANDUM IN SUPPORT THEREOF**<br><br>[Filed Concurrently with the Declaration of Valerie Saryan]<br><br>**[No Oral Argument]**<br><br>Hon. Barbara L. Major |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Nutrition Distribution, LLC ("Plaintiff" or "Nutrition Distribution") will, and hereby does, move to compel further responses and production of documents in response to Nutrition Distribution's Request For Production of Documents, Set One ("Requests") and Special Interrogatories ("Interrogatories") propounded to Defendants PEP Research, LLC dba International Peptide, Brian Reynders, and Fred Reynders ("Defendants" or "PEP Research").

This motion is made pursuant to Federal Rule of Civil Procedure ("FRCP") 37(a), Local Rule 7.1, and the Court's January 18, 2018 Order Setting Briefing Schedule [DKT # 24], on the grounds that good cause exists for the discovery of the matters sought to be discovered by Plaintiff's Requests for Production of Documents and Special Interrogatories (the "Requests"), and Defendants' failure to adequately comply with Plaintiff's Requests is without substantial justification warranting an award of sanctions.

This motion is based on this Notice of Motion and Motion; the concurrently filed memorandum of points and authorities; declaration of Valerie Saryan in support thereof; all pleadings and papers on file in this action; and on any other matters as the Court may properly consider.

DATED: January 31, 2018                TAULER SMITH LLP


                                       By:    /s/ Robert Tauler
                                              Robert Tauler
                                              *Attorneys for*
                                              NUTRITION DISTRIBUTION, LLC

---

NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES AND PRODUCTION            16cv2328

# MEMORANDUM OF POINTS AND AUTHORITIES

In accordance with Federal Rule of Civil Procedure ("FRCP") 37(a), Local Rule 7.1, and the Court's January 18, 2018 Order Setting Briefing Schedule [DKT # 24]Plaintiff Nutrition Distribution submits this Motion to Compel Defendants to produce documents responsive to Plaintiff's Requests for Production of Documents, Set One ("Requests" or "RFPs") and responses to Plaintiff's Special Interrogatories, Set One ("Interrogatories" or "SROGS").

## I. INTRODUCTION

Defendants have flagrantly abused the discovery process by fabricating a story about a software breach on their personal server that destroyed all relevant documents from their computers besides those that they believe help their case.  Defendants have provided no documents pertaining to their advertising, their product formulations, or their transaction records even though these documents are easily accessible outside of any "server" they might own.  For example, evidence of advertising, their product formulations, or their transaction records would be available from their social media accounts they operate (i.e. Facebook, Twitter, Mail Chimp, and YouTube), vendors which they do business (co-packers, formulators, and drop-shippers) and financial institutions they transact business with (credit cards, banks, and accountants), respectively.  All of the above documents plainly are accessible to Defendants independent of any damage to Defendants' server.

Moreover, Defendants' concocted story is directly contradicted by the minimal set of documents they actually turned over.  For example, although Defendants claim that the computer system upgrade caused a loss of all sales and financial data before June 2017, it has produced a record of an attempted purchase of Defendants' products by Plaintiff's counsel on December 10, 2016, and no other documents reflecting similar transactions.

Defendants' responses to Plaintiff's Interrogatories fare no better. Defendants consistently reference documents in response to Interrogatories without providing any detail. When responses are provided, they are nonsensical. For example, Defendants' claim that its gross revenues and net profits are the exact same number: $3,000.

Defendants' have failed to comply with their obligations and Defendants' counsel have taken wholly unjustified positions, necessitating this motion. Accordingly, Plaintiff requests that the Court order Defendants and their counsel pay Plaintiff's attorney's fees in bringing the present motion under FRCP 37(a)(5).

## II.    NATURE OF THE CASE

Defendants are an online bodybuilding retail store and their principals, who market, advertise and sell various bodybuilding drugs without a prescription, including Sildenafil Citrate (the generic form of Viagra) and Tadalafil (the generic form of Cialis); Selective Androgen Receptor Modulators" ("SARMs") and synthetic peptides (collectively, the "Illicit Products"). Defendants fail to disclose any of the recognized harmful side effects of using these drugs, or that many of the products are prescription-only, or banned by anti-doping groups. Defendants mislabel these products as "research chemicals" that are "not for human consumption" and "intended for laboratory research only," but clearly market and advertise the Illicit Products to bodybuilders and competitive athletes -- the same customers Plaintiff targets -- for personal consumption. By selling these drugs, Defendants have created a marketplace that directly takes market share away from legitimate companies selling compliant products like Plaintiff.

The current lawsuit seeks to end Defendants' false and misleading advertising of these drugs.

