UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NUTRITION DISTRIBUTION LLC,

Plaintiff,

v.

PEP RESEARCH, LLC, BRIAN REYNDERS,
FRED REYNDERS, AND DOES 1-10,

Defendants.

Case No.:  16CV2328-WQH(BLM)

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION TO COMPEL
RESPONSES AND PRODUCTION OF
DOCUMENTS**

**[ECF No. 25]**

Currently before the Court is Plaintiff's January 31, 2018 motion to compel [ECF No. 25 ("MTC")], Defendant's February 12, 2018 opposition to the motion [ECF No. 27 ("Oppo."), and Plaintiff's February 20, 2018 Reply [ECF No. 28 ("Reply").  For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART**.

## PROCEDURAL BACKGROUND

The instant matter was initiated in this Court on September 15, 2016 when Plaintiff filed a complaint for false advertising in violation of the Lanham Act.  ECF No. 1.  On December 30, 2016, Plaintiff amended its complaint to allege violation of the Lanham Act and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  ECF No. 9 ("FAC").  Defendants answered the FAC on September 21, 2017 and the Court held a telephonic Early Neutral

Evaluation Conference and Case Management Conference on November 3, 2017. ECF Nos. 17 and 20. The Court held a second Case Management Conference on November 21, 2017. Id. at 23.

On January 17, 2018, counsel for Plaintiff, Ms. Valerie Saryan, and counsel Defendants, Messrs. Stephen Lobbin and Austin Richardson, contacted the Court regarding various discovery disputes concerning Defendant's responses to written discovery. ECF No. 24. In response, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the schedule. See MTC, Oppo., and Reply.

## RELEVANT DISCOVERY BACKGROUND

On November 13, 2017 Plaintiff propounded Requests for Production of Documents ("RFPs") and Interrogatories ("ROGs") on Defendant PEP Research, LLC. ECF No. 25-1, Declaration of Valerie Saryan ("Saryan Decl.") at ¶2; see also MTC at Exh. A. Defendant served its responses and objections to the RFPs and ROGs on December 26, 2017. Id. at ¶3; see also MTC at Exh. B. Plaintiff sent a meet and confer letter to Defendant on December 27, 2017 regarding its responses and Defendant served amended responses and objections to the ROGs on January 3, 2018. Id. at ¶4-5; see also MTC at Exhs. C and D. The parties met and conferred telephonically on January 5, 2018, but were unable to resolve their disputes. Id. at ¶6; see also MTC at Exh. E. After exchanging several emails, the parties were still unable to resolve their issues and contacted the Court on January 17, 2018. Id. at ¶7-8; see also MTC at Exhs. F-H; ECF No. 24.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. <u>See</u> Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

## <u>DISCUSSION</u>

Plaintiff seeks to compel further responses to its RFPs, Set One and its Special ROGs, Set One and an order requiring Defendant to pay Plaintiff's attorney's fees of $12,942.00 related to the costs of bringing this motion. MTC at 3-4, 12.

Defendant opposes Plaintiff's motion and contends that it has "responded as fully and completely as possible to each of Plaintiff's documents requests and interrogatories." Oppo. at 2. Defendant further contends that "no order compelling further discovery (beyond normal supplementation per Rule 26(e)), and certainly no sanctions, should issue." <u>Id.</u>

Plaintiff replies that Defendant has misrepresented the facts in the opposition by stating that it has produced over 200 pages of documents without clarifying that 150 of those pages were produced just forty-two minutes prior to the filing of the opposition. Reply at 2. Plaintiff also replies that Defendant failed to respond to entire categories of documents concerning financial information and social media advertisements, and that Defendant's responses are contradictory. <u>Id.</u> at 3-4.

### A.    **Requests for Production of Documents**

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." <u>Id.</u> at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." <u>Id.</u> at

34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). "The party seeking production of the documents bears the burden of proving that the documents are in the other party's possession, custody, or control." Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd., 2016 WL 7634440, at *2 (S.D. Cal. Mar. 10, 2016) (citing United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989)). "[P]roof of theoretical control is insufficient; a showing of actual control is required." MGA Entm't, Inc. v. Nat'l Prod. Ltd., 2011 WL 4550287, at *2 (C.D. Cal. Oct. 3, 2011) (quoting In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999)).

