Robert Tauler (SBN 241964)
Email: rtauler@taulersmith.com
Valerie Saryan (SBN 297115)
Email: vsaryan@taulersmith.com
Tauler Smith LLP
626 Wilshire Blvd., Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927
Attorneys for Plaintiff Nutrition Distribution, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION, LLC, an Arizona Limited Liability Company, | Case No. 3:16-cv-2328-WQH-BLM |
| | Hon. Barbara L. Major |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR:** |
| v. | |
| PEP RESEARCH, LLC, a Texas Limited Liability Company; BRIAN REYNDERS, an individual; FRED REYNDERS, an individual; and DOES 1-10, inclusive, | **(1) SANCTIONS FOR SPOLIATION OF EVIDENCE (FRCP 37(E));** |
| | **(2) SANCTIONS FOR VIOLATING THE COURT'S MARCH 9, 2018 ORDER (FRCP 37(b)(2)(A)(i));** |
| Defendants. | **(3) SANCTIONS FOR FAILURE TO PRODUCE WITNESS FOR RULE 30(B)(6) DEPOSITION (FRCP 37(d));** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF VALERIE SARYAN** |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    PLEASE TAKE NOTICE THAT on June 12, 2018, Plaintiff Nutrition

3    Distribution, LLC hereby moves the Court pursuant to the Court's Special Briefing

4    Schedule Ordered on June 6, 2018 (ECF No. 39) (1) for an order of spoliation sanctions

5    under FRCP 37(E)); (2) for an order of sanctions for Defendants' disobedience of a Court

6    order under FRCP 37(b)(2)(A)(i)); and (3) for sanctions for failing to produce a

7    competent 30(b)(6) witness under FRCP 37(d).  Plaintiff seeks the following relief:

8    For its Motion under FRCP 37(E)(the "First Motion"), Plaintiff requests that the

9    Court (1) order Defendants' pay Plaintiff's attorneys' fees; (2) order an adverse inference

10   that the social media posts deleted were false advertising of products that compete with

11   Plaintiff, and (3) order an adverse inference that the spoliated financial information

12   would demonstrate proximate cause and commercial injury to Plaintiff.

13   For its Motion under FRCP 37(b)(2)(A)(i)) (the "Second Motion"), Plaintiff

14   requests that the Court order the following facts established:

15   
16   - That Defendant PEP Research has made false and misleading statements of
17     fact about their SARMs, Peptides, and male enhancement drugs products in
     commercial advertisements and promotions;
18   - That Defendant PEP Research's statements are materially deceptive;
19   - That Defendant PEP Research has caused competitive and commercial
20     injury to the Plaintiff.

21   For the Second Motion, Plaintiff further requests monetary sanctions under FRCP

22   37(d), an order that Defendants produce all documents regarding their gross revenues and

23   that Defendants be prohibited from introducing exhibits or testimony relating to their

24   expenses or profitability into evidence.  For the Second Motion, Plaintiff also requests an

25   order that Defendants be found in contempt of Court. Plaintiff also requests that the Court

26   order monetary sanctions against Plaintiff and its counsel for this Motion.

27   For its Motion for sanctions for failing to produce a competent 30(b)(6) witness

28   under FRCP 37(d) (the "Third Motion"), Plaintiff requests that the Court order PEP to

produce a competent 30(b)(6) witness and pay for attorneys' fees and costs associated with this motion under Rule 37(d). Plaintiff requests that the Court order Defendants and its counsel to pay for Plaintiff's attorneys' fees and costs associated with this Motion totaling $35,295.50, as detailed in the attached Declaration of Valerie Saryan.

The motions are based on the June 6, 2018 order (ECF No. 39), this notice of motion; the accompanying memorandum of points and authorities; the declaration of Valerie Saryan and all exhibits attached thereto; the pleadings and papers on file in this action, and other matters as the Court may properly consider. Pursuant to the June 6, 2018 order, no appearance is required under Local Rule 7.1(d)(1).

DATED:      June 12, 2018

TAULER SMITH LLP


By: *s/Robert Tauler*
      Robert Tauler, Esq.
      Attorneys for Plaintiff
      Nutrition Distribution, LLC

1

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ....................................................vi

**MEMORANDUM OF POINTS AND AUTHORITIES** ..........................1

**I.   INTRODUCTION** ...................................................................1

**II.  FACTUAL AND PROCEDURAL BACKGROUND** ......................1

    A. Nature of Case ......................................................................1

    B. Plaintiff's Attempts to Obtain Written Discovery..........................2

    C. The Court Orders Written Discovery to be Produced and
    Sanctions Defendants.................................................................2

    D. Defendants Fail to Produce Documents and Amended
    Responses in Response to the Court Order........................................3

    E. Plaintiff Takes Defendants' Depositions.........................................3

**III. THE COURT SHOULD ISSUE SANCTIONS AGAINST
      DEFENDANTS FOR SPOLIATION AND DESTRUCTION OF
      EVIDENCE**...............................................................................4

    A. Legal Standards ..................................................................4

    B. Defendants' Destruction of Evidence ....................................5

    C. Defendants' Failure to Preserve Evidence Under FRCP 37(e)........6

    D. Defendants' Conduct Warrants the Imposition of Sanctions ..........8

**IV. DEFENDANTS SHOULD BE HELD IN CONTEMPT OF
      COURT FOR VIOLATING THE MARCH 9, 2018
      COURT ORDER**.......................................................................9

    A. Legal Standards ..................................................................9

    B. Defendants' Disobedience of the Court Order ..............................10

      1. Defendants Are in Contempt of Section D(1) of the
      Court's Order...............................................................................10

      2. Defendants Are in Contempt of Section D(2) of the
      Court's Order...............................................................................11

      3. Defendants Are in Contempt of Section D(3) of the
      Court's Order...............................................................................11

          (a) PayPal Documents...............................................................12

          (b) Financial Documents Available from the PEP CPA ..........13

          (c) Tax Documents ...................................................................13

          (d) Sales Figures .....................................................................15

          (e) Other Categories of Financial Documents .........................16

C. Defendants Should Be Found in Contempt and Pay Compensatory Monetary Sanctions ...................................................................18

D. Defendants And Their Counsel Should Be Ordered To Pay Plaintiff's Attorneys' Fees And Costs In Connection with This Motion For Contempt .................................................................19

**V. DEFENDANT SHOULD BE SANCTIONED FOR THEIR FAILURE TO PRODUCE A KNOWLEDGEABLE WITNESS FOR DEFENDANT'S RULE 30(B)(6) DEPOSITION** ...20