## III.   FACTUAL BACKGROUND

On November 13, 2017, Plaintiff propounded its First Set of Requests for Production of Documents (RFPs) and First Set of Special Interrogatories (SROGs) on Defendants. (Saryan Decl., ¶ 2, Ex. A). Defendants served responses and objections to

the Requests and Interrogatories on December 26, 2017. (Saryan Decl., ¶ 3, Ex. B). Defendants' responses to Plaintiff's Requests stated they would produce documents for all Requests.  However, Defendants did not produce the requested documents.

Plaintiff sent a Meet and Confer letter to Defendants on December 27, 2017 to address Defendants' deficiencies in the RFPs and SROGs. (Saryan Decl., ¶ 4, Ex. C). There were multiple emails back and forth regarding the dispute (Saryan Decl., Ex. Q). Defendants served Amended Responses to the SROGs on January 3, 2018. (Saryan Decl., ¶ 5, Ex. D).

The parties met and conferred telephonically on January 5, 2018 to address further deficiencies in Defendants' responses. (Saryan Decl., ¶ 6, Ex. E). Counsel set forth their positions in email correspondence between January 5 to January 17, 2018. (Saryan Decl., ¶ 7, Ex. F). Defendants explanation for its failure to provide documents was that a loss of data prior to June 2017 as a result of website redesign, computer system upgrade, and hosting the site on a new web server. (Saryan Decl., ¶ 15, Ex. P, Ex D (Amended Responses)). Defendants contend that all documents and data relating to PEP Research and International Peptide were deleted, including any and all information, data, and documentation of sales, financials, profits, customers, products, and inventory prior to June 2017. (Saryan Decl., Ex. D, P).  Defendants contend that they do not have any backup information, physical documentation, or alternate means of obtaining this deleted information. (Saryan Decl., Ex. Q).  Defendants did not produce any documents to support its claims.  In the meet and confer on January 5, 2018, Defendants claimed that they also lost all of its emails because its email server was also deleted, and all emails ever received and sent prior to June 2017 were forever deleted, and were not backed up anywhere. (Saryan Decl., ¶ 15, Ex. P Ex. O).

Defendants use a gmail account for their email, thus, Defendants have not claimed that they lost their email accounts.  However, Defendants only produced two emails from their Google email address, however they have not given a reason as to why

additional emails have not been produced.  (Saryan Decl., ¶ 15, Ex. P Ex. O).

After multiple efforts, the Parties were unable to reach an agreement, so Plaintiff's counsel requested the parties report their discovery dispute to the Clerk of Court. (Saryan Decl., ¶ 8, Ex. G). On January 17, 2018, the parties had a telephonic conference with the Clerk of Court to report their discovery dispute. (Saryan Decl., ¶ 9, Ex. H).

Even though Plaintiff's counsel met and conferred with Defendants' counsel in an effort to eliminate the need for this Motion, that process did not result in a resolution of the dispute regarding these Requests and Interrogatories, thereby making this Motion necessary.

Plaintiff requests that the Court issue an order (a) compelling Defendants to produce additional responsive documents and provide amended responses to the Requests; (b) compelling Defendants to provide amended responses to the Interrogatories; and (c) an award of attorney's fees under FRCP 37(a)(5)

## IV.   LEGAL STANDARDS

### A. Special Interrogatories

Each interrogatory must be answered "separately and fully[.]" Fed. R. Civ. P. 33(b)(1)(B).  Rule 33(d) provides a limited exception for the situation where "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." FRCP 33(d).  Rather, "under Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories—**not to avoid answering them."**  *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277–78 (C.D. Cal. 1999)(emphasis added).  Moreover, Rule 33(d) is not available alternative if interrogatory can be responded to more readily and conveniently by written answer. *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v Phillips Petroleum Co.* (1984, SD NY) 105 FRD 16, 44 (emphasis added).

### B. Requests for Production of Documents

Federal Rule of Civil Procedure 34(a)(1) states "any party may serve on any other party a request to produce and permit the party making the request ... to inspect and copy any designated documents ... which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a)(1). When a responding party fails to make the required disclosures, the propounding party may move to compel the production of documents. Fed. R. Civ. P. 37(a). For the purposes of determining whether a party has failed to respond to requests under Rule 34, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

The party to whom an inspection demand is issued must produce all documents that are in its "possession, custody or control." Fed. R. Civ. P. 34(a). "Control is defined as the legal right to obtain documents upon demand," *Int'l Union of Petroleum and Industrial Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989), and "[f]ederal courts construe 'control' very broadly under [Rule] 34." *Miller v. IBM*, 2006 U.S. Dist. LEXIS 27649, *9 (N.D. Cal. 2006).