        1.    <u>RFPs Re Defendant's Manufacture of Products, Nos. 1, 3, 5, 6, 13, 20, & 24.</u>

With the first category of RFPs directed toward Defendant PEP Research, LLC, Plaintiff seeks to compel documents concerning "Defendants Manufacture of Illicit Products."[1] MTC at

---

[1] The RFPs request the following: **REQUEST FOR PRODUCTION NO. 1** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the contents of the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 3** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR production or manufacture of the ILLICIT PRODUCTS during the RELEVANT PERIOD, **REQUEST FOR PRODUCTION NO. 5** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR purchase of any of the ILLICIT PRODUCTS or their constituent ingredients, **REQUEST FOR PRODUCTION NO. 6** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR manufacture of any of the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 13** Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations or shipping or contact information of individuals or entities who have supplied the ILLICIT PRODUCTS to YOU, **REQUEST FOR PRODUCTION NO. 20** Any and all DOCUMENTS relating to the purchase of the ingredients used to make any of the ILLICIT PRODUCTS, including all purchase orders, wire transfers, invoices, receipts, contracts, agreements, and/or sales summaries, and **REQUEST FOR PRODUCTION NO. 24** Any and all DOCUMENTS relating to consideration, discussion or analysis of the product description included on the label or packaging of any of the ILLICIT PRODUCTS. MTC at Exh. A.

Defendants provided the same response to each of the RFPs. "Defendant objects to this request because it uses the term "ILLICIT PRODUCTS" which relies upon a legal conclusion. Subject to all objections, Defendant will produce non-privileged documents, if any, responsive to this request." MTC at Exh. B.

16CV2328-WQH(BLM)

7.  Plaintiff defines ILLICIT PRODUCTS as

> male enhancement drugs Sildenafil Citrate (the generic form of Viagra) & Tadalafil (the generic form of Cialis), SARMs (Selective Androgen Receptor Modulators), including Ostarine (also known as Mk-2866) Cardarine (also known as GW-501516), Andarine (also known as S4); and Hormones, including Sermorelin, GHRP-2, GHRP-6, and Clenbuterol. YOUR manufacture and sale of the ILLICIT PRODUCTS are the subject of this action.

MTC at Exh. A at 4.  Plaintiff argues that despite Defendant's response that it would produce any non-privileged relevant documents, Defendant only produced two invoices of purchases from manufacturers, one of which contained an invoice date outside of the time period set forth in the requests.  Id. at 8.  After Plaintiff raised its concern that the two invoices did not constitute a complete production of responsive documents, Defendant informed Plaintiff that all responsive documents were lost in June 2017 when it redesigned its website, had its computer system upgraded, and began hosting its site on a new server.  Id.  Plaintiff argues that this excuse does not obviate the need for Defendant to respond because (1) the documents should have been preserved as of September 2016 when this matter was initiated, (2) the documents should be available from Defendant's contractors and can be obtained from other sources, and (3) documents that were created after June 2017 until present day should be available as Defendant's website remains in business.  Id. at 8-9.

Defendant contends that it cannot provide invoices or emails from before June 2017 due to computer problems and that it has "produced all hard copies of documents it possesses." Oppo. at 3; see also ECF No. 27-1, Declaration of Brent Reynders in Opposition to Motion to Compel, ("Reynders Decl.") at ¶ 4-6.  Defendant also contends that Plaintiff's argument that the "records are readily accessible from [Defendant's] contractors" is an "exaggeration" and notes that it has tried to obtain what it can from third parties, but has already produced everything it possesses.  Reynders Decl. at ¶ 8.  Finally, Defendant contends that it has "never produced or manufactured any products."  Id. at ¶ 7.

Plaintiff replies that even after its "eleventh hour" production, Defendant still has not provided documents pertaining to product formulations or ingredient purchases.  Reply at 2.

2. <u>RFPs Re Defendant's Financial Information, Nos. 4, 8-13, 15, 19, 26, & 27.</u>

The second category of RFP responses Plaintiff seeks to compel concern "Defendants income from the sales of the Illicit Products, including financial statements, information identifying and relating to customers, retailers, stores or distributors of Defendants illicit products."[2] MTC at 9. Plaintiff argues that despite Defendant's response that it would produce any non-privileged relevant documents, Defendant only produced one tax form for the years

_____

[2] The RFPs request the following: **REQUEST FOR PRODUCTION NO. 4** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR sales of the ILLICIT PRODUCTS during the RELEVANT PERIOD, **REQUEST FOR PRODUCTION NO. 8** Any and all DOCUMENTS referring or relating to YOUR income from the sales of the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 9** Any and all DOCUMENTS referring or relating to YOUR profits from the sales of the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 10** Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations, or shipping or contact information of individuals or entities who have purchased the ILLICIT PRODUCTS from YOU, **REQUEST FOR PRODUCTION NO. 11** Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations, or shipping or contact information of individuals or entities who have distributed the ILLICIT PRODUCTS for YOU, **REQUEST FOR PRODUCTION NO. 12** Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations or shipping or contact information of individuals or entities who have sold the ILLICIT PRODUCTS for YOU, whether from "brick-and-mortar" retail locations or otherwise, **REQUEST FOR PRODUCTION NO. 13** Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations or shipping or contact information of individuals or entities who have supplied the ILLICIT PRODUCTS to YOU, **REQUEST FOR PRODUCTION NO. 15** The identity, website, webpage and contact email addresses of any and all webpages or on-line retail portals owned or operated by YOU that sell the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 19** All DOCUMENTS that refer, reflect or relate to any existing inventory of the ILLICIT PRODUCTS currently held by YOU or YOUR distributors, **REQUEST FOR PRODUCTION NO. 26** All of YOUR quarterly and annual financial statements for the RELEVANT PERIOD, including balance sheets, income statements, and profit and loss statements, and **REQUEST FOR PRODUCTION NO. 27** All of YOUR corporate tax returns for the RELEVANT PERIOD. MTC at Exh. A.