A. The 30(b)(6) Notice and Deposition ...........................................20

B. Legal Standard ..........................................................................22

C. Sanctions Should be Awarded Under Rule 37(d) .......................23

**VI. CONCLUSION** .................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2862613, at *1-2
  (N.D. Cal. July 11, 2012)............................................................... 19

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 151
  (S.D.N.Y. 1997) ............................................................................ 23

*Board Of Trustees of Leland Stanford Jr. Univ. v. Tyco Intl. Ltd.*, 253 F.R.D. 524, 526
  (C.D. Cal. 2008).............................................................................. 22

*Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.* 228 F.3d 275, 304
  (3d Cir. 2000)................................................................................. 23

*Blumenthal Distributing, Inc. v. Herman Miller*, Case No. ED CV 14–1926–JAK (SPx),
  2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016)................................... 5

*Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629,
  2016 WL 815827, at *36 (S.D. Fla. March 1, 2016) ..................................... 7

*Compass Bank v. Morris Cerullo World Evangelism,* 104 F. Supp. 3d 1040, 1051
  (S.D. Cal. 2015) ............................................................................... 4

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784
  (9th Cir. 1983)................................................................................. 20

*First Financial Security, Inc. v. Freedom Equity Group, LLC*, No. 15 –CV–1893
  HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) .............................. 8

*F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ...................... 18

*Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*
  251 F.R.D. 534 (D. Nev. 2008) .......................................................22, 23

*Harmon v. City of Santa Clara* 323 F.R.D. 617, 626
  (N.D. Cal. 2018)............................................................................18, 20

*In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365
  (9th Cir. 1987)................................................................................. 18

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693, 695 F.2d (9th Cir. 1993) ................................................. 18

*In re Napster, Inc.*, 462 F. Supp. 2d 1060, 1067
  (N.D. Cal. 2006)............................................................................................ 4

*Institute of Cetacean Research v. Sea Shepherd Conservation Society*,
  774 F.3d 935, 945 (9th Cir. 2014) .......................................................... 18

*Kearney v. Foley & Lardner, LLP,* 590 F.3d 638, 649
  (9th Cir. 2009)................................................................................................ 4

*Louisiana Pac. Corp. v. Money Market Inst. Inv. Dealer*, 285 F.R.D. 481, 486
  (N.D. Cal. 2012)............................................................................................ 22

*Matthew Enterprise, Inc. v. Chrysler Group LLC,* Case No. 13-cv-04236-BLF
  2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016)........................................ 5

*Mosaid Technologies v. Samsung Electronics Co.*, 348 F.Supp.2d 332, 339
  (D. N.J. 2004)............................................................................................... 20

*National Hockey League v. Metropolitan Hockey Club, Inc*.
  427 U.S. 639, 643 (1976) .......................................................................... 20

*Painter v. Atwood,* 2:12-CV-01215-JCM, 2014 WL 1089694
  (D. Nev. Mar. 18, 2014) ............................................................................... 5

*Pioneer Drive, LLC v. Nissan Diesel America, Inc.,* 262 F.R.D. 552
  (D. Mont. 2009)........................................................................................... 24

*Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197
  (5th Cir. 1993)............................................................................................. 23

*Shell Offshore Inc. v. Greenpeace*, Inc., 815 F.3d 623, 628
  (9th Cir. 2016) ............................................................................................ 18

*Spencer v. Lunada Bay Boys,* No. CV1602129SJORAOX 2018 WL 839862,
  at *2 (C.D. Cal. Feb. 12, 2018) ............................................................... 5, 8

*Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9
  (9th Cir. 1992) ............................................................................................ 18

*Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y. 1991)......................... 8

*U.S. v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C. 1996)
*aff'd* 166 F.R.D. 367 (M.D.N.C. 1996)............................................................................. 23

*William T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455
   (C.D. Cal. 1984) ............................................................................................................ 8

*Wyle v. R.J. Reynolds Indus. Inc.,* 709 F.2d 585, 589 (9th Cir. 1983)............................ 19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106
   (9th Cir. 2001)............................................................................................................... 18

*Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003).......................... 8

**STATUTES**

Fed. Rules Civ. Pro. 37(b) ......................................................................................9, 18, 20

Fed. Rules Civ. Pro. 37(d) ....................................................................................20, 23, 24

Fed. Rules Civ. Pro. 37(e).........................................................................................4, 5, 6, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Recent deposition testimony has revealed the depths of Defendants PEP Research, LLC ("PEP"), Fred Reynders, and Brian Reynders (collectively, "Defendants") open contempt for the judicial system, Plaintiff Nutrition Distribution LLC's counsel and this Court.  Apparently undeterred by Court orders compelling discovery and ordering sanctions, Defendants have: (1) admitted to purposely destroying evidence related to Plaintiff's claims to gain an advantage in this dispute; (2) openly expressed its contempt for this Court's March 9, 2018 Order (the "Court Order") requiring Defendants to produce responsive documents by March 26, 2018; and (3) been purposefully duplicitous in failing to provide witnesses competent to testify on issues central to the case.

Defendants' conduct has prejudiced Nutrition Distribution's ability to prepare its case and has burdened Nutrition Distribution with significant attorneys' fees and costs. Plaintiff brings this motion so that the Court may fully address Defendants' misconduct, place Plaintiff in a position where it can prosecute its claims and order sanctions to ensure that no future misconduct occurs.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Nature of Case

Defendant PEP Research, LLC dba International Peptide is an online retail store that markets, advertises and sells various bodybuilding drugs without a medical prescription, including Sildenafil Citrate (the generic form of Viagra) and Tadalafil (the generic form of Cialis); Selective Androgen Receptor Modulators" ("SARMs") and synthetic peptides (collectively, the "Illicit Products").  Defendants fail to disclose any of the recognized harmful side effects of using these drugs, or that many of the products are prescription-only, or banned by anti-doping groups. Defendants mislabel these products as "Research Chemicals" and "Research Peptides" that are "not for human consumption"

and "intended for laboratory research only," but clearly markets and advertises its Illicit Products to bodybuilders and competitive athletes, the same customers Plaintiff targets, for human consumption. By selling these drugs, Defendants have created a marketplace that directly takes market share away from legitimate supplement companies, selling compliant products. Defendants' false and misleading advertising is harmful to the marketplace for dietary and natural sports supplements, including Plaintiff's products, and potentially to individual consumers. The current lawsuit seeks to end Defendants' false and misleading advertising of these drugs.