## V. PLAINTIFF IS ENTITLED TO FURTHER PRODUCTION IN RESPONSE TO THE REQUESTS FOR DOCUMENTS.

### A. Document Requests Concerning Defendants Manufacture Of Illicit Products (RFPs Nos. 1, 3, 5, 6, 13, 20 and 24).

The Court should compel Defendants to produce documents related to their manufacture of the illicit products, since the contents of the products, and Defendant's advertising of same are directly at issue in the case. RFPs 1, 3, 5, 6, 13, 20 and 24 seek documents and communications relating to Defendants' production, manufacture, and suppliers of its illicit products; and any documents and communications related to Defendants purchase of ingredients used in its illicit products. Defendants responded to all of these request by indicating that it would produce all responsive non-privileged

documents. However, documents responsive to these categories were not produced. (Saryan Decl. ¶ 16).

In fact, Defendants only produced two invoices of purchases from manufacturers. One invoice is for a purchase of the illicit product, Letrozole, for $269.94 on February 19, 2017, which is outside the relevant time period set forth in the document requests. (SaryanDecl. ¶ 10, Ex. I). The second invoice is for the purchase of illicit products Clenbuterol hydrocholoride and Clomifene Citrate totaling $1995.00 on June 6, 2014. (Saryan Decl. ¶ 10, Ex. J).

When Plaintiff objected that two invoices over a span of four years is simply impossible considering the many products available for sale of Defendants' website, Defendants' for the first time concocted a story that all responsive documents were lost in June 2017 as a result of website redesign, computer system upgrade, and hosting the site on a new web server. (Saryan Dec., ¶ 15, Ex D)

This is problematic for multiple reasons. First, this action was originally filed in September of 2016, thus, steps should have been taken to preserve evidence related to this case. (*Disability Rights Council of Greater Washington v. Washington Metropolitan Transit Auth.* (D DC 2007) 242 FRD 139, 145-146—defendant ordered to produce backup data that was *not* reasonably accessible because of its "indefensible" failure to stop its e-mail system from obliterating readily accessible data for relevant period of time).

Second, there is no explanation how an ongoing online business can exist without the existence of records of its purchase, production, or manufacture of their products. Moreover, these records are readily accessible from Defendants' contractors, they are therefore all within Defendants' control because these documents can be easily obtained from multiple sources. For See Fed. R. Civ. P. 34(a). "Control is defined as the legal right to obtain documents upon demand," *Int'l Union of Petroleum and Industrial Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

---

**NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES AND PRODUCTION**  16cv2328
**6**

Finally, Defendants provide no excuse for their failure to produce documents from June 2017 until the present, even though their website remains in business. Defendants are plainly withholding information, should be compelled to provide the documents sought, and the Court should order Defendant and its counsel pay Plaintiffs attorneys fees for bringing the present motion in light of their untenable position.

**B. Document Requests Concerning Financial Information (RFPs 4, 8-13, 15, 19, 26, 27).**

Document Request numbers , 8-13, 15, 19, 26, 27 seek all documents relating to Defendants income from the sales of the Illicit Products, including financial statements, information identifying and relating to customers, retailers, stores or distributors of Defendants illicit products.  Plaintiff also requested the identity, website, webpage and contact email addresses of any and all webpages or on-line retail portals owned or operated by Defendants that sell the Illicit Products.  Again, Defendants' response stated that they would produce all responsive, non-privileged documents, yet only one set of tax documents and one transaction record (an attempted purchase from Plaintiff's counsel made as part of its investigation) was produced.

Specifically, in response to the demands for financial information, Defendants produced US Partnership Tax Form 1065, for International Peptide LLC for tax years 2014, 2015, and 2016. (Saryan Decl. ¶ 11, Ex. K). Defendants did not produce any other documents that show financial information of sales, profits, costs, or inventory of the illicit products.  The only document regarding actual transactions was one purchase record from Plaintiff's counsel. (Saryan Decl. ¶ 14, Ex. N).

Again, incredulously, Defendants claim they do not have access to *any* of their companies financial information due to the system wipeout, however, most of the financial documents sought are easily obtained from other sources in Defendants' control including, but not limited to, bank statements, credit card statements, emailed purchase orders, emailed sales order receipts, and payment processor statements that all

contain this information, and are all within Defendants' control because these documents can be easily obtained from multiple sources. See Fed. R. Civ. P. 34(a). "Control is defined as the legal right to obtain documents upon demand," *Int'l Union of Petroleum and Industrial Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989), and "[f]ederal courts construe 'control' very broadly under [Rule] 34." *Miller v. IBM*, 2006 U.S. Dist. LEXIS 27649, *9 (N.D. Cal. 2006).

Plaintiff is required to demonstrate Defendants' sales as part of its case in chief. Defendants have no viable excuse for their obstruction. The Court should compel Defendants to produce documents in response to these Requests and order that Defendants and its counsel pay Plaintiff's attorneys' fees associated with this Motion.