Defendants provided the same response to RFPs Nos. 4, 8-13, 15, 19, and 26. "Defendant objects to this request because it uses the term "ILLICIT PRODUCTS" which relies upon a legal conclusion. Subject to all objections, Defendant will produce non-privileged documents, if any, responsive to this request." MTC at Exh. B. Defendants response to RFP No. 27 was "Subject to all objections, Defendant will produce non-privileged documents, if any, responsive to this request." <u>Id.</u>

6

2014, 2015, and 2016 and one purchase record, but no documents showing "financial information of sales, profits, costs, or inventory of the illicit products." Id. at 9. Plaintiff argues that the excuse given by Defendant, the computer data loss, is unacceptable because the documents could be easily obtained by Defendant from other sources such as bank or credit card statements, email purchases orders, receipts or payment processor statements. Id. Plaintiff notes that this information is very relevant as it is required to demonstrate Defendant's sales as part of its case in chief. Id. at 10.

Defendant contends that it has already produced "financial statements including tax returns, bank statements, processing statements and credit card Statements" and that it has only sold to "individuals, online, not to any retailers, stores or distributors." Reynders Decl. at ¶ 9; see also Oppo. at 3-4.

Plaintiff replies that Defendant's production shows business transactions with various financial institutions, but that no documents were produced relating to those institutions. Reply at 3; see also ECF No. 28-1, Declaration of Valerie Saryan in Support of Reply ("Saryan Reply Decl.") at ¶ 4. For example, the fact that Defendant used PayPal as a form of payment for its business, but did not produce any PayPal documents, is an indication that additional responsive documents exist. Plaintiff also notes that Defendant's production showed business transactions with several other financial institutions, including American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc. Authorize.net, WePay, and TransFirst LLC, but that Defendant failed to produce any documents relating to those institutions. Reply at 34-; see also Saryan Reply Decl. at ¶ 4.

3.     RFPs Re Defendant's Marketing, Advertising & Social Media, Nos. 2, 7 & 23.

The final category of RFP responses Plaintiff seeks to compel concerns "documents and communications relating to advertisements, including promotions and social media postings related to [Defendants'] products."[3]  MTC at 10.  Plaintiff argues that despite Defendant's

---

[3] The RFPs requests and Defendant's responses are as follows: **REQUEST FOR PRODUCTION NO. 2** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to any advertisements or promotions that YOU created or authorized, in part or in whole,

response, only one responsive document, an invoice from SEO Smooth Inc. marketing agency, was produced to Plaintiff and that document was outside of the relevant time period.  Id. at 10. Plaintiff argues that it knows Defendant uses multiple third party marketing channels and that it has not received documents regarding any of those channels.  Id.

Defendant contends that it has "produced its SEO Smooth invoices and Mailchimp invoices, and every other document it has that is responsive."  Reynders Decl. at ¶ 10; see also Oppo. at 4.

Plaintiff replies that "Defendants [] failed to provide any social media advertisements even though accounts exist for Facebook, Twitter, and YouTube."  Reply at 4; see also Saryan Reply Decl. at ¶ 5.  Plaintiff also states that marketing and advertising documents were not provided even though "Defendants' bank and credit card statements show a litany of marketing and advertising expenses during the relevant time period, including but not limited to, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements."  Saryan Reply Decl. at ¶ 8.