### B. <u>Plaintiff's Attempts to Obtain Written Discovery</u>

On November 3, 2017 this Court entered a scheduling order setting a number of deadlines including April 6, 2018, the deadline to complete all fact discovery. (ECF No. 22.) Soon thereafter, on November 13, 2017, Plaintiff propounded its First Set of Requests for Production of Documents ("RFPs") and First Set of Special Interrogatories ("Interrogatories") on Defendants. (Valerie Saryan Declaration ¶ 2, Ex. A, B.) Defendants served responses and objections to the Requests and Interrogatories on December 26, 2017. (Saryan Dec. ¶ 3, Ex. C, D.) In their responses to Plaintiff's Requests, Defendants stated they would produce documents for all Requests.  However, Defendants did not produce the requested documents. (Saryan Dec. ¶ 4, Ex. C.)

Plaintiff sent a Meet and Confer letter to Defendants on December 27, 2017 to address Defendants' deficiencies (Saryan Dec. ¶ 5; Ex. E), and Defendants served Amended Responses to the Interrogatories on January 3, 2018. (Saryan Dec. ¶ 6, Ex. F.) On January 5, 2018, the parties counsel met and conferred, exchanged several emails, but were unable to resolve their discovery issues, so they contacted the Court on January 17, 2018. (Saryan Dec. ¶ 7, Ex. G, H.)

### C. **The Court Orders Written Discovery to be Produced and Sanctions Defendants.**

On January 31, 2018, Plaintiff then filed a Motion to Compel Defendants' Further Discovery Responses and Production of Documents. (ECF No. 25.) On March 9, 2018 this Court issued an Order compelling Defendants to respond to Plaintiff's First Set of Special Interrogatories and to produce documents responsive to Set One of Plaintiff's Requests for Production no later than March 26, 2018 (herein, the "Court Order"). (ECF No. 30.) The Court also ordered that Defendants pay sanctions in the amount of $5,870.00. (ECF No. 30.) Defendants failed to produce all requested documents compelled by the Court Order by the March 26, 2018 deadline. (Saryan Dec. ¶ 8.)

### D. **Defendants Fail to Produce Documents and Amended Responses in Response to the Court Order.**

On March 26, Defendants served Second Amended Responses to Plaintiff's First Set of Interrogatories. (Saryan Dec. ¶ 9, Ex. Q.) On March 19 and 26, Defendants produced approximately 208 documents pursuant to the Court Order. Predictably, the documents produced were deficient, making a mockery of the Court's Order. Thus, on April 23, 2018, Plaintiff sent another Meet and Confer Letter regarding Defendants failure to comply with the Court's Order. Plaintiff requested Defendants produce all overdue documents ordered by this court by April 27, 2018. (Saryan Dec. ¶ 10, Ex. I.) However, Defendants did not respond to the letter or produce any of the requested documents. (Saryan Dec. ¶ 10.)

### E. **Plaintiff Takes Defendants' Depositions.**

On May 2 through May 4, 2018, Plaintiff conducted three depositions. As detailed below, the depositions confirmed that Defendants (1) spoliated evidence, (2) did not comply with the Court's Order, and (3) did not provide competent 30(b)(6) witnesses. (Saryan Dec. ¶ 11.)

After obtaining and reviewing the transcripts for the May depositions, on May 31, 2018, Plaintiff's counsel sent a second meet and confer letter to Defendants' counsel

addressing Defendants' failure to respond to Plaintiff's April 23, 2018 Meet and Confer letter regarding its failure to comply with the Court's Order[1]. (Saryan Dec. ¶ 12, Ex. J.) The parties met and conferred on June 4, 2018, called the clerk of court on June 5, 2018, but were unable to reach a resolution, necessitating this motion. (Saryan Dec. ¶ 13.)

## III.   THE COURT SHOULD ISSUE SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION AND DESTRUCTION OF EVIDENCE

### A.   Legal Standards.

"Spoliation is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Kearney v. Foley & Lardner, LLP,* 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). Every party has a duty to preserve relevant evidence it knows or should know is "relevant to a claim or defense of any party or that may lead to the discovery of relevant evidence." *Compass Bank v. Morris Cerullo World Evangelism,* 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015); *In re Napster, Inc.,* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).

Pursuant to Federal Rule of Civil Procedure 37(e), "If electronically stored information ("ESI") that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or

---

[1] The May 31, 2018 letter also referenced Defendants' spoliation of evidence and failure to produce a qualified person for PEP's Rule 30(b)(6) deposition on May 4, 2018, which are the subject of separate motions.

must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e).

"The range of measures is quite broad if they are necessary for this purpose," and "[m]uch is entrusted to the court's discretion." Rule 37(e)(1) Committee Notes. District Courts employ curative measures including monetary sanctions, attorneys' fees, adverse inference instruction, preclusion of evidence, permit party's to present evidence and argument of spoliation and lost ESI at trial, amongst others. *See e.g., Blumenthal Distributing, Inc. v. Herman Miller*, Case No. ED CV 14–1926–JAK (SPx), 2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016), *adopted in part by* 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016); *Matthew Enterprise, Inc. v. Chrysler Group LLC*, Case No. 13–cv–04236 BLF, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016); *Spencer v. Lunada Bay Boys,* No. CV1602129SJORAOX 2018 WL 839862, at *2 (C.D. Cal. Feb. 12, 2018) (Court employed Rule 37(e)(1) remedies including monetary sanctions in form of attorneys' fees, adverse inference, and costs of newly ordered deposition, where spoliating party deleted unrecoverable text messages); *Painter v. Atwood*, 2:12-CV-01215-JCM, 2014 WL 1089694 (D. Nev. Mar. 18, 2014)(Adverse inference instruction granted where Plaintiff deleted relevant Facebook comments with a culpable state of mind.)

## B. Defendants' Destruction of Evidence.

Defendants destroyed all of the social media posts that contained the false advertising that is the subject of this lawsuit. (Saryan Dec. ¶ 14.) On March 19, 2018, Defendants produced Court ordered records of its Facebook account (Saryan Dec. ¶ 14; Ex. K) and Twitter account (Saryan Dec. ¶ 14; Ex. L.) However, Defendants' produced social media documents did not include Facebook and Twitter posts relating to any of the illicit products detailed in the Complaint. (Saryan Dec. ¶ 15.) It is clear that Defendants deleted these incriminating posts as a result of this lawsuit, as Plaintiff has in its possession evidence of Facebook and Twitter posts regarding the illicit products at issue,

1  obtained as part of its pre-lawsuit investigation. (Saryan Dec. ¶ 15.)