### C. Document Requests Related to its Marketing, Advertising, and Social Media (RFPs 2, 7, 23).

Plaintiff's Document Request numbers 2, 7, and 23 seek documents and communications relating to advertisements, including promotions and social media postings related to their products. Defendants again responded that it would produce all non-privileged documents responsive to this request.

Again, Defendants' production was desolate, producing only one invoice for $750 from SEO Smooth Inc., a marketing agency, dated January 10, 2018, which, again is outside of the relevant time period set forth in the document requests. (Saryan Decl. ¶ 12, Ex. L). Defendants did not produce any further invoices from SEO Smooth Inc. or any other marketing or advertising agency, and did not produce any invoices from the relevant time period. (Saryan Decl. ¶ 13, Ex. M). Defendants claim all other documents were lost in the computer system upgrade, however Plaintiff has discovered independently that Defendants use multiple third-party marketing channels, including Mail Chimp (an marketing company that distributes Defendants' newsletters to clients), Facebook, Instagram, YouTube, and Twitter account. (Saryan Decl. ¶ 15, Ex. R).

It is demonstrable that Defendants and their counsel are misrepresenting the facts

to the Court.  The Court should order that they pay Plaintiff's attorneys' fees, jointly and severally, associated with this motion under Rule 37(a)(5).

## VI. PLAINTIFF IS ENTITLED TO FURTHER REPONSES TO THE SPECIAL INTERROGATORIES.

### A. Interrogatory Nos. 4, 6, 7, 8, 9, 11 (Financial Information)

Defendants' Responses to Interrogatories Nos. 4, 6, 7, 8, 9, 11 are both nonsensical and rely on the theory that all financial data has been lost due to the aforementioned data breach.  For example, in the amended response to SROG 6 (gross revenue) and SROG 7 (Net profit), Defendants provide the same number of $3,000 and limit the amount to the time period of June 2017 to December 2017.  The other amended responses have similar figures limited in time.

Defendants claim they do not have access to *any* of their companies financial information due to the system wipeout, however, most of the financial documents sought are easily obtained from other sources in Defendants' control including, accounting software, bank statements, credit card statements, emailed purchase orders, emailed sales order receipts, and payment processor statements that all contain this information.

Plaintiff should be compelled to supplement these figures with data easily accessible from third parties as detailed above.

### B.     Interrogatory No. 21.

This interrogatory asks Defendants to "IDENTIFY each print, online, television or radio advertisement regarding any of the ILLICIT PRODUCTS during the RELEVANT PERIOD, including for each advertisement, when and where it was advertised."  Defendant's Amended Response is "none."  Again, Defendants have multiple marketing channel they are not disclosing, including Mail Chimp (an marketing company that distributes Defendants' newsletters to clients), Facebook, Instagram, YouTube, and Twitter account.  (Saryan Decl. ¶ 15, Ex. R).  The Court should order supplemental responses and order that attorneys fees be paid.

## VII. THE COURT SHOULD ORDER DEFENDANT AND ITS COUNSEL TO PAY FOR PLAINTIFF'S COSTS UNDER FRCP 37(A)(5) FOR BRINGING THE PRESENT MOTION

Rule 37(a)(5) provides that when a motion to compel is granted the Court must order that the party that "necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees…[unless] the opposing party's nondisclosure, response, or objection was substantially justified…" Here, the is clearly no justification for Defendant's abject failure to do what is required. Moreover, counsel should be jointly and severally liable for the untenable positions they have taken preceding this motion. Rule 37(a)(5); see *also Brighton Collectibles, Inc*. 2008 WL 11339966, *6-*7 (S.D. Cal. March 19, 2008) (counsel and client held jointly liable pursuant to, among other authorities, Rule 37(a)(5) for terminating deposition without adequate cause); cf *Kendrick v. Zanides*, 609 F, Supp. 1162, 1173 (N.D. Cal. 1985) (inherent authority to sanction both client and counsel)

Plaintiff has incurred $12,942.00 in fees in the present dispute, which would it would not have incurred had Defendant and its counsel complied with its obligations. (Saryan Decl. ¶¶ 18-19). The Court should order that these fees be paid by Defendant and its counsel, jointly and severally.

## VIII. CONCLUSION

For the foregoing reasons, the Court should compel Defendants to produce further interrogatory responses and documents, and order that Plaintiff's attorney's fees be paid in connection with the motion in the amount of $12,942.00.

DATED: January 31, 2018                                          TAULER SMITH LLP

                                                                 By: *s/Robert Tauler*
                                                                 Robert Tauler, Esq.
                                                                 Attorneys for Plaintiff