### 4. Analysis and Conclusion

There are a number of problems with Plaintiff's motion and Defendant's document production.  First, Plaintiff has not adequately described which RFPs remain in dispute.  See Reply.  In its reply, Plaintiff acknowledges that Defendant produced approximately 150 pages minutes before it filed its opposition brief but Plaintiff does not describe the nature of the

_____

for the ILLICIT PRODUCTS, **REQUEST FOR PRODUCTION NO. 23** Any and all DOCUMENTS that refer, reflect or relate to any SOCIAL MEDIA posts that YOU created or authorized, in part or in whole, for any of the ILLICIT PRODUCTS. "SOCIAL MEDIA" as used in this Request for Production includes Facebook, Twitter, Instagram, YouTube, blogs, or any other internet-based application, **RESPONSE TO REQUEST NOs. 2 & 23:** Defendant objects to this request because it uses the term "ILLICIT PRODUCTS" which relies upon a legal conclusion. Subject to all objections, Defendant will produce non-privileged documents, if any, responsive to this request, **REQUEST FOR PRODUCTION NO. 7** Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR claim for false and misleading advertising in violation of Section 43(a)(1)(B) of the Lanham Act, **RESPONSE TO REQUEST NO. 7:** Subject to all objections, Defendant will produce non-privileged documents, if any, responsive to this request.  MTC at Exh. B.

16CV2328-WQH(BLM)

documents that were produced, which categories of documents are still missing, the specific RFPs to which the documents respond, and which RFPs are still deficient.  Id.; see also Saryan Reply Decl. at ¶ 3.   Plaintiff states that "Defendants have still failed to provide documents pertaining to their advertising, social media, product formulations, ingredients purchases, or their product sales transaction records."   Reply at 2.   Plaintiff explains that the produced documents "show[] business transactions with financial institutions" but "no documents were produced relating to [the identified] entities."   Id. at 3; see also Saryan Reply Decl. at ¶ 4. Plaintiff also complains that "Defendants also failed to provide any social media advertisements even though accounts exist for Facebook, Twitter, and YouTube."   Id. at 4; see also Saryan Reply Decl. at ¶ 5.   In conclusion, Plaintiff seeks "all requested documents," including "the missing documents and information such as emails from Defendants' personal Google mail accounts, sales and profits records, advertisements, social media and marketing material."   Id. at 7.  As such, it is not clear precisely which RFP productions Plaintiff still believes are incomplete. A second problem is that Plaintiff seeks "emails from Defendants' personal Google mail accounts" but the discovery requests submitted to the Court only are addressed to Defendant Pep Research LLC and Plaintiff does not provide an explanation for its motion to compel the personal email accounts.   Id.   A final problem is that Defendant asserts that it has "never produced or manufactured any products" [see Reynders Decl. at ¶ 8] yet Plaintiff does not address that allegation and apparently still is moving to compel the production of such documents.  Reply.

Defendant's document production also has several problems.  First, Defendant does not describe the scope of documents that it produced or the RFPs to which the documents were responsive.  Oppo.; see also Reynders Decl.  As a result, the Court cannot evaluate the adequacy of Defendant's production.  Second, Defendant asserts that it did "not keep printed records of invoices" and all digital evidence created prior to June 2017 was lost when it upgraded its computer system, redesigned its website, and changed its hosting site. Reynders Decl. at ¶ 5. However, Defendant does not address Plaintiff's argument that Defendant had a duty to preserve all relevant documents as of September 2016 when Plaintiff initiated this action. Defendant also does not state whether it has produced all responsive documents, including

16CV2328-WQH(BLM)

digital documents, produced after June 2017 and, if not, why not.  <u>See</u> Reynders Decl. at ¶ 5 ("We produced all hard copies of documents we have.").

Third, Defendant argues that it has "produced all hard copies of documents it possesses" but does not adequately address the documents over which it has legal control.  Oppo. at 3; <u>see also</u> Reynders Decl. at ¶ 5.  A party is required to produce responsive documents even if they are being held by third parties if Defendant has a legal right to the documents or control over the third parties holding the documents.   <u>Soto</u>, 162 F.R.D. at 619.  Defendant contends that Plaintiff is exaggerating by stating that Defendant's records are "readily accessible," but does not explain how or why that is an exaggeration.  Oppo. at 3; <u>see also</u> Reynders Decl. at ¶ 8. Defendant does not claim that the documents are unavailable or nonexistent, or that it does not have possession as it is understood with respect to Fed. R. Civ. P. 34(a).  In fact, without providing much detail, Defendant states that for the past two months, it has "been engaged in the process of obtaining what additional information it can from third parties."  Oppo. at 3; <u>see also</u> Reynders Decl. at ¶4.  This indicates that there are responsive documents over which Defendant has control or legal right to access.  The fact that Defendant may have to expend time and energy to retrieve the documents does not make the documents inaccessible or outside of Defendant's control.  <u>A. Farber & Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery [] and, based on that inquiry, [a] party responding to a Rule 34 production request ... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'") (citing <u>National Ass'n of Radiation Survivors v. Turnage</u>, 115 F.R.D. 543, 554–56 (N.D.Cal.1987) (quoting <u>Gray v. Faulkner</u>, 148 F.R.D. 220, 223 (N.D.Ind.1992)).