2      The deleted social media "posts" include advertisements, photos, marketing, and

3  misleading statements at issue in this action. For example, Exhibit N includes a

4  screenshot Plaintiff obtained on August 10, 2016 of Defendants' Twitter advertisement of

5  "RAD140," an illicit product at issue in this action. (Saryan Dec. ¶ 16; Ex N.) The

6  advertisement is not on Defendants' produced Twitter account documents. (Saryan Dec. ¶

7  16; *See* Ex. L.) Further, Plaintiff's evidence shows that PEP had 66 Tweets on its Twitter

8  account on August 10, 2016, however Defendants March 19, 2018 version shows only 41

9  Tweets. (Saryan Dec. ¶ 16, *See* Ex. L, N.) Thus, these posts were deleted at some point

10 during or in anticipation of litigation between August 2016 and March 19, 2018. (Saryan

11 Dec. ¶ 16.)

12     Further, Plaintiff obtained a screenshot of a Facebook post on or around August

13 2016, that was not on Defendants' produced documents. (Saryan Dec. ¶ 16; Ex. M.)

14 Shockingly, when asked in his 30(b)(6) deposition, "…since the lawsuit was filed in

15 September 2016, have you deleted any posts from your Facebook?", Brent Reynders

16 testified "Yes." (Saryan Dec. ¶ 17; Ex. O; 30(b)(6) Dep. of Brent Reynders Tr. 112:23-

17 113:1.) Further, when asked if the deletion of posts had anything to do with this lawsuit,

18 he testified "…It's possible. Actually, it was --I think it had more to do with any copycat

19 companies, law firms like yours trying to file the same frivolous lawsuit." (Saryan Dec. ¶

20 18; Ex. P; 30(b)(6) Dep. of Brent Reynders Tr. 113:14-114:2.)

21     When asked about specific deleted posts, Brent Reynders, PEP's 30(b)(6) witness

22 for advertising, took things further. For example, when asked about his deletion of PEP's

23 marketing of Clenbuterol, a synthetic fat loss aide (See Ex. M), Brent testified, "I have

24 the right to do whatever I want to do with my Facebook account, regardless of a lawsuit

25 or not. If I wanted to--if I want to delete every single post on my Facebook page, I have

26 the right to do so." (Saryan Dec. ¶ 19, Ex. R; 30(b)(6) Dep. of Brent Reynders Tr.

27 115:18-116:2.)

28

## C. <u>Defendants Failure to Preserve Evidence Under FRCP 37(E).</u>

As the Court is already aware in the Motion to Compel briefing, Defendants failed to preserve evidence relevant to this case by purportedly carrying out a "computer system upgrade," which they allege has led to a loss of **all** financial information and emails, including all evidence of Defendants' sales of the illicit products prior to June 2017 (referred to herein as the "Computer Mishap"). (Saryan Dec. ¶ 20, *See* Ex. F at p. 5:18-22.) Defendants' recent deposition testimony has revealed that Defendants took no steps to preserve any evidence once the case began, as they are required to do. Although Defendants switched hosting providers twice prior to June 2017, and were aware of the risks of data loss, Defendants testified that after the lawsuit, they did not have any backup in place for emails and did not have cloud backup, but conducted the "computer system upgrade" anyways. (Saryan Dec. ¶ 21; Ex. S; 30(b)(6) Dep. of Brent Reynders Tr. 71:24-72:13.) Mr. Reynders has a background in computer systems, adding to the inference of intentional spoliation. (Saryan Dec. ¶ 22; Ex. T; 30(b)(6) Dep. of Brent Reynders Tr. 12:15-16.) *See Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2016 WL 815827, at *36 (S.D. Fla. Mar. 2, 2016)(Court imposed adverse inference where spoliator had educational and professional background with the preservation of metadata and forensic copies of electronic data and knew or should have known he was obligated to take precautions to preserve ESI on his computers in anticipation of litigation.).

Additionally, Defendants failed to preserve all "communications" between Brent and Fred Reynders regarding financial transactions. Brent disclosed in the 30(b)(6) deposition, that every three months he gives Fred Reynders PEP's total sales figures and sales tax for Texas IRS purposes.[2] (Saryan Dec. ¶ 23; Ex. U; 30(b)(6) Dep. of Brent Reynders Tr. 56:8-24.)

---

[2] Defendant did not disclose the existence of these communications until the May 4th Deposition. Additionally, they did not previously disclose the existence of Defendants Texas tax IRS documents.

1
2
3
4
5
6
7
8
9
10
11
12

Given that Defendants were sent a demand letter on June 1, 2016 and then served with the present Complaint on October 29, 2016, by June 2017, Defendants plainly had a duty to preserve ESI including e-mails, computer data, advertisements, and social media evidence, "reasonably calculated to lead to the discovery of admissible evidence" and "reasonably likely to be requested during discovery." *See Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003)(quoting *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y. 1991); *William T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D. Cal. 1984).). Here, Defendants duty was triggered after they received Plaintiff's demand letter. *See First Financial Security, Inc. v. Freedom Equity Group, LLC*, No. 15 –CV–1893 HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016)(noting that the duty to preserve evidence begins when litigation is pending or reasonably foreseeable.).

13

### D. **Defendants' Spoliation Warrants the Imposition of Sanctions.**

14
15
16
17
18
19
20
21
22
23
24
25

The evidence is plain that Defendants acted intentionally regarding the deletion of social media posts and their failure to preserve ***any*** financial documents demonstrating their sales over the last four years. Plaintiff requests that the Court (1) order Defendants' pay Plaintiff's attorneys' fees, (2) order an adverse inference that the social media posts deleted were false advertising of products that compete with Plaintiff, and (3) order an adverse inference that the spoliated financial information would demonstrate proximate cause and commercial injury to Plaintiff. *Spencer v. Lunada Bay Boys,* No. CV1602129SJORAOX 2018 WL 839862, at *2 (C.D. Cal. Feb. 12, 2018)(Court employed Rule 37(e)(1) remedies including monetary sanctions in form of attorneys fees, adverse inference, and costs of newly ordered deposition, where spoliating party deleted unrecoverable text messages.)[3]

26
27
28

---

[3] Other remedies in the Court's power under FRCP 37(e) overlap with those detailed infra for Defendants' other transgressions.  Plaintiff requests that if the Court is disinclined to grant Plaintiff the complete relief it requests in these briefs, that, alternatively it consider these remedies for Defendants violation of Rule 37(e).

# IV. DEFENDANTS SHOULD BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE MARCH 9, 2018 COURT ORDER

### A.   Legal Standards.

Under Rule 37(b)(2)(A)(i), when a defendant violates a Court Order, the Court may issue the following orders: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Moreover, Rule 37(b)(2)(C) provides for payment of expenses "[i]nstead of or in addition to" the orders available under Rule 37(b)(2)(A)(i).

By this Motion, Plaintiff is requesting that the Court order the following facts established:

- That Defendant PEP Research has made false and misleading statements of fact about their SARMs, Peptides, and male enhancement drugs in commercial advertisements and promotions;
- That Defendant PEP Research's statements are materially deceptive;
- That Defendant PEP Research has caused competitive and commercial injury to the Plaintiff.