Despite the inadequacies in the parties' pleadings, the Court must resolve Plaintiff's motion to compel.  A court cannot order a party to produce documents that do not exist.  <u>See Unilin Beheer B.V. v. NSL Trading Corp.</u>, 2015 WL 12698382, * 5 (C.D. Cal. Feb. 27, 2017) ("a court cannot order a party to produce documents that do not exist").  "A plaintiff's mere suspicion that additional documents must exist is an insufficient basis to grant a motion to

compel." Id. (citing <u>Bethea v. Comcast</u>, 218 F.R.D. 328, 329 (D. D.C. 2003)). "Rather, the moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld." Id. (citing <u>Carter v. Dawson</u>, 2010 WL 4483814, at *5 (E.D. Cal. Nov. 1, 2010) (defendants' representation that they are unable to locate responsive documents precludes the grant of a motion to compel "unless Plaintiff can identify a specific document that Defendants have withheld"); <u>Ayala v. Tapia</u>, 1991 WL 241873, at *2 (D. D.C. Nov. 1, 1991) (denying motion to compel where moving party could not identify withheld documents)). Here, Plaintiff has provided a colorable basis for its position that the following relevant and responsive documents exist and are not being produced:

1) Documents "lost" in the computer mishap in June 2017 which are in the possession of third parties over whom Defendant has control or from whom Defendant has a legal right to obtain the document(s) and which are responsive to RFP Nos. 1, 2, 4, 5, 8-13, 15, 19, 23, 24, 26, and 27. The relevant third parties include, but are not limited to PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, Transfirst LLC., Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements.

2) Documents from June 2017 to the present that are responsive to RFP Nos. 1, 5, 13 and 24 (product formulation and ingredient purchases).

3) Documents from June 2017 to the present that are responsive to RFP Nos. 4, 8-13, 15, 19, 26 and 27 including responsive documents from PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, and Transfirst LLC.

4) Documents from June 2017 to the present that are responsive to RFP Nos. 2 and 23 including documents relating to social media advertisements through Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements.

With regard to documents in categories 2-4, Defendant must produce documents in its physical possession as well as all responsive documents under its legal control. <u>Soto</u>, 162 F.R.D.

16CV2328-WQH(BLM)

at 619 ("actual possession of the requested documents is not required. A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document. The term control includes the legal right of the producing party to obtain documents from other sources upon demand.") (internal quotations and citation omitted). Plaintiff has not provided a colorable basis for its motion to compel further responses to RFP Nos. 3, 6 and 20 because they relate to manufacturing, Defendant states that it did not manufacture any products, and Plaintiff does not negate that statement. Plaintiff also has not provided a colorable basis for its motion with regard RFP No. 7 relating to advertising in violation of the Lanham Act as it does not address this request.

## B. Special Interrogatories

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(3). In answering interrogatories propounded to a corporation, partnership, association or governmental agency, the officer or agent responding on its behalf "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Responses to interrogatories must be verified. Fed. R. Civ. P. 33(b)(5) ("[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections.").

### 1. Interrogatories Re Defendant's Financial Information, Nos. 4, 6-9, & 11

The first category of ROG responses Plaintiff seeks to compel concern Defendant Pep Research LLC's financial information. MTC at 11. The ROGs request the following:

**INTERROGATORY NO. 4**: State the number of units of the ILLICIT PRODUCTS that YOU have sold during the RELEVANT PERIOD

**INTERROGATORY NO. 6**: State the amount of gross revenue that YOU have made from the sale of the ILLICIT PRODUCTS during the RELEVANT PERIOD,

16CV2328-WQH(BLM)

**INTERROGATORY NO. 7**: State the amount of net profit that YOU have made from the sale of the ILLICIT PRODUCTS during the RELEVANT PERIOD,

**INTERROGATORY NO. 8**: State the amount of costs of goods sold that YOU attribute to the sale of the ILLICIT PRODUCTS during the RELEVANT PERIOD,

**INTERROGATORY NO. 9**: State the amount of overhead that YOU attribute to the sale of the ILLICIT PRODUCTS during the RELEVANT PERIOD, and

**INTERROGATORY NO. 11**: State the amount of overall expenses that YOU attribute to the sale of the ILLICIT PRODUCTS during the RELEVANT PERIOD.

MTC at Exh B at 20-22. Defendant provided the same response to each of the ROGs: "Defendant objects to this request because it uses the term "ILLICIT PRODUCTS" which relies upon a legal conclusion. Subject to all objections, pursuant to Rule 33(d) Defendant will produce all responsive, non-privileged documents, if any." Id. Defendant later amended its responses to ROGs 4, 6-9, & 11 as follows:

**AMENDED RESPONSE TO INTERROGATORY NO. 4**: Subject to all objections and prior responses, based on the available information we estimate sales of about 100 units from June 2017 thru December 2017. Sales and financial data before June 2017 was lost during a computer system upgrade, and Defendant has no other records from which those sales can be estimated or stated, except to say they were less per diem than from the more recent period stated herein.