Plaintiff also requests an order that Defendants produce all documents regarding their gross revenues and be prohibited from introducing exhibits or testimony relating to their expenses or profitability into evidence.  Plaintiff also requests an order that Defendants be found in contempt of Court.  Plaintiff also requests that the Court order monetary sanctions against Defendants and its counsel.

**B.** **Defendants' Disobedience of the Court Order.**

The Court's March 9 Order details with great specificity the documents Defendants were required to produce, and the Special Interrogatories that were required to be supplemented.  This section is organized by the language of the Court Order.

### 1.   Defendants Are in Contempt of Section D(1) of the Court's Order.

Section D(1) of the Court Order states:

"Defendants must produce documents "lost" in the computer mishap in June 2017 which are <u>in possession of third parties</u> over whom Defendant has control or from whom Defendant has a legal right to obtain the document(s) and which are responsive to RFP Nos. 1, 2, 4, 5, 8-13, 15, 19, 23, 24, 26, and 27. The relevant third parties include, but are not limited to PayPal, American Express, Discover, Heartland Payment Processing, AmazonPay, Stripe, Square, Inc., Authorize.net, WEPay, Transfirst LLC, Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing Ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements."
(ECF No. 30; p. 19:20-28.)(emphasis added)

Defendants are in contempt of the above portion of the Court's Order by failing to make an effort to obtain many of these documents from third parties. Defendants did not produce any responsive documents related to the contents of the illicit products. (Saryan Dec. ¶ 24.) Defendants failed to produce "invoices" responsive to RFP No. 5, despite admitting that invoices from two suppliers, PHTD and Wuhan, are accessible on "a computer program called WhatsApp that you use to communicate with, which you can print out an invoice if you'd like to." (Saryan Dec. ¶ 25; Ex. V; 30(b)(6) Depo. of Brent Reynders Tr. 139:1-8.)

Defendants produced Stripe payment processing statements only for November 27, 2015 to February 9, 2016.[4] (Saryan Dec. ¶ 26; Ex. W.) Defendants produced Green by

---

[4] PEP's Amegy bank statements show Stripe was used outside of these dates, including $6,300 in Stripe deposits in November 1 to 26, 2015, however Defendants only produced statements starting on November 27, 2015.

Phone statements only for January 1, 2016 through June 1, 2017. (Saryan Dec. ¶ 27; Ex. X.) Defendants produced EcorePay payment processing statements only for January 2017 through April 9, 2017. (Saryan Dec. ¶ 28; Ex. Y.)

### 2.  **Defendants Are in Contempt of Section D(2) of the Court's Order.**

Section D(2) of the Court Order states:

> "Defendants must produce documents from June 2017 to the present that are responsive to RFP Nos. 1, 5, 13, and 24[5]."
> (ECF No. 30; p. 20:1-2.)

Despite the Court Order, no documents were produced responsive to this portion of the Court's Order. (Saryan Dec. ¶ 29.)

### 3.  **Defendants Are in Contempt of Section D(3) of the Court's Order.**

Section D(3) of the Court Order states:

> "Defendants must produce documents from June 2017 to the present that are responsive to RFP Nos. 4, 8-13, 15, 19, 26, and 27 including responsive documents from PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay and Transfirst LLC."
> (ECF No. 30; p. 20:3-6.)

---

[5] The RFPs request the following: REQUEST FOR PRODUCTION NO. 1 Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the contents of the ILLICIT PRODUCTS, REQUEST FOR PRODUCTION NO. 5 Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR purchase of any of the ILLICIT PRODUCTS or their constituent ingredients, REQUEST FOR PRODUCTION NO. 13 Any and all DOCUMENTS and COMMUNICATIONS that set forth or relate to the identities, characteristics, locations or shipping or contact information of individuals or entities who have supplied the ILLICIT PRODUCTS to YOU, and REQUEST FOR PRODUCTION NO. 24 Any and all DOCUMENTS relating to consideration, discussion or analysis of the product description included on the label or packaging of any of the ILLICIT PRODUCTS.

Despite the clear language of Section D(3) of the Order compelling production by March 26, 2018, Defendants produced ***no documents*** from Amazon Pay, Authorize.net, WEPay and Transfirst LLC, and those documents that were produced were not in compliance with the Court Order. (Saryan Dec. ¶ 30.)

### (a)   Paypal Documents.

In response to the Court Order that Defendants produce PayPal documents, Defendants produced only ***one*** page indicating a zero balance, as opposed to the actual sales statements. (Saryan Dec. ¶ 31, Ex. Z.) Defendants disregard for the Court is demonstrated by the deposition testimony of their 30(b)(6) witness:

> Q. So you have access to your PayPal account. So then how come you didn't produce the PayPal statement?
> A. I don't recall. We just -- we produced everything at the time that we thought we had available.
> Q. Okay. So now that you know, can you produce your PayPal statements that have the itemized transactions?
> A. I believe so. I don't see how it's relevant to the case.

(Saryan Dec. ¶ 32; Ex. AA; 30(b)(6) Dep. of Brent Reynders Tr. 97:15-100:20.)

\*\*\*

When asked whether, in fact, PEP processed zero dollars worth of transactions using PayPal, Brent Reynders (PEP's 30(b)(6) witness for finances) claimed ignorance:

> Q. Is that true, just based on your – your personal knowledge?
> A. I'm going by what PayPal has on their statements.
> Q. But I'm asking you because you're the owner of PEP Research.
> A. But I'm not the owner of PayPal.

(Saryan Dec. ¶ 33; Ex. BB; 30(b)(6) Dep. of Brent Reynders Tr. 107:16-22.)

\*\*\*\*

When asked whether he believed the production complied with the Court ordered production of documents, he again claimed he had no idea how to comply with the Court's unambiguous Order:

> Q. Correct. It didn't say exactly PayPal purchases, it said "all purchases."
>  So does all purchases entail PayPal purchases?
> A. I'm not the judge.

(Saryan Dec. ¶ 34; Ex. CC; 30(b)(6) Dep. of Brent Reynders Tr. 104:3-104:23.)

Instead of complying with the Court orders, Reynders "passed the buck" to PayPal, who is not even the subject of the Court's Order:

> Q. So then what did you produce? What PayPal statement processing statement did you produce? What account?
> A. Well, I produced what was the processing for the credit cards that were rung up through PayPal on the website at the time when we were using PayPal as a processor. And it appears to me, when I looked it up, that at one time it would have showed, you know, processing of -- purchasing of products. But it looked like to me PayPal zeroed everything out. That's a question to ask PayPal.