**AMENDED RESPONSE TO INTERROGATORY NO. 6**: Subject to all objections and prior responses, based on the available information we estimate gross revenue of about $3000 from June 2017 thru December 2017

**AMENDED RESPONSE TO INTERROGATORY NO. 7**: Subject to all objections and prior responses, based on the available information we estimate net profit revenue of about $3000 from June 2017 thru December 2017.

**AMENDED RESPONSE TO INTERROGATORY NO. 8**: Subject to all objections and prior responses, based on the available information we estimate costs of goods sold of about $500 from June 2017 thru December 2017.

**AMENDED RESPONSE TO INTERROGATORY NO. 9**: Subject to all objections

16CV2328-WQH(BLM)

and prior responses, based on the available information we estimate attributable overhead of about $1200 from June 2017 thru December 2017.

**AMENDED RESPONSE TO INTERROGATORY NO. 11**: Subject to all objections and prior responses, based on the available information we estimate overall expenses of about $2000-3000 from June 2017 thru December 2017.

MTC at Exh. D at 6-9.

Plaintiff asserts that Defendant's responses are "nonsensical" and improperly limit the scope of time. Id. at 11. Plaintiff argues that Defendant cannot limit the responsive time frame based upon the fact that it allegedly lost all of its computer data in June 2017 because Defendant easily can obtain the information required to accurately respond to the ROGs from other sources such as "accounting software, bank statements, credit card statements, emailed purchase orders, emailed sales order receipts, and payment processor statements." Id.

Defendant contends that its responses regarding gross revenue and net profit are not nonsensical in light of their amended interrogatory responses which show only that "perhaps the profit was overstated, as it should be $1000 at most for this period of time." Reynders Decl. at ¶ 11; see also Oppo. at 4. Defendant further contends that it "produce[d] bank statements and credit card statements and payment processing statements." Id. at ¶ 12; see also Oppo. at 4.

Plaintiff replies that it wants supplemental responses because the documents produced by Defendant contradict Defendant's Interrogatory responses and statements made in Defendant's opposition and that Plaintiff is entitled to the facts. Reply at 4; see also Saryan Reply Decl. at ¶ 5. Specifically, Plaintiff notes that Defendant's amended response to ROG 8 estimates the costs of goods sold from June 2017 thru December 2017 to be about $500 and states that the number was even less for the period between 2012-2016, however, credit card statements produced by Defendant show that Defendant spent more than $9,708 in 2017 on the costs of goods sold and more than $11,724 in 2015. Id.; see also Saryan Reply Decl. at ¶ 6-7. Also, while Defendant's amended response to ROG 10 states that Defendant has no advertising expenses attributed to the sale of the products during the relevant time period, the

credit card statements produced by Defendant "show a litany of marketing and advertising expenses during the relevant time period, including but not limited to, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements." Id. at 5; see also Saryan Reply Decl. at ¶ 8. Finally, in its opposition Defendant states that its amended response to ROG 6 was overstated and that its profit was at most, $1000 despite the fact that its produced documents show estimated sales of $27,089.45 between September and November 2015. Id. at 6; see also Saryan Reply Decl. at ¶ 12-13.

Plaintiff's motion to compel further response to ROGs 4, 6-9, and 11 is **GRANTED IN PART**. Plaintiff's motion is **GRANTED** with regards to the relevant time period. Defendant cannot arbitrarily limits its response to six months in 2017 based upon the alleged loss of computer data. As discussed in the prior section of this order, Defendant has an obligation to obtain documents and information under its legal control from third parties and use the information to respond to the ROGs for the entire relevant time period. Plaintiff's motion is **DENIED** to the extent Plaintiff disagrees with the accuracy of Defendant's responses. In Defendant's amended responses, Defendant provides a substantive response for the June – December 2017 time frame. While Plaintiff provides compelling arguments regarding the inaccuracy of Defendant's responses, the Court cannot compel Defendant to provide "better" responses. If Defendant stands by the accuracy of its current responses, Plaintiff may use the responses as appropriate in future depositions, pleadings, hearings, and trial. The Court reminds Defendant of its duty to supplement its responses if it determines that its responses and amended responses are inaccurate. See Fed. R. Civ. P. 26(e)(1)(A) ("[a] party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). Finally, the Court notes that Defendant's responses to Plaintiff's first set of interrogatories do not contain a verification page and the verification page on the amended responses is unsigned. MTC at Exh B and D at 17.

Accordingly, if Defendant did not verify its responses and amended responses, it is **ORDERED** to do so.