(Saryan Dec. ¶ 35; Ex. DD; 30(b)(6) Dep. of Brent Reynders Tr. 105:23-106:8.)

Defendant's open gamesmanship in response to a Court Order is wholly improper and should be sanctioned.

**(b)     Financial Documents Available from the PEP's CPA**

Despite the fact that the Court Order required Defendants to produce sales and financial data responsive to RFP 4 (documents related to sales), RFP 26 (quarterly and financial statements), and RFP 27 (corporate tax returns) from third parties if necessary, Defendant Fred Reynders for the first time indicated at his May 3rd deposition, well-after the Court-ordered production date of March 26, 2018, that the financial data was in the sole possession of their CPA, Gordon Lewis, a witness that was never identified in

Defendants' Initial Disclosures or in any of their responses to written discovery. (Saryan Dec. ¶ 36; Ex. EE.)

### (c)  Tax Documents

Although the Court ordered tax documents to be produced (RFP 27), Defendants' indicated straight out that they did not intend to comply with the Court Order.  Indeed, Defendant Fred Reynders shockingly testified he had no intention of producing any of the Court ordered tax documents because "it's none of your business" adding, "…I guess you're going to have to go back to the judge and say you didn't get that, but I have no intention of releasing it to you…" (Saryan Dec. ¶ 37; Ex. FF; Fred Reynders Dep. Tr. 59:1-17.) Defendants' perspective of the Court's authority over him, and Defendant's counsel's interference in the deposition, can be summarized by the following exchanges:

> "Q. So are you aware of the March 19th court order? Do you know anything --
> A. That's meaningless -- that's meaningless to me.
> MR. LOBBIN: Object.
>
> ***
>
> Q. Okay. And you're aware, though, that the Court –
> A. No, I'm not aware.
> Q. -- disagreed with you and thought –
> A. No, I'm not aware.
> Q. Okay. Now that I'm telling you are you willing to produce all of your tax documents that are missing?
> A. No, because I don't trust you.
> Q. Okay. So you're willing to violate the Court order?
> A. No, I'm willing to listen to my attorney and if he tells me I have to produce it then I will. You need to talk to my attorney.
> Q. Okay.
> A. It's funny we're into May and now you're asking for this now.
> Q. This -- we have asked for this for the past several months, so I'm not sure what you're talking about.
> A. Well, I'm not sure what you're talking about. Go ahead. Next question."

(Saryan Dec. ¶ 38; Ex. GG; Fred Reynders Dep. Tr. 61:3-62:16.)

Q. (BY MS. SARYAN) So the court -- the judge she ordered that you produce all of your tax documents for International Peptide and that due date was March 26th but we never received any of it. We just have the first page of it, of your tax documents. So where are the rest?

A. I have no intention of releasing those because it's none of your business, and I – you're just telling me now you didn't get something you wanted, so I guess you're going to have to go back to the judge and say you didn't get that, but I have no intention of releasing it to you because it has nothing – it's not relevant to the case at all, the Lanham Act.

Q. And are you aware that when the Court ordered that you produce documents that you are violating a Court order by not producing the documents?

A. What I'm aware of is I was asked to release --

MR. LOBBIN: Hold on. It's a legal conclusion.

A. What I'm aware of is I was asked to --

MR. LOBBIN: Let me just -- if you want to discuss the Court order and any discovery type stuff we can discuss this off the record among counsel.

MS. SARYAN: Are you objecting formally right now or are you just speaking?

MR. LOBBIN: Yes, I'm objecting formally. I'm objecting on the basis of a legal conclusion and you want to keep asking about discovery then we can discuss it among counsel after the deposition.

Q. (BY MS. SARYAN) Okay. I just want to clarify --

MR. LOBBIN: The Court order.

(Saryan Dec. ¶ 39; Ex. HH; Fred Reynders Dep. Tr. 59:5-60:11.)

### (d)    Sales Figures

PEP's 30(b)(6) designated witness regarding financials, Brent Reynders, nonsensically claimed in his deposition that recent sales figures do exist, but that he provides the figures to his father co-defendant Fred Reynders, and that the company does not have it in his possession.

Q. So you give -- you give your father this information every three months. Correct?

A. The -- the total sales every three months, that's correct.

Q. And how do you give him this information? Is it via email?

A. I don't recall. I just--I know I give him the information. How I give it, I don't recall exactly.

Q. Okay. And why didn't you produce any of this information in your responses?

**A. It wasn't asked for.**

(Saryan Dec. ¶ 40; Ex. II; 30(b)(6) Dep. of Brent Reynders Tr. 56:21-57:7.)

1   ***

2   Q. Okay. Well, you just told me that every three months you give your father the total
    sales figures. And this is the first time that plaintiff is learning about this, so why
3   haven't you produced any of these communications? If they occur every three months,
    why haven't you produced them?
4
    A. I don't think there's anything to produce.
5

6   (Saryan Dec. ¶ 41; Ex. JJ; 30(b)(6) Dep. of Brent Reynders Tr. 57:19-58:1.)

7   Defendants' game of cat-and-mouse should be sanctioned.
8

9   **(e)    Other Categories of Financial Documents**

10  Defendants failed to produce post-June 2017 responsive documents for Green by

11  Phone, Ecorepay, Transfirst LLC, Authorize.net, and Square, Inc. (Saryan Dec. ¶ 42.)

12  When Defendants did actually produce documents nominally responsive to specific

13  categories ordered by the Court, they were not in compliance with the Court's Order.

14  (Saryan Dec. ¶ 43.)  Below is a summary:

15      •    AmazonPay.  Defendants produced AmazonPay documents that are

16  indecipherable and unreadable due to Defendants' improper formatting of the

17  statements, so that Plaintiff cannot interpret or read the statements. The

18  AmazonPay documents are insufficient because they were not produced in a proper

19  readable form. (Saryan Dec. ¶ 44; Ex. KK.)

20      •    WePay.  Defendants produced a two page document for WePay, a payment

21  processing company. However, the document has no decipherable information and

22  is not responsive to any of Plaintiff's Requests. Defendants did not produce an

23  itemized billing statement for WePay, it only produced a document that shows an

24  account exists. The document produced has a hyperlink to "View all previous

25  withdrawals," however Defendant failed to produce a statement of the previous

26  withdrawals. (Saryan Dec. ¶ 45; Ex. LL.)