### 2. Interrogatory No. 21

Plaintiff also seeks to compel further response to ROG 21. ROG 21 and Defendant's response are as follows:

> **INTERROGATORY NO. 21**: IDENTIFY each print, online, television or radio advertisement regarding any of the ILLICIT PRODUCTS during the RELEVANT PERIOD, including for each advertisement, when and where it was advertised.
>
> **RESPONSE TO INTERROGATORY NO. 21**: Defendant objects to this request because it uses the term "ILLICIT PRODUCTS" which relies upon a legal conclusion. Subject to all objections, pursuant to Rule 33(d) Defendant will produce all responsive, non-privileged documents, if any.
>
> **AMENDED RESPONSE TO INTERROGATORY NO. 21**: Subject to all objections, none.

MTC at Exh. B at 25 and Exh. D.

Plaintiff argues that "Defendants have multiple marketing channel they are not disclosing, including Mail Chimp (an marketing company that distributes Defendants' newsletters to clients), Facebook, Instagram, YouTube, and Twitter account." MTC at 11.

Defendant does not appear to address this specific request. Oppo.

As with the previous interrogatories, Defendant has provided a response to the question asked, leaving the Court with nothing to compel. While Plaintiff disputes the accuracy of the response in light of other information known to it, it is not the Court's job to evaluate the veracity of Defendant's discovery response, only the sufficiency. Accordingly, Plaintiff's motion to compel further response to ROG 21 is **DENIED**. If Defendant learns that its interrogatory responses and amended responses are incorrect, Defendant must amend its responses as appropriate in accordance with the Federal Rules. See Fed. R. Civ. P. 26(e)(1)(A). Defendant is required to sign and date its responses and amended responses to the interrogatories under penalty of perjury. See Fed. R. Civ. P. 33(b)(5).

16CV2328-WQH(BLM)

### C.    SANCTIONS

Plaintiff requests that Defendant and its counsel be ordered to pay Plaintiff $12,942.00 in sanctions for the costs of bringing the instant motion.  MTC at 12.  In support, Ms. Saryan, declares that her current hourly rate is $385.00 per hour and that she spent 19.5 hours handling the instant discovery dispute which included 2.8 hours' worth of meet and confer telephone calls, 4.2 hours researching the instant motion, 8.9 hours drafting the instant motion, and 3.6 hours gathering supporting evidence and preparing for filing.  Saryan Decl. at ¶18.  Ms. Saryan anticipates spending 5 hours responding to Defendants' opposition.  Id.  Ms. Saryan further declares that Mr. Robert Tauler, a partner in her firm whose billing rate is $650.00 per hour, spent 5.4 hours meeting and conferring with opposing counsel and reviewing the instant motion.  Id. at ¶19.

Defendant contends that "Plaintiff's sanctions request (particularly against counsel) should be denied, no matter what the decision is on the rest of this motion."  Opp. at 5.  Defendant further contends that Plaintiff's "joint and several request for sanctions against counsel is meritless and improper.  Plaintiff provides no facts which would support such a request, nor are there any."  Id. at 2, n.2 (internal quotations omitted).  Finally, Defendant notes that "Plaintiff's request for nearly $13,000 is obviously excessive and unsupportable."  Id.

If a motion to compel discovery is granted, or if the disclosure or requested discovery is provided after the motion was filed, Rule 37(a)(5)(A) requires a court to order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the movant failed to meet and confer, the objection was substantially justified, or other circumstances militate against awarding expenses.  If a motion to compel discovery is granted in part and denied in part, the court may "after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

The Court finds that sanctions in the form of reasonable attorneys' fees are required and appropriate because Defendant did not produce the majority of the responsive documents until after Plaintiff filed its motion to compel.  Fed. R. Civ. P. 37(a)(5)(A).  As admitted by Defendant

16CV2328-WQH(BLM)

and established by Plaintiff, Defendant produced approximately 150 of its 200 pages of responsive documents 42 minutes before it filed its opposition. <u>See</u> Reynders Decl. at ¶ 4 (Defendant's documents are being produced "coincident with this response."); Saryan Reply Decl. at ¶ 3; Reply at 2-3. Despite the fact Defendant stated in the majority of its discovery responses that it would produce responsive documents, it failed to do so until well after Plaintiff filed its motion to compel. This delay in production is even more sanction-worthy because (1) Defendant was reminded of its discovery failure on January 17, 2018 when counsel for Plaintiff and Defendant had a conference call with the Court during which Plaintiff complained about Defendant's failure to produce responsive documents and noted its intention to file a motion to compel and Defendant still did not produce the responsive documents and (2) Defendant's opposition brief misleadingly implies that Plaintiff's motion is without merit because Defendant did produce responsive documents, without acknowledging that the responsive documents only were produced moments before the pleading was filed.