27      •    Stripe. Defendants produced Stripe payment processing statements only for

28  June 1, 2017 through June 19, 2017. (Saryan Dec. ¶ 46; Ex. W.)

Deposition testimony of PEP Research, LLC reveals that failure to produce responsive documents to RFP Nos. 4, 8-13, 15, 19, and 26, for June 2017 to the present was intentional. For example, Defendants' failed to produce documents from June 2017 to the present that are responsive to RFP No. 4 which relates to sales of the illicit products; nor RFP No. 8, which relates to Defendants' income; nor RFP No. 19 which relates to current inventory of illicit products. (Saryan Dec. ¶ 47.) PEP also admits in deposition testimony that for all gross, costs, net, orders, and sales post-June 2017, Defendant can easily obtain from its website's built-in CRM software. However, Defendants did not produce anything from the website's built in CRM software.

> Q. Uh-huh. And how are you recording sales transactions currently, after the June 2017 computer crash?
> A. Well, now I can just log into the back of my website. And the website that I use has its own built-in CRM software. So I can just type in the dates and then pull up my gross costs, net, et cetera. The documents that you wanted and which I found out I couldn't give prior to June because that data didn't transfer over. So to answer your question, from June moving forward, there is actual CRM software built into the website.

(Saryan Dec. ¶ 48; Ex. MM; 30(b)(6) Dep. of Brent Reynders Tr. 153:17-154:3.)

Furthermore, Defendants possess responsive documents to RFP No. 4 (sales of illicit products) that were not produced. Defendants had produced one email invoice of a customer order dated January 1, 2018, which contains the following information: date, customer address, the name of the product purchased, and the price paid per product, and form of payment used by the customer. (Saryan Dec. ¶ 49; Ex. NN.) Defendant also confirms the existence of the email invoices for all sales post-June 2017 in deposition testimony:

> Q. Okay. And let's talk about just – when you do make a sale, how do you find out when you make a sale?
> A. We're notified -- we get a -- basically, the same invoice that the customer gets. It's an automated system.

1
2

Q. Uh-huh.
A. And then on the back-end of our website, it said -- it will show like orders pending or whatever. And then once it's shipped, it says "completed."

3
4

(Saryan Dec. ¶ 50; Ex. OO; 30(b)(6) Dep. of Brent Reynders Tr. 152:6-19.)

5
6

Defendants failed to produce any of the above-referenced email invoice orders. (Saryan Dec. ¶ 49.)

7
8

**C.**     **Defendants Should Be Found in Contempt and Pay Compensatory Monetary Sanctions**

9
10
11
12
13
14
15
16
17
18
19
20
21
22

A court may wield its civil contempt powers for two separate and independent purposes: (1) "to coerce the defendant into compliance with the court's order"; and (2) "to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). "'Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014). "The standard for finding a party in civil contempt is well settled: 'The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.' " *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)); *Harmon v. City of Santa Clara* (N.D. Cal. 2018) 323 F.R.D. 617, 626.

23
24
25
26
27
28

"It does not matter what the intent of the [party] was when they disobeyed the court's order." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987). The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order; however a person should not be held in contempt if his action appears to be based on good faith and reasonable interpretation of

court's order. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 F.2d (9th Cir. 1993).

An imposition of sanctions under Rule 37(b)(2) does not require willfulness, fault, or bad faith. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

The Court has wide discretion to select an appropriate sanction, but the sanction should be targeted to address the misconduct or prejudice resulting from the misconduct. With respect to monetary sanctions, once a violation is demonstrated, the disobedient party bears the burden of showing that the failure was justified or that special circumstances make an award of expenses unjust. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2862613, at *1-2 (N.D. Cal. July 11, 2012).

Here, Defendants should be coerced to comply with the Court Order because Plaintiff cannot litigate the case without the pertinent discoverable evidence missing. Plaintiff needs Defendants' financial information in order to calculate and show damages. Although bad faith is not required, it's important to note that Defendants withholding of financial information and documents was in bad faith, as evidenced by witness deposition testimony.

Furthermore, Defendants' should be coerced to produce all of its advertising, marketing and social media advertisements that they deleted because it severely impedes Plaintiff's ability to litigate its false advertising claims.

Additionally, Defendants should be ordered to compensate Plaintiff for the losses sustained and the prejudice suffered as a result of Defendants violation of the Court Order. Plaintiff had to expend extra time and resources just to identify all the areas of conflicting information in Defendants produced documents, discovery responses, and deposition testimony.

Therefore, Defendants' misconduct warrants compensatory sanctions.

**D.   Defendants And Their Counsel Should Be Ordered To Pay Plaintiff's Attorneys Fees And Costs In Connection With This Motion For Contempt.**

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus. Inc.,* 709 F.2d 585, 589 (9th Cir. 1983)(citing *National Hockey League v. Metropolitan Hockey Club, Inc.* 427 U.S. 639, 643 (1976). This authority includes imposing a "sanction of reasonable expenses, including attorneys' fees, caused by the failure to obey a discovery order, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C); *Falstaff Brewing Corp. v. Miller Brewing Co.* (9th Cir. 1983) 702 F.2d 770, 784; *Harmon v. City of Santa Clara* (N.D. Cal. 2018) 323 F.R.D. 617, 626. Monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was entitled. *Mosaid Technologies v. Samsung Electronics Co.* (D.N.J. 2004) 348 F.Supp.2d 332, 339.

Here, Defendants should be ordered to pay Plaintiff's attorneys' fees caused by the failure to obey the Court Order.

**V.   DEFENDANTS SHOULD BE SANCTIONED FOR THEIR FAILURE TO PRODUCE A KNOWLEDGEABLE WITNESS FOR DEFENDANT'S RULE 30(B)(6) DEPOSITION**

Plaintiff moves for sanctions against PEP under FRCP 37(d) for its failure to designate a qualified witness to testify at the May 4, 2018 Rule 30(b)(6) deposition of PEP Research, LLC dba International Peptide.

**A.   The 30(b)(6) Notice and Deposition.**

Plaintiff served Defendant PEP Research, LLC with a 30(b)(6) deposition notice directed to fourteen topics, and calling for production of a competent witness on May 4,

2018. (Saryan Dec. ¶ 51; Ex. PP.) The deposition notice included the topic:

"All information regarding and relating to PEP Research, LLC total sales, revenues, profits, gross revenues, net profits, overhead costs, costs of goods, expenses, income, taxes, salaries, retail costs, wholesale costs of the Illicit Products, and in total for PEP Research."

On May 4, PEP Research produced Brent Reynders as the designated witness on these topics. Brent Reynders' testimony, however, was totally evasive and uncooperative; including a feigned lack of understanding of basic questions that tracked virtually verbatim the 30(b)(6) topics. (Saryan Dec. ¶ 52.) Regarding financials:

> Q. I am asking you who has the most knowledge about the finances for PEP Research, LLC.
> A. That would be the CPA.
> Q. And did you contact your CPA to get all of the documents in response to plaintiff's discovery requests?
> A. I believe my father took care of that part.