The Court also finds that monetary sanctions are appropriate because the Court is granting the majority of Plaintiff's motion to compel and Defendant's discovery failures were not substantially justified. Fed. R. Civ. P. 37(a)(5)(C). Defendant's failure to obtain and produce documents under its custody and control was not reasonable or justified, especially since Defendant claims to have lost all computer data in June 2017 and it has been aware of this case since at least September 2016. Similarly, Defendant's failure to timely produce all hard-copy and digital responsive documents created after June 2017 is not justified. Also, Defendant's attempt to limit the interrogatories to the six-month time period of June-December 2017 due to the alleged computer mishap is improper and not justified. The Court also finds that there are no "other circumstances mak[ing] an award of expenses unjust" under either subsection. Fed. R. Civ. P. 37(a)(5)(A). Accordingly, the Court will impose sanctions and because the discovery failures involve both legal and factual failures, the Court will impose the sanctions against Defendant and its counsel.

Rule 37 mandates that monetary sanctions must consist of "reasonable expenses incurred in making the motion, including attorney's fees." <u>Id.</u> In determining the reasonable attorneys'

fees, the Court will not include the time Ms. Saryan spent meeting and conferring regarding the discovery disputes. Ms. Saryan spent an additional 16.7 hours preparing the motion to compel. The Court finds this amount to be excessive and reduces it to 10 hours. Ms. Saryan declared that she anticipated spending five hours responding to Defendants' opposition, but does not state in her reply declaration if that estimate was accurate, low, or high. The Court finds that 3 hours is a reasonable amount of time for Ms. Saryan to have spent preparing the reply. Finally, Ms. Saryan's declaration states that Mr. Tauler "spent 5.4 hours drafting the original meet and confer letter, engaging in attendant follow-up discussions and reviewing the present motions," but does not provide a breakdown of how much time was spent on each activity. Because the Court is not awarding sanctions for the parties' meet and confer efforts, and because Plaintiff's counsel does not specify how much time Mr. Tauler spent reviewing the instant motion, the Court finds that 1.5 hours is a reasonable amount of time for reviewing the instant motion. Defendant does not challenge the reasonableness of the billing rate of either attorney so the Court will use the stated billing rates.

Accordingly, Defendant and its counsel are **ORDERED** to pay $5,870.00 in sanctions to Plaintiff.

### D. CONCLUSION

Plaintiff's motion to compel responses and productions of documents is **GRANTED IN PART** as follows:

1.     Defendants must produce documents "lost" in the computer mishap in June 2017 which are in the possession of third parties over whom Defendant has control or from whom Defendant has a legal right to obtain the document(s) and which are responsive to RFP Nos. 1, 2, 4, 5, 8-13, 15, 19, 23, 24, 26, and 27. The relevant third parties include, but are not limited to PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, Transfirst LLC., Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements.

16CV2328-WQH(BLM)

2. Defendants must produce documents from June 2017 to the present that are responsive to RFP Nos. 1, 5, 13 and 24.

3. Defendants must produce documents from June 2017 to the present that are responsive to RFP Nos. 4, 8-13, 15, 19, 26 and 27 including responsive documents from PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, and Transfirst LLC.

4. Defendants must produce documents from June 2017 to the present that are responsive to RFP Nos. 2 and 23 including documents relating to social media advertisements through Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements.

5. All additional documents must be produced on or before **March 26, 2018**.

6. Plaintiff's motion to compel further response to RFP Nos. 3, 6, and 20 is **DENIED**.

7. Plaintiff's motion to compel further response to ROGs 4, 6-9, and 11 is **GRANTED IN PART** with regard to the relevant time period. Plaintiff's motion is **DENIED** to the extent Plaintiff disagrees with the accuracy of Defendant's responses.

8. Plaintiff's motion to compel further response to ROG 21 is **DENIED**. If Defendant discovers new information or determines that its previous responses were incorrect, Defendant must amend its interrogatory responses as appropriate in accordance with the Federal Rules. See Fed. R. Civ. P. 26(e)(1)(A).

10. If it has not already done so, Defendant must sign and date its interrogatory responses and any amended responses under penalty of perjury on or before **March 16, 2018**. See Fed. R. Civ. P. 33(b)(5) ("[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections.").

///
///
///
///
///

11.    Defendant and its defense counsel are **ORDERED** to pay $5,870.00 in sanctions on or before **March 30, 2018**.  Defendant must file a declaration verifying said payment by **April 6, 2018**.

**IT IS SO ORDERED**.

Dated:  3/9/2018

Hon. Barbara L. Major
United States Magistrate Judge

16CV2328-WQH(BLM)