(Saryan Dec. ¶ 53; Ex. QQ; 30(b)(6) Dep. of Brent Reynders Tr. 61:3-10.)

***

> Q. ...So now I'm asking the corporation these questions. And I'm asking, how does your CPA know how much PEP Research sells every year?
> A. Well, I don't know if he does or if he doesn't, to be honest, because those are talks between my father and the CPA.

(Saryan Dec. ¶ 54; Ex. RR; 30(b)(6) Dep. of Brent Reynders Tr. 53:10-15.)

***

> Q. Okay. So then are you willing to produce all of the documents and information that your CPA has to plaintiffs?
> A. I don't know what my CPA has.
> Q. That's okay. You can just ask him for everything that he has records of. Correct?
> A. It's my understanding you have our bank statements, our credit card statements and practically every single financial information that we could provide you in regards to discovery and interrogatories. So I don't see any reason to proceed further on giving you more documents.

(Saryan Dec. ¶ 55; Ex. SS; 30(b)(6) Dep. of Brent Reynders Tr. 55:2-17.)

***

Q. Okay. So then how does your accountant do taxes if he has no record of any purchases that you made over four years?

A. That would be a question for my CPA. I think he goes -- he goes by our credit card statements and our bank statements, I believe.

(Saryan Dec. ¶ 56; Ex. TT; 30(b)(6) Dep. of Brent Reynders Tr. 142:17-22.)

\*\*\*

Q. I was asking about the sales – sales data.

A. That's correct. Well, it was – it was -- I can't recall exactly how it was calculated because my father did that part. I believe it had to do with talks with my CPA and then the bank statements, et cetera.

Q. So does your CPA have sales records that you failed to produce plaintiffs?

A. No.

Q. So your CPA, he has no records that --

A. I don't have -- I don't have direct talks to the CPA, my father does.

Q. So you don't know whether or not he has records? What are you saying?

A. I'm saying the records that you're talking about were communicated by my father and I think -- I believe my CPA.

(Saryan Dec. ¶ 57; Ex. UU; 30(b)(6) Dep. of Brent Reynders Tr. 50:18-51:14.)

## B.   <u>Legal Standard.</u>

[C]ompanies "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and invasively answer questions about the designated subject matter." Notably, and because Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to all matters reasonably available to it, ... the Rule "implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the [Rule] 30(b)(6) deposition." In other words, personal knowledge of the designated subject matter by the selected deponent is of no consequence. *Bd. Of Trustees of Leland Stanford Jr. Univ. v. Tyco Intl. Ltd.*, 253 F.R.D. 524, 526 (C.D.Cal. 2008). "The [c]orporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition." *Louisiana Pac. Corp. v. Money Market Inst. Inv. Dealer* (N.D. Cal. 2012) 285 F.R.D. 481, 486.

A corporate designating party has a duty to designate more than one deponent if necessary to respond to relevant areas of inquiry on the noticed topics. *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.* (D. Nev. 2008) 251 F.R.D. 534. If an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent. *Id.*

## C.   Sanctions Should be Awarded Under Rule 37(d)

Fed.R.Civ.P. 37(d) grants courts the discretion to impose sanctions if a party fails to attend its own deposition. Many courts treat the failure of an organization to produce a prepared and educated witness under Rule 30(b)(6) as tantamount to a nonappearance at a deposition, meriting the imposition of sanctions. *See U.S. v. Taylor* (M.D.N.C. 1996) 166 F.R.D. 356, 363 *aff'd* (M.D.N.C. 1996) 166 F.R.D. 367; *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.* (3d Cir. 2000) 228 F.3d 275, 304; *See, e.g., Resolution Trust Corp. v. Southern Union Co., Inc.* (5th Cir. 1993) 985 F.2d 196, 197 (If the designee "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."); *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.* (D. Nev. 2008) 251 F.R.D. 534, 542 (Corporation did not satisfy its obligation to make conscientious, good faith effort to produce thoroughly educated witness about noticed deposition topics and facts known to corporation or its counsel, by presenting most knowledgeable person available, having him answer questions to extent that he could recall, where witness repeatedly testified that he did not know details of scope of work at issue, he was not familiar with "paperwork," and he was not familiar enough with what happened on project to be able to answer questions definitively.); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* (S.D.N.Y. 1997) 171 F.R.D. 135, 151.

Here, Defendant PEP Research, LLC designated Brent Reynders to testify on financial matters listed in Plaintiff's notice, however the designee was unable to answer questions regarding the company's finances, and testified that Defendant Fred Reynders, whose deposition was one day prior, and their CPA, Gordon Lewis, were most knowledgeable. The CPA was not in Defendants' disclosures or discovery responses, so Plaintiff was unaware of the CPA's existence until May 3, 2018. (Saryan Dec. ¶ 58.)

As a result of Defendants chicanery, Plaintiff has not been able to obtain any testimony regarding PEP Research's financials, despite taking three depositions of all of PEP's principals, and PEP's 30(b)(6) on the subject. (Saryan Dec. ¶ 59.)

Plaintiff requests Rule 37(d) sanctions that are adequate to deter Defendants' conduct in failing to properly produce a knowledgeable witness for the Rule 30(b)(6) deposition, and remedy any prejudice that it caused Plaintiff. *See Pioneer Drive, LLC v. Nissan Diesel America, Inc.* (D. Mont. 2009) 262 F.R.D. 552 (Court held that requiring corporate defendant to designate persons to be deposed by plaintiff on matters listed in its prior notice at location of plaintiff's choosing, requiring defendant to pay plaintiff's travel costs, expenses and attorneys' fees necessitated by retaking of deposition, and requiring defendant to pay reasonable costs and attorneys' fees incurred by plaintiff in bringing motion to sanction defendant for discovery violations, was adequate to deter defendant's conduct in failing to properly prepare designated witness for corporate deposition, and remedy any prejudice that it caused plaintiff.)

Plaintiff requests that the Court order PEP to produce a competent 30(b)(6) witness and pay for the fees and costs associated with this motion under Rule 37(d).

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Nutrition Distribution respectfully requests that the Court grant its motion in full.

DATED: June 12, 2018

TAULER SMITH LLP

By: *s/Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Nutrition Distribution, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

*Nutrition Distribution, LLC v. PEP Research, LLC, et al.* Case No. 2:16-cv-02328-BLM

I hereby certify that on June 12, 2018, copies of Plaintiff's NOTICE OF MOTION AND MOTION FOR SANCTIONS were filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

DATED: June 12, 2018

TAULER SMITH LLP


By: *s/Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Nutrition Distribution, LLC