1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11  NUTRITION DISTRIBUTION LLC,

Case No.: 16CV2328-WQH(BLM)

12                                   Plaintiff,

**ORDER (1) GRANTING PLAINTIFF'S MOTION TO COMPEL A SECOND RULE 30(b)(6) DEPOSITION AND FOR SANCTIONS FOR FAILING TO PRODUCE A RULE 30(b)(6) DEPONENT (2) DENYING PLAINTIFF'S MOTION FOR A FINDING OF CONTEMPT, (3) GRANTING IN PART PLAINTIFF'S REQUEST FOR MONETARY AND EVIDENTIARY SANCTIONS FOR VIOLATING THE COURT'S ORDER, AND (4) GRANTING PLAINTIFF'S MOTION TO COMPEL DOCUMENTS**

13  v.

14  PEP RESEARCH, LLC, BRIAN REYNDERS,
    FRED REYNDERS, AND DOES 1-10,

15
                                   Defendants.
16

17

18

19

20

**[ECF No. 40]**

21

22

**AND**

23

24
**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS FOR SPOLIATION**
25

26  ///

27  ///

28

Currently before the Court is Plaintiff's June 12, 2018 motion for sanctions [ECF No. 40 ("Mot.")], Defendants' June 19, 2018 opposition [ECF No. 41 ("Oppo.")], and Plaintiff's June 26, 2018 reply [ECF No. 42 ("Reply")]. For the reasons set for the below, the Court **GRANTS** Plaintiff's motion to compel a competent Fed. R. Civ. P. 30(b)(6) deponent, **GRANTS** Plaintiff's motion for sanctions pursuant to Fed. R. Civ. P. 37(d), **DENIES** Plaintiff's motion for a finding of contempt, and **GRANTS IN PART** Plaintiff's request for sanctions for violating the Court's Order.

The Court also **RECOMMENDS** that United States District Judge William Q. Hayes issue an order: (1) approving and adopting this Report and Recommendation; (2) **FINDING** that Defendants spoiled social media evidence, (3) **GRANTING** Plaintiff's motion for an adverse inference instruction "that the social media posts deleted were false advertising of products that compete with Plaintiff," (4) **DENYING** Plaintiff's request for an adverse inference instruction that "the spoliated financial information would demonstrate proximate cause and commercial injury to Plaintiff," and (5) **DENYING** Plaintiff's request for monetary sanctions related to spoliation.

## **RELEVANT DISCOVERY BACKGROUND**

The instant matter was initiated in this Court on September 15, 2016 when Plaintiff filed a complaint for false advertising in violation of the Lanham Act. ECF No. 1. On December 30, 2016, Plaintiff amended its complaint to allege violation of the Lanham Act and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ECF No. 9 ("FAC"). Defendants answered the FAC on September 21, 2017. ECF No. 17.

On January 17, 2018, counsel for Plaintiff, Ms. Valerie Saryan, and counsel Defendants, Messrs. Stephen Lobbin and Austin Richardson, contacted the Court regarding various discovery disputes concerning Defendants' responses to written discovery. ECF No. 24. In response, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the schedule. See ECF Nos. 25, 27, and 28. On March 9, 2018, the Court issued an Order Granting in Part Plaintiff's Motion to Compel Responses and Production of Documents. ECF No. 30.

On March 19 and 26, 2018, Defendants served Second Amended Responses to Plaintiff's First Set of Interrogatories. Mot. at 11; see also ECF No. 40-1, Declaration of Valarie Saryan in Support of Motion for Sanctions ("Saryan Decl.") at ¶ 9, Exh. Q. On April 23, 2018, Plaintiff sent a meet and confer letter to Defendants stating that the production was insufficient and in violation of the Court's March 9, 2018 order, and requesting supplemental production by April 27, 2018. Id. at ¶ 10, Exh. I. Defendants did not respond to the letter or produce additional documents. Id. at ¶ 10.

On April 25, 2018, Plaintiff served Defendant PEP Research, LLC with a Fed. R. Civ. P. 30(b)(6) deposition notice covering fourteen topics. Mot. at 28; see also Saryan Decl. at ¶ 51, Exh. PP. On May 2-4, 2018, Plaintiff's counsel, Ms. Saryan, deposed two people in their individual capacities and one 30(b)(6) witness. Id. at ¶ 11. After reviewing the transcripts of the depositions, Plaintiff's counsel sent another meet and confer letter to Defendants' counsel regarding Defendants' lack of response to the April 23, 2018 meet and confer letter. Id. at ¶ 12. The parties met and conferred on June 4, 2018, but were unable to resolve the issue. Id. at ¶ 13.

On June 5, 2018, Ms. Saryan, and Mr. Richardson, contacted the Court regarding various discovery disputes concerning Defendants' compliance with the Court's March 9, 2018 order. ECF No. 39. In response, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the schedule. See Mot., Oppo., and Reply.

## ORDER

**A.    Timing**

Defendants contend that Plaintiff's motion should be denied as untimely. Oppo. at 3. Specifically, Defendants contend that the Court's Scheduling Order requires discovery motions to be filed within thirty days of the service of an objection, answer or response which becomes the subject of dispute, and that since their last document production was on March 26, 2018, this June 12, 2018 motion is tardy and raises issues that have been waived. Id. Plaintiff does not address this issue in its motion or reply. See Mot.; see also Reply.

The Court's scheduling order states that:

> All discovery motions must be filed within 30 days of the service of an objection, answer or response which becomes the subject of dispute or the passage of a discovery due date without response or production, and only after counsel have met and conferred and have reached impasse with regard to the particular issue. The Court's procedures for resolving discovery disputes are set forth in Magistrate Judge Barbara L. Major's Civil Chambers Rules, which are posted on the Court's website. A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.

ECF No. 22 at 2. Here, Defendants produced amended responses on March 19, 26, 2018. Mot. at 11; see also Saryan Decl. at ¶ 9, 10, Exh. Q. Plaintiff sent Defendants a meet and confer letter regarding the production on April 23, 2018. Id. at ¶ 10, Exh. I. After receiving no response, Plaintiff's counsel sent a follow-up letter on May 31, 2018. Id. at ¶ 12, Exh. J. While the June 19, 2018 filing date of Plaintiff's motion is more than thirty days after the March 26, 2018 production and April 23, 2018 meet and confer letter, it is not more than thirty days after the follow-up meet and confer letter of May 31, 2018 that was sent because Defendants failed to respond to the first letter. Because the Court's order requires discovery motions to be filed within thirty days and only after counsel have met and conferred and have reached impasse with regard to the particular issue, the Court will consider Plaintiff's motion and does not find a waiver of the issues. Additionally, it is worth noting that Plaintiff may not have been fully aware of some of the issues raised in the instant motion, for example, the spoliation claims and failure to provide a competent Fed. R. Civ. P. 30(b)(6) witness, until after receiving the transcripts of the May 2-4, 2018 depositions on May 31, 2018. Id. at ¶ 12. The instant motion was filed within thirty days of Plaintiff receiving the deposition transcripts. Mot.

**B.    Failure to Produce Rule 30(b)(6) Witness**

      1.    Arguments

        Plaintiff requests sanctions against Defendant "PEP under Fed. R. Civ. P. 37(d) for failure to designate a qualified witness to testify at the May 4, 2018 Rule 30(b)(6) deposition of PEP Research, LLC dba International Peptide." Mot. at 28, 32. Plaintiff argues that a party's failure to send a prepared witness for a Fed. R. Civ. P. 30(b)(6) deposition is similar to a

nonappearance at a deposition and merits sanctions.  Id. at 31.  Plaintiff explains that Defendant PEP Research, LLC designated Brent Reynders to testify as to the financial matters listed in the notice of deposition, but that Mr. Reynders was unable to answer basic questions and testified that Fred Reynders and their CPA, Mr. Gordon Lewis, were the most knowledgeable on those topics.  Id. at 32.  Plaintiff concludes that it has been unable to "obtain any testimony regarding PEP Research LLC's financials" because Brent Reynders was unable to answer questions regarding the company's finances and because Mr. Lewis was not disclosed in Defendants' disclosures  or discovery responses.  Id.  Plaintiff seeks sanctions "that are adequate to deter Defendants' conduct in failing to properly produce a knowledgeable witness for the Rule 30(b)(6) deposition, and remedy any prejudice that it caused Plaintiff."  Id.

Defendants contend that Plaintiff's arguments are "moot as a practical matter" because Mr. Fred Reynders, who was deposed the day before the Fed. R. Civ. P. 30(b)(6) deposition, answered Plaintiff's questions regarding the noticed topic on behalf of the company.  Oppo. at 4.  "Plaintiff deposed Fred Reynders on financial topics for many hours, and clearly he was speaking on behalf of the company, PEP."  Id.

Plaintiff replies that all financial matters were not answered by Fred Reynders and that both Fred and Brent Reynders testified that Mr. Lewis "is most knowledgeable of PEP's finances and taxes and intentionally did not produce him for the Rule 30(b)(6) deposition."  Reply at 4.

2.    Legal Standard

Fed. R. Civ. P. 30(b)(6) provides that

[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . .

Fed. R. Civ. P. 30(b)(6).

"The persons designated must testify about information known or reasonably available to the organization."  Id.  A company may designate more than one witness if necessary to

respond to all of the noticed topics and must prepare each designated deponent "so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." Great Am. Ins. Co. of New York v. Vegas Const. Co., 251 F.R.D. 534, 540 (D. Nev. 2008) (quoting Alliance v. District of Columbia, 437 F.Supp.2d 32, 37 (D.D.C.2006)). "Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, 'this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.'" Id. (quoting Sprint Communications Co., LP v. Theglobe.com, Inc., 236 F.R.D. 524, 528 (D. Kan. 2006) (acknowledging compliance with Rule 30(b)(6) may be onerous but that the Rule's requirements "negate any possibility that an inquiring party will be directed back and forth from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding on that corporation."). "If an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent." Id. (citing Marker v. Union Fidelity Life Insurance, 125 F.R.D. 121, 126 (M.D.N.C.1989); Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995); Starlight International, Inc. v. Herlihy, 186 F.R.D. 626, 638 (D. Kan. 1999); and Sony v. Soundview Technologies, 217 F.R.D. 104, 112 (D. Conn. 2002)). "[T]he purpose underlying Rule 30(b)(6) would be 'frustrated [if] a corporate party produces a witness who is unable ... or unwilling to provide the necessary factual information on the entity's behalf.'" Memory Integrity, LLC v. Intel Corp., 308 F.R.D. 656, 661 (D. Or. 2015) (quoting Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000)).

Fed. R. Civ. P. 37(d) allows sanctions when a party fails to attend its own deposition. Specifically, Fed. R. Civ. P. 37(d)(3) states that:

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including

6

attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). "A number of courts have held that the failure to produce a Rule 30(b)(6) designee who is adequately educated and prepared to testify on designated topics to bind the corporation amounts to a nonappearance which could warrant the imposition of sanctions." Great Am. Ins. Co. of New York, 251 F.R.D. at 542 (citing Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D. N.Y. 1997); Resolution Trust Corp. V. Southern Union, 985 F.2d 196, 197 (5th Cir. 1993) (stating that "[w]hen a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through the agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."); U.S. v. Taylor, 166 F.R.D. 356, 363; Black Horse Lane Assoc., 228 F.3d 275, 303); see also Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552, 559–60 (D. Mont. 2009) (imposing sanctions where "Defendant's designee was not knowledgeable about the noticed matters nor was he prepared to give complete and binding answers on behalf of the organization. The Defendant failed its obligation to produce a witness under 30(b)(6). While a physical body was present, no person who satisfied the legal requirements of Rule 30(b)(6) was produced.").

3.    Analysis

Defendant designated Brent Reynders as its Rule 30(b)(6) witness for all topics. See Saryan Decl. at ¶¶ 19, 52, 58. Topic Five of the Rule 30(b)(6) deposition notice reads:

All information regarding and relating to PEP Research, LLC total sales, revenues, profits, gross revenues, net profits, overhead costs, costs of goods, expenses, income, taxes, salaries, retail costs, wholesale costs of the Illicit Products, and in total for PEP Research.

Saryan Decl. at Exh. PP.

When asked questions regarding this topic, Brent Reynders' responses revealed that he was not adequately prepared or willing to testify on this topic and that (1) PEP's CPA, who is

7

only in direct contact with Fred Reynders, is the person most knowledgeable about PEP's financial information, (2) he does not believe it is necessary to provide Plaintiff's counsel with any more information than what they have already been given, (3) and that he is unaware of how the accountant is able to do PEP's taxes and does not know how much business PEP did in a year. Saryan Decl. at Exhs. QQ, RR, SS, TT, and UU. Specifically, Brent Reynders testified as follows:

So now I'm asking the corporation these questions. And I'm asking, how does your CPA know how much PEP Research sells every year?

A. Well, I don't know if he does or if he doesn't, to be honest, because those are talks between my father and the CPA.

. . .

Q. Okay. So then are you willing to produce all of the documents and information that your CPA has to plaintiffs?

A. I don't know what my CPA has.

Q. That's okay. You can just ask him for everything that he has records of. Correct?

A. It's my understanding you have our bank statements, our credit card statements and practically every single financial information that we could provide you in regards to discovery and interrogatories. So I don't see any reason to proceed further on giving you more documents.

Q. So you don't think that plaintiffs have the right to any more of your finances? Is that what you're saying?

A. I don't believe there is any more.

. . .

Q. Okay. So then how does your accountant do taxes if he has no record of any purchases that you made over four years?

A. That would be a question for my CPA. I think he goes -- he goes by our credit card statements and our bank statements, I believe.

. . .

Q. So your CPA has all of that information for PEP Research -- or International Peptide, I mean?

A. What information exactly again?

Q. I was asking about the sales – sales data.

A. That's correct. Well, it was – it was -- I can't recall exactly how it was calculated because my father did that part. I believe it had to do with talks with my CPA and then the bank statements, et cetera.

Q. So does your CPA have sales records that you failed to produce to plaintiffs?

A. No.

Q. So your CPA, he has no records that --

A. I don't have -- I don't have direct talks to the CPA, my father does.

Q. So you don't know whether or not he has records? What are you saying?

A. I'm saying the records that you're talking about were communicated by my father and I think -- I believe my CPA.

Id.

Defendants do not dispute that Brent Reynders was the designated Fed. R. Civ. P. 30(b)(6) witness[1], but they contend that the issue is "moot" because Fred Reynders testified about the company's financial affairs during his individual deposition. Oppo. at 4. Defendants do not provide any deposition transcripts or other evidence to support their position that Fred Reynders adequately addressed questions regarding financial information for PEP and do not address the fact that Fred Reynders was not the designated deponent or whether or not Brent Reynders was qualified or prepared to be designated as the Rule 30(b)(6) deponent. Oppo. Defendants also fail to address the fact that Brent Reynders testified that Mr. Lewis is the person most knowledgeable about the noticed deposition topic.[2] Id. Instead, Defendants' position

---

[1] Brent Reynders declares "[i]n my deposition, I was prepared to answer (and did answer) Plaintiff's questions about the company's CPA and other financial topics. My deposition lasted over 6 hours. Because my father Fred already had answered many questions on those financial/CPA topics in his deposition the day before, however, I often referred to him as the best person to talk to about such questions." Brent Decl. at ¶ 6.

[2] Brent Reynders' relevant testimony went as follows:
    Q. I am asking you who has the most knowledge about the finances for PEP Research, LLC.

9

seems to be that it does not matter who they designated as their 30(b)(6) witness because Fred Reynders answered questions related to financial topics and "clearly he was speaking on behalf of the company, PEP." Id. at 4. Defendants do not state that Fred Reynders provided responses to the exact same questions Brent Reynders failed to adequately answer, only that he responded to questions about financial topics. Id. Defendants provide no law or legal authority to support their position that Fred Reynders' individual testimony on unidentified financial topics moots their failure to provide a knowledgeable and prepared Rule 30(b)(6) witness on Topic Five.

The Court finds that Brent Reynders was not adequately prepared or sufficiently knowledgeable to testify as a corporate witness regarding the finances of PEP as described in Topic Five. In addition to admitting that fact himself, the submitted deposition testimony demonstrates that Brent Reynders was unable or unwilling to adequately respond to Plaintiff's counsel's questions which were squarely in line with the noticed deposition topic. Furthermore, Defendants and defense counsel make no attempt to argue that Brent Reynders was an appropriate Fed. R. Civ. P. 30(b)(6) witness. See Oppo. Defendants' argument that Plaintiff's position is moot because Fred Reynders testified about financial matters is meritless. Defendants did not designate Fred Reynders as their Fed. R. Civ. P. 30(b)(6) deponent and, therefore, Plaintiff's counsel would not have prepared herself to ask Fred Reynders the same questions she planned to ask the Fed. R. Civ. P. 30(b)(6) deponent. Requiring Plaintiff to rely on the deposition testimony of Fred Reynders as the Fed. R. Civ. P. 30(b)(6) witness testimony when he was not so designated is improper and would allow Defendants to circumvent their obligations under the Federal Rules. Moreover, Defendants did not establish that Fred Reynders answered as a corporate witness all of the relevant financial questions asked by Plaintiff's counsel.

---

A. That would be the CPA.
Q. And did you contact your CPA to get all of the documents in response to plaintiff's discovery requests?
A. I believe my father took care of that part.
Saryan Decl. at QQ.

16CV2328-WQH(BLM)

Accordingly, the Court **GRANTS** Plaintiff's motion to compel a competent Fed. R. Civ. P. 30(b)(6) deponent. Defendants must designate and prepare a person who will be competent to respond to questions regarding Defendants' finances as described in Topic Five of the deposition notice. <u>See</u> Saryan Decl. at Exh. PP. Defense counsel may choose to conduct the deposition telephonically. The deposition must take place on or before **August 31, 2018**. Because Defendants' failure to designate a competent Fed. R. Civ. P. 30(b)(6) deponent was not substantially justified and is the reason a second deposition is needed, Defendants and their counsel are **ORDERED** to pay all of the costs and fees associated with the second Fed. R. Civ. P. 30(b)(6) deposition. <u>See</u> Fed. R. Civ. P. 37(d)(3). As set forth in section D, Defendants and defense counsel also are ordered to pay Plaintiff's reasonable attorney's fees.

**C.** <u>**Contempt**</u>

      1.   <u>Arguments</u>

Plaintiff argues that Defendants have violated the Court's March 9, 2018 order [<u>see</u> ECF No. 30] and requests a number of sanctions including that Defendants be held in contempt.

Defendants contend that PEP has done all that it "***reasonably*** could do" to collect and produce records from third parties and produced at least 200 pages of third-party records. Oppo. at 4 (emphasis in original); <u>see</u> <u>also</u> ECF No 41-1, Declaration of Fred Reynders ("Fred Decl.") at ¶ 3; ECF No. 41-2, Declaration of Brent Reynders ("Brent Decl.") at ¶ 5. Defendants also contend that several of the third parties refused to cooperate and that all tax documents in their possession have been produced. Brent Decl. at ¶ 10-27. Defendants state that they are willing to continue their search for requested third-party documents if this Court so orders. <u>Id.</u> at 3, 5.

Plaintiff replies that the deposition testimony of Fred and Brent Reynders does not support their claim that they produced all the documents that they were required to produce. Reply at 2-3.

      2.   <u>Legal Standard</u>

The civil contempt power of a magistrate judge is as follows:

Upon the commission of any such act ... where ... the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii). "The assigned district judge then hears the evidence to determine whether the conduct warrants punishment and may impose contempt sanctions in the same manner and to the same extent as for a contempt committed before the district judge." Stewart Title Guar. Co. v. 2485 Calle del Oro, LLC, 2017 WL 3381814, at *14–15 (S.D. Cal. Aug. 7, 2017) (adopted in part and declined in part in Stewart Title Guar. Co. v. 2485 Calle del Oro, LLC, 2017 WL 5029613, (S.D. Cal. Nov. 3, 2017)) (citing 28 U.S.C. § 636(e)(6)(B)(iii) and In re Kitterman, 696 F. Supp. 1366, 1370 (D. Nev. 1988)).

To hold a party in contempt, a court must find by clear and convincing evidence that the party violated a specific and definite order and that it had sufficient notice of its terms and the fact that it would be sanctioned if it did not comply. In civil contempt proceedings [,] the contempt need not be willful.

Am. Registry of Radiologic Technologists v. Moultry, 2018 WL 1108730, at *2 (S.D. Cal. Mar. 1, 2018) (citing See In re Dyer, 322 F.3d 1178, 1190–91 (9th Cir. 2003)) (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949)). "A judgment of civil contempt is coercive in nature and is entered to achieve full compliance with the court's order or to compensate a party for losses or damages sustained by reason of the contemnor's noncompliance." United States v. Posner, 2017 WL 3726046, at *2 (S.D. Cal. Aug. 28, 2017) (citing United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947); Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992); and South Suburban Housing Center v. Berry, 186 F.3d 851, 854 (7th Cir. 1999)). Coercive sanctions should be designed to achieve the desired result and to reflect the character and magnitude of harm if the desired result is not achieved. See Id. (citing Whittaker Corp., 953 F.2d at 517-18).

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

12

16CV2328-WQH(BLM)

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. <u>See</u> Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." <u>Id.</u> at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." <u>Id.</u> at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

3.  <u>Analysis</u>

    a.  <u>Third-Party Documents</u>

In its March 9, 2018 order, the Court ordered Defendants "to produce documents from June 2017 to the present that are responsive to RFP Nos. 1, 5, 13, and 24." ECF No. 30 at 20.

Plaintiff alleges that Defendants failed to produce any documents responsive to RFP Nos. 1, 5, 13, and 24 which concern product formulation and ingredient purchases. Mot. at 19; <u>see</u> <u>also</u> ECF No. 30 at 11. Defendants do not address this specific allegation and instead generally

respond that they have "produced all of the documents in its possession, and also produced other documents it spent time and effort gathering from third parties." Oppo. at 3; see also Brent Decl. at ¶ 5; Fred Decl. at ¶ 3.

Because Defendants have not provided evidence indicating they complied with this order, do not contend that they responded to these RFPs, and do not specifically object to Plaintiff's allegation that they failed to do so [see Oppo.], the Court finds that Defendants violated the Court's order as to these RFPs.

In its March 9, 2018 order, the Court also ordered Defendants

> to produce documents 'lost' in the computer mishap in June 2017 which are in the possession of third parties over whom Defendant has control or from whom Defendant has a legal right to obtain the document(s) and which are responsive to RFP Nos. 1, 2, 4, 5, 8-13, 15, 19, 23, 24, 26, and 27. The relevant third parties include, but are not limited to PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, Transfirst LLC., Facebook, Twitter, Instagram, YouTube, Limelight, 561 Media, Constant Contact, Microsoft Bing ads, Mailchimp, SEO Smooth Inc., and Facebook advertisements.

Mot. at 19.

Plaintiff argues that Defendants have violated this portion of the Court's order by "failing to make an effort to obtain many of these documents from third parties." Mot. at 18. Plaintiff argues that Defendants (1) failed to produce any responsive documents relating to the contents of the illicit products,[3] (2) failed to produce invoices responsive to RFP No. 5, even though they admitted that invoices from at least two suppliers are accessible, (3) only produced Stripe statements for November 27, 2015 to February 9, 2016 despite bank statements showing that Stripe was used outside of these dates, (4) only provided Green by Phone statements from January 1, 2016 through June 1, 2017, and (5) produced only one statement from EcorePay

---

[3] RFP No. 1 seeks "Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the contents of the ILLICIT PRODUCTS." ECF No. 30 at 4 n. 1.

14

for January 2017 through April 9, 2017.[4]  Mot. at 18; <u>see</u> <u>also</u> Saryan Decl. at ¶¶ 24-28, Exh. Y.  Defendants do not address all of the specific alleged deficiencies and merely state that they have done all they could reasonably do and have produced "at least 200 pages of third-party records which PEP had to expend great effort to retrieve."  Oppo. at 4.  Defendants do not describe the type of documents that were produced nor which RFPs those 200 documents answered.  <u>Id.</u>  Defendants do not describe the specific efforts they made to obtain responsive documents and merely state that they were unable to obtain anymore documents, but will continue to seek additional documents if the Court so orders.  <u>Id.</u>; <u>see</u> <u>also</u> Brent. Decl. at ¶ 10.  With respect to Stripe, Green Pay by Phone, EcorePay, Paypal, Amazon Pay, Square, and WEPay, Defendants state that they have produced all documents in their possession, but again, do not describe what efforts, if any, they made to obtain the ordered documents.  <u>Id.</u>; <u>see</u> <u>also</u> Brent. Decl. at ¶¶ 10-27.

In its March 9, 2018 order, the Court also ordered Defendants "to produce documents from June 2017 to the present that are responsive to RFP Nos. 4, 8-13, 15, 19, 26 and 27[5] including responsive documents from PayPal, American Express, Discover, Heartland Payment Processing, Amazon Pay, Stripe, Square, Inc., Authorize.net, WEPay, and Transfirst LLC."  Mot. at 20.

Plaintiff argues that Defendants "produced ***no documents*** from AmazonPay, Authorize.net, WEPay, and Transfirst LLC, and that those documents that were produced were not in compliance with the Court Order."  <u>Id.</u> at 20 (emphasis in original), 24; <u>see</u> <u>also</u> Saryan Decl. at ¶ 30.  Specifically, Plaintiff complains that Defendants produced AmazonPay documents that were "indecipherable and unreadable" and a two-page WePay document that had "no decipherable information and is not responsive to any of Plaintiff's requests."  <u>Id.</u> at 24.  Plaintiff

---

[4] Plaintiff does not specify which RFP(s) numbers 3-5 were in response to.  Mot. at 19.

[5] RFP Nos. 4, 26 and 27 will be addressed in the following section.

16CV2328-WQH(BLM)

argues that Defendants also produced only one page from PayPal showing a zero balance and no actual sales statements.  Id. at 20; see also Saryan Decl. at ¶ 31, Exh. Z.

Regarding documents from Authorize.net and Transfirst, LLC, Defendants state that they "diligently tried to collect the third-party documents but [Transfirst, LLC, and Authorize.net] did not cooperate."  Brent. Decl. at ¶¶ 23, 25.  With respect to documents from American Express, Discover, Heartland Payment Processing, Defendants state that they "did not possess any responsive documents and w[ere] unable to collect any after diligent search and inquiry."  Id. at ¶¶ 18-20.  Regarding Stripe, Paypal, Amazon Pay, Square, and WEPay, Defendants state that "all documents in PEP's possession have been produced after a diligent search and inquiry."  Oppo. at 4.; see also Brent. Decl. at ¶¶ 11-27.

Once again, Defendants fail to provide any facts or explanation to support their claim that they performed "diligent search[es]" and that the third-parties refused to cooperate.[6]  Because Defendants do not explain their efforts - Did they call? Speak with an actual person? Email? Go to an office and meet someone in person? Write a letter? Leave messages? Access website or database information? Try more than once? – the Court is unable to evaluate whether Defendants' efforts were diligent or all they "reasonably could do in producing documents from third parties."  Brent Decl. at ¶10 (emphasis omitted).  Similarly, Defendants merely state that the third parties refused to cooperate.  Id. at ¶¶10-27.  Defendants do not state what efforts they made and what responses the entities gave.  Id.  For example, did the parties say no and refuse to speak on the issue further? Did they agree to provide documents for a fee? Did they say the documents are no longer in their possession? Or that they were destroyed? Did they say that Defendants did not have the authority to request documents relating to their own

_____

[6] Defendants do attach a letter from one company, Seo Smooth, stating that there is no sales or transaction data outside of what is on the InternationalPeptide.com database and that ["t]here's no records that are available for us to look up prior to December 2017, or June 2017 as requested."  Oppo. at Exh. B. While this letter provides some information, it does not address what information is in the identified database and does not describe Defendants' efforts to obtain responsive documents.

16CV2328-WQH(BLM)

business?  Given Defendants' inadequate and unsubstantiated response, the Court cannot find that Defendants have complied with their discovery obligations and this Court's order.

Brent Reynders' deposition testimony also undercuts the veracity of Defendants' claim. In his Fed. R. Civ. P. 30(b)(6) deposition, Brent Reynders testified that he had access to the Paypal account and was aware that Paypal statements can be produced to show itemized transactions, but that he did not "see how it's relevant to the case."  Saryan Decl. at AA.[7]  This testimony indicates that there are additional responsive Paypal documents available to Defendants that were not produced.  For all of these reasons and based on the evidence presented, the Court finds that Defendants have not complied with the Court's March 9, 2018 discovery order regarding third-party documents.  While this could be a basis for civil contempt, the Court declines to certify it at this time.[8]  The Court believes and hopes that it can obtain

_____

[7] The Court notes that after being informed by Plaintiff's counsel that the judge compelled production of the statements in her March 9, 2018 order and asked by Plaintiff's counsel if he would produce the statements, Brent Reynders responded "If that's what the judge asked, then yes."  Saryan Decl. at AA.  The Court has not been told whether any additional documents were produced.

[8] The Court notes that contempt is often found or recommended after multiple violations of Court orders or with more egregious facts than those that are present in the instant matter.  See Am. Registry of Radiologic Technologists, 2018 WL 1108730 at *2 (granting motion for civil contempt where defendant violated a court order by failing to deliver materials as required, failing to file a compliance report, and submitting forged documents to maintain employment); Mankel v. Gov't Employees Ins. Co., 2017 WL 3234382, at *3 (D. Nev. July 31, 2017) (finding claims adjuster to be in civil contempt and recommending that the district judge "enter an order requiring Rodriguez to reimburse plaintiff for costs incurred in preparing for the deposition in the amount of $1,180.70, and be adjudged in contempt" and recommending a bench warrant be issued for his arrest if he fails to appear before the District Court, where claims adjuster failed to comply with a deposition subpoena and to appear for order to show cause hearing or to file an objection to the court's order); Compass Bank v. Morris Cerullo World Evangelism, 2015 WL 7106001, at *7 (S.D. Cal. Nov. 13, 2015)(recommending that the District Judge issue an Order requiring a defaulted party to appear in her courtroom to show cause why he should not be adjudged in contempt where party failed to appear for three noticed depositions resulting in a first order to show cause as to why party should not be held in contempt, failed to respond to defendant's contempt motion as ordered, failed to attend the initial contempt hearing, arrived at a second contempt order two hours late when it was over, and failed to pay Defendant $12,496.00 in sanctions in violation of the court's order).

17

discovery compliance without resorting to contempt proceedings. See Posner, 2017 WL 3726046, at *2 (contempt is designed to achieve compliance and to compensate for damages due to non-compliance).

Accordingly, Defendants are again **ORDERED** to produce (1) all documents from June 2017 to the present that are responsive to RFP Nos. 1, 5, 13, and 24, (2) third-party documents "lost" in the computer mishap of June 2017 that are responsive to RFPs 1, 2, 4, 5, 8-13, 15, 19, 23, 24, 26, and 27, and (3) all documents from June 2017 to the present that are responsive to RFP Nos. 4, 8-13, 15, 19, 26 and 27. Defendants must supplement their responses on or before **August 24, 2018**.

If Defendants are unable to obtain any additional documents from third parties, they must provide Plaintiff with a declaration containing a detailed explanation of the diligent efforts they made to obtain such documents. The declaration must include the replies Defendants received in response to those efforts and explain why they were unable to obtain additional documents. For documents or statements that cover only a portion of the relevant period, Defendants must explain specifically why they were able to produce documents covering a portion of the time period, but not the entire time period as ordered. The declaration also must be provided to Plaintiff's by **August 24, 2018**.

b. <u>Tax, Accounting, and Sales Documents</u>

The Court ordered Defendants to produce (1) "Any and all DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to YOUR sales of the ILLICIT PRODUCTS during the RELEVANT PERIOD," (2) "All of YOUR quarterly and annual financial statements for the RELEVANT PERIOD, including balance sheets, income statements, and profit and loss statements," and (3) "All of YOUR corporate tax returns for the RELEVANT PERIOD." ECF No. 30 at 6 n. 2 (Requests for Production Nos. 4, 26, and 27), 7, 11.

Plaintiff argues that Defendant PEP's testimony reveals that Defendants failed to produce documents responsive to RFP Nos. 4, 8-13, 15, 19 and 26 for the relevant time period that are in Defendants' possession. Mot. at 25. Defendants respond that all tax documents in their possession have been produced "after a diligent search and inquiry" and that "all documents in

PEP's possession have been produce after a diligent search" with respect to other non-third-party financial documents such as PEP's CRM documents.  Oppo. at 4; <u>see</u> <u>also</u> Brent Decl. at ¶¶ 26-27.  Again, Defendants do not provide any facts to support their stated conclusion.  <u>Id.</u>

Despite Defendants' conclusory declarations, the deposition testimony presented to the Court indicates that Defendants have not produced all of the relevant and required financial records.  For example, when asked about PEP's tax documents, Fred Reynders testified that he had

> no intention of releasing those because it's none of your business, and I -- you're just telling me now you didn't get something you wanted, so I guess you're going to have to go back to the judge and say you didn't get that, but I have no intention of releasing it to you because it has nothing -- it's not relevant to the case at all, the Lanham Act.

Saryan Decl. at Exh. FF.  Mr. Fred Reynders further testified that he would not produce the missing tax documents because he does not trust Defendants and that he would only do so if his attorney told him he should.[9]  Saryan Decl. at Exh. GG.  When Brent Reynders was asked about recent sales information, he stated that he provides the total sales information to Fred Reynders every three months, but does not know how he does that and did not produce the information because "[i]t wasn't asked for."  <u>Id.</u> at Exh. II.  He also testified that the company now uses a website with built-in CRM software that records sales transactions and that there are email invoices every time a sale is made and a record is kept in the back end of PEP's website.  <u>Id.</u> at Exh. OO, MM.  Plaintiff notes that no information from CRM was provided and that no invoices were produced.  Mot. at 26; <u>see</u> <u>also</u> Saryan Decl. at ¶ 49.  Brent Reynders declares that all CRM "documents in PEP's possession have been produced," but he does not provide information such as Bates numbers or date/method of production so Plaintiff could verify CRM production.  Brent Decl. at ¶ 27.  Nowhere in his declaration does Brent Reynders state that he diligently tried to collect the information from Mr. Lewis, PEP's CPA or that he was unable

---

[9] It is unclear from the pleadings if Mr. Lobbin told Fred Reynders to produce the documents and, if he did, whether or not Fred Reynders complied.

16CV2328-WQH(BLM)

to recover documents from the CPA "despite a diligent attempt to do so." Brent Decl. Brent Reynders' declaration is strangely silent on the topic of Mr. Lewis and any financial documents that should be available to Defendants from him.

For all the reasons set forth above, the Court again declines to certify facts to the District Judge for contempt proceedings. However, Defendants are again ordered to provide responsive documents "lost" in the computer mishap of June 2017 and all documents responsive to RFPs 4, 8-13, 15, 19, 26, and 27. If Defendants are unable to obtain any additional documents, they must provide Plaintiff with a declaration containing a detailed explanation of the diligent efforts that they made to obtain such documents.

Plaintiff's request for an order requiring Defendants to produce "all documents regarding their gross revenues" is **GRANTED**. Defendants must supplement their responses and provide the declaration if required on or before **August 24, 2018**.

c.  Conclusion

While the Court has denied Plaintiff's contempt motion, Defendants are warned that another failure to comply with this Court's orders could result in a contempt finding.

## D.  Additional Sanctions

Plaintiff seeks additional sanctions in the form of monetary and evidentiary orders to compensate it for Defendants' numerous discovery violations and the costs associated with filing the instant motion. Mot. at 17, 32. Specifically, Plaintiff argues that as a result of Defendants' failure to provide the ordered discovery, Defendants should be prohibited from introducing exhibits or testimony relating to their expenses or profitability into evidence and the Court should order the following facts established:

That Defendant PEP Research has made false and misleading statements of fact about their SARMs, Peptides, and male enhancement drugs in commercial advertisements and promotions;

That Defendant PEP Research's statements are materially deceptive;

That Defendant PEP Research has caused competitive and commercial injury to the Plaintiff.

Id. at 17.  Plaintiff also seeks $21,597.62 in monetary sanctions to cover the costs incurred in preparing and filing the Fed. R. Civ. P. 30(b)(6) and contempt portions of the instant motion. Saryan Decl. at ¶ ¶ 60, 61.

Defendants contend only that they and their counsel have limited resources to spend defending this action, that their counsel should not be responsible for sanctions because he did not "actively cause[] [Defendants] to fall short in discovery," and that Plaintiff's request for over $30,000 is "obviously excessive and unsupportable." Oppo. at 2 n. 1.

    1.   Legal Standard

When a party fails to obey a discovery order, Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) allows for various sanctions, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).  Instead of or in addition to these sanctions, Fed. R. Civ. P. 37(b)(2)(C) permits a court to

> order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). "With respect to monetary sanctions, once a violation is demonstrated, the disobedient party bears the burden of showing that the failure was justified

or that special circumstances make an award of expenses unjust." <u>Hullinger v. Anand</u>, 2016 WL 7444620 at *8 (citing <u>Apple Inc. v. Samsung Elecs. Co., Ltd.</u>, 2012 WL 2862613, at *6 (N.D. Cal. July 11, 2012).

Except for the sanction of dismissal, an imposition of sanctions under Rule 37(b)(2) does not require willfulness, fault, or bad faith. <u>Id.</u> at *8 (citing <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001)). However, a finding of good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust and the severity of the sanctions. <u>Lewis</u>, 261 F.R.D. at 518–19 (citing <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1994)). The Ninth Circuit has set forth five factors to be considered by the court in selecting the appropriate sanction:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

<u>Hullinger</u>, 2016 WL 7444620 at *8 (quoting <u>Valley Engineers Inc. v. Electric Engineering Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998)). "The Ninth Circuit has held that a party's failure to produce documents as ordered is considered sufficient prejudice to establish sanctionable conduct. Moreover, in the Ninth Circuit prejudice from unreasonable delay is presumed." <u>Id.</u> (quoting <u>Apple Inc.</u>, 2012 WL 2862613 at *1-2). When considering evidentiary, issue or terminating sanctions, factors three and five "become particularly important." <u>Id.</u>

3. <u>Analysis</u>

Plaintiff requests evidentiary sanctions consisting of judicial determinations that Defendants have "made false and misleading statements of fact" that were "materially deceptive" and "caused competitive and commercial injury to the Plaintiff." Mot. at 17. This request is premised on Defendants' failure to provide a knowledgeable corporate deponent and failure to provide all of the ordered discovery. <u>Id.</u> The discovery violations mostly involve financial records and information and they do not justify the requested broad evidentiary sanctions. Moreover, as discussed at length above, the less drastic sanctions of monetary

sanctions, a second deposition, and explanatory declarations are sufficient to remedy Defendants' discovery violations. After considering the <u>Valley Engineer</u> factors, the Court declines to recommend the imposition of the requested evidentiary sanctions.

Defendants did not object to Plaintiff's counsels' billing rates or break down of time spent preparing the instant motion. Oppo. Defendants only generally state that Plaintiff's request for over $30,000 is "obviously excessive and unsupportable." Oppo. at 2 n. 1.

The Court **GRANTS** Plaintiff's request for monetary sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C). Here, the Court has found that Defendants failed to comply with several parts of the Court's March 9, 2018 discovery order and failed to adequately prepare and present a deponent pursuant to Fed. R. Civ. P. 30(b)(6). As a result of Defendants' violations, the Court has granted Plaintiff's motion for sanctions. The only denial is the degree of the sanction as the Court denied Plaintiff's request for contempt and evidentiary sanctions, but ordered monetary and other sanctions. Because Plaintiff is the prevailing party, it is entitled to recover reasonable attorney's fees unless Defendants establish that their failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Defendants have not established that their failure was justified and the Court finds based on all of the evidence that it was not justified. The Court also finds that there are no circumstances that make a monetary award unjust. Defendants assert that they are a small business without a lot of resources, but they provide no evidence to support this claim. Oppo. Defense counsel argues that he should not be "even 'jointly and severally' liable for discovery sanctions" unless he actively caused Defendants to fall short in discovery which he did not do. <u>Id.</u> at 2 n.1. Defense counsel failed to provide any facts to support his conclusion and the evidence presented to the Court indicates that counsel did contribute to the discovery violations and failures to comply.[10]

_____

[10] For example, as noted above, Brent Reynders testified that he would be willing to produce the relevant PayPal statements "if that's what the judge asks." Saryan Decl. at Exh. AA. It is clear from the Court's order that Judge Major ordered these statements to be produced. As counsel, Mr. Lobbin should have told his client that he was required to produce these documents. His apparent failure to do so resulted in his client appearing to not understand that production of these statements is exactly what Judge Major ordered. In addition, Fred Reynders testified

16CV2328-WQH(BLM)

Accordingly, the Court finds that monetary sanctions against both Defendants and defense counsel are appropriate and the only remaining issue is whether the requested amount is reasonable.

Rule 37 mandates that monetary sanctions must consist of "reasonable expenses incurred in making the motion, including attorney's fees." Ms. Saryan declares that she spent 60% of the time spent preparing this motion (or 45.18 hours amounting to $17,394.30) on the sections pertaining to the Fed. R. Civ. P. 30(b)(6) deposition and contempt.[11] Saryan Decl. at ¶ 60 n.1. In determining the reasonable attorneys' fees, the Court will not include the 4.5 hours Ms. Saryan spent drafting meet and confer letters or the .9 hours she spent drafting meet and confer emails and participating in phone calls. The Court also declines to include the 2.8 hours spent "compiling, labeling, and preparing exhibits" or the 2.2 hours spent "preparing accompanying documents for filing." Ms. Saryan declared that she anticipated spending six hours responding to Defendants' opposition, but does not state in her reply declaration if that estimate was accurate, low, or high. The Court finds that 3 hours is a reasonable amount of time for Ms. Saryan to have spent preparing the five page reply to Defendants' five page opposition. That leaves 31.78 hours or $12,235.30. Ms. Saryan declares that her partner, Mr. Tauler, whose billing rate is $650 per hour, spent 9.7 hours working on the instant dispute. Id. at ¶ ¶ 61-62. A little over six of those hours (or $4,203.32) were spent on the Fed. R. Civ. P. 30(b)(6) deposition and contempt sections. Id. The Court finds that four hours ($2,600) is a reasonable amount of time for reviewing the instant motion. Defendants do not challenge the reasonableness of the billing rate of either attorney so the Court will use the stated billing rates. Although the Court did not grant Plaintiff's request for contempt, the Court found the elements were established so the Court declines to further reduce the attorneys' fees award.

---

that he would only produce relevant compelled tax documents if his attorney told him to do so. Id. at Exh. GG. It is unclear from the pleadings if Mr. Lobbin told Fred Reynders to produce the documents and if he did, whether or not Fred Reynders complied.

[11] Ms. Saryan declares that her billing rate is $385 per hour. Saryan Decl. at ¶ 60.

16CV2328-WQH(BLM)

Defendants and their counsel are **ORDERED** to pay $14,835.30 in sanctions to Plaintiff on or before **September 7, 2018**. Defendants must file a declaration verifying said payment on or before **September 14, 2018**.

    **IT IS SO ORDERED.**

Dated: 8/9/2018

Hon. Barbara L. Major
United States Magistrate Judge

## REPORT AND RECOMMENDATION

**A.**    **Spoliation of Evidence**

    1.    Arguments

    Plaintiff argues that "Defendants destroyed all of the social media posts that contained the false advertising that is the subject of this lawsuit." MTC at 13. While Defendants produced some social media documents, the production did not include Facebook or Twitter posts relating to the illicit products identified in the complaint. Id. Plaintiff knows that the relevant posts existed because it has some posts in its possession from its pre-lawsuit investigation. Id. at 14; see also Saryan Decl. at ¶ 15, Exh. N. Plaintiff further argues that Defendants' failure to preserve evidence during their computer system upgrade, which occurred after they were aware of the instant litigation, adds to the inference of evidence spoliation. Id. at 15. "Plaintiff requests that the Court (1) order Defendants pay Plaintiff's attorneys' fees, (2) order an adverse inference that the social media posts deleted were false advertising of products that compete with Plaintiff, and (3) order an adverse inference that the spoliated financial information would demonstrate proximate cause and commercial injury to Plaintiff." Mot. at 16. Plaintiff further requests that if the Court is not inclined to grant its requested relief, that it consider the sanctions available for violating FRCP 37(e). Id.

    Defendants contend that they do not have the social media documents Plaintiff argues were destroyed and that there is no evidence to support Plaintiff's claims that the "posts were

16CV2328-WQH(BLM)

deleted . . . in anticipation of litigation." Oppo. at 3. Defendants further contend that the issue is moot since Plaintiff has the documents it is seeking. Id.

Plaintiff replies that Defendants have not provided any evidence to rebut the fact that they destroyed evidence and the fact that Plaintiff obtained some information as part of its pre-lawsuit investigation does not excuse the spoliation by Defendants. Reply at 3-4.

2.    Legal Standard

Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. United States v. Kitsap Physicians Svs., 314 F.3d 995, 1001 (9th Cir. 2002) (citing Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991)). For a finding of spoliation, a party must show that "(1) the party with control over the evidence had an obligation to preserve it at the time of destruction; (2) the evidence was destroyed with a 'culpable state of mind'; and (3) the evidence was relevant to the party's claim or defense." In re Hitachi Television Optical Block Cases, 2011 WL 3563781, at *5 (S.D. Cal. Aug. 12, 2011) (quoting Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D. N.Y. 2003); see also Kitsap Physicians Serv., 314 F.3d at 1001 (willful spoliation occurs when a party destroys evidence after being given notice that documents were potentially relevant to the litigation before they were destroyed.)). Once spoliation is shown, the guilty party has the burden of demonstrating that no prejudice resulted from the spoliation. Id. at 6 (quoting Hynix Semiconductor Inc. v. Rambus, Inc., 591 F.Supp.2d 1038, 1060 (N.D. Cal., 2006) (internal citations omitted), overturned on other grounds.). "Prejudice is determined by looking at whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence." Id. (citing Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006)).

A party who has engaged in spoliation of evidence may be sanctioned under the inherent power of the federal courts to sanction abusive litigation practices or under Fed. R. Civ. P. 37. See Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015). Spoliation sanctions can "include assessing attorney's fees and costs, giving

the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." Id. (quoting U.S. v. Town of Colorado City, Ariz., 2014 WL 3724232, *7 (D. Ariz. Jul. 28, 2014); citing Surowiec v. Capital Title Agency, Inc., 790 F.supp.2d 997, 1008 (D. Ariz. 2011)). When considering sanctions for spoliation, "a court will seek a sanction that will: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position it would have been in absent the wrongful destruction of evidence by the opposing party. In re Hitachi Television Optical Block Cases, 2011 WL 3563781, at *6 (citing Advantacare Health Partners L.P. v. Access IV, 2004 WL 1837997 *4, (N.D. Cal. 2004)). Courts should also consider "the degree of fault of the party who destroyed the evidence and whether a lesser sanction exists that would avoid substantial unfairness to the opposing party." Id. (citing Brosnan v. Tradeline Solutions, Inc., 681 F.Supp.3d 1094, 1104 (N.D. Cal. Jan. 15, 2010)). The destruction of evidence does not require bad faith to warrant evidentiary sanctions. Id. (citing Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)). "Sanctions may be imposed on a party that merely had notice that the destroyed evidence was potentially relevant to litigation." Id. (citing Glover, 6 F.3d at 1329). "The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." Compass Bank, 104 F. Supp. 3d at 1052 (quoting U.S. Legal Support, Inc. v. Hofioni, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014) (citing Thompson v. U.S. Dep't of Housing & Urban Dev., 219 F.R.D. 93, 100 (D. Md. 2003)).

An adverse inference jury instruction based on the spoliation of evidence requires a showing that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Sherwin-Williams Co. v. JB Collision Servs., Inc., 2015 WL 4077732, at *2–3 (S.D. Cal. July 6, 2015) (quoting Reinsdorf v. Sketchers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013). The requisite culpable state of mind for

purposes of spoliation and adverse inference instructions does not require bad faith. <u>Apple Inc. v. Samsung Elecs. Co.</u>, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012). A party's "conscious disregard" of its obligations is sufficient to show a culpable state of mind. <u>Id.</u> (citing <u>Hamilton v. Signature Flight Support Corp.</u>, 2005 WL 3481423, *7 (N.D. Cal. Dec. 20, 2005)). The required culpable state of mind may be demonstrated by ordinary negligence. <u>See</u> <u>Reinsdorf</u>, 296 F.R.D. at 627–28 (citing <u>Zubulake IV</u>, 220 F.R.D. at 220 and <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002) (the negligent destruction of evidence may be sanctioned because "each party should bear the risk of its own negligence."))[12]; <u>see also</u> <u>Miranda v. Wyatt</u>, 677 F. App'x 432, 432–33 (9th Cir. 2017) (noting that the "parties agree that <u>Residential Funding Corp. v. DeGeorge Financial Corp.</u>, 306 F.3d 99 (2d Cir. 2002), provides an appropriate test for determining when an adverse inference instruction can be given"). However, "when the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction." <u>Id.</u> (quoting <u>Pension Comm.</u>, 685 F.Supp.2d at 467–68; <u>see also</u> <u>Zubulake IV</u>, 220 F.R.D. at 220;

---

[12] Many courts in this Circuit have adopted the reasoning of the <u>Zubulake IV</u> and <u>Residential Funding Corp.</u> courts and have similarly instructed that "[t]he 'culpable state of mind' includes negligence." <u>Reinsdorf</u>, 296 F.R.D. at 627–28 (quoting <u>Lewis v. Ryan</u>, 261 F.R.D. 513, 521 (S.D. Cal. 2009)) (citing <u>FTC v. Lights of America Inc.</u>, 2012 WL 695008 at *2 (C.D. Cal. Jan. 20, 2012); <u>Housing Rights Center v. Sterling,</u> 2005 WL 3320739 at *8 (C.D. Cal. Mar. 2, 2005); <u>Cottle–Banks v. Cox Communications, Inc.</u>, 2013 WL 2244333 at *14 (S.D. Cal. May 21, 2013); <u>Aguirre v. Home Depot U.S.A., Inc.</u>, 2012 WL 3639074 at *3 (E.D. Cal. Aug. 23, 2012); <u>Uribe v. McKesson</u>, 2010 WL 4235863 at *3 (E.D. Cal. Oct. 21, 2010); <u>Infor Global Solutions (Michigan), Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 2009 WL 5909255 at *3 (N.D. Cal. Oct. 21, 2009). The court in <u>Residential Funding Corp.</u> explained:

> It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

<u>Id.</u> (quoting <u>Turner v. Hudson Transit Lines, Inc.</u>, 142 F.R.D. 68, 75 (S.D. N.Y. 1991)).

Cottle-Banks v. Cox Commc'ns, Inc., 2013 WL 2244333, at *15-*16 (S.D. Cal. May 21, 2013) (negligent destruction of documents did not warrant adverse inference instruction or evidence preclusion where non-spoliating party failed to show relevance and thus was not prejudiced). "The purpose of an adverse inference is not to impose any moral blame but to restore evidentiary balance and the risk should fall on the party responsible for the loss." Victorino v. FCA US LLC, 2017 WL 4541653, at *9 (S.D. Cal. Oct. 11, 2017) (citing Residential Funding Corp., 305 F.3d at 108 (quoting Turner, 142 F.R.D. at 75)).

3.   Analysis - Social Media Posts

Plaintiff has presented evidence supporting a finding of spoliation of relevant evidence - posts on Defendants' social media sites relating to the products and advertising at issue in this case. Mot. With regard to the first element, Defendants do not dispute that they had control over their social media accounts or that they had an obligation to preserve relevant evidence, including the evidence identified by Plaintiff in its motion, beginning no later than June 1, 2016. Oppo. This position is supported by the fact that Plaintiff served a demand letter on Defendants on June 1, 2016 and served the initial complaint on October 29, 2016 and at least the complaint, if not both documents, identified the products at issue and the allegedly false and misleading advertisements. Mot. at 16; see also ECF No. 1; In re Napster, Inc., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action").[13]

With regard to the second element, Plaintiff has presented evidence demonstrating that the social media posts were destroyed with a "culpable state of mind." In re Hitachi, 2011 WL 3563781, at *5 (quoting Zubulake, 220 F.R.D. at 220. During the deposition of Defendant Brent Reynders, Plaintiff's counsel asked "[a]nd since the lawsuit was filed in September 2016, have you deleted any posts from your Facebook?" Saryan Decl. at Exh. O. Brent Reynders responded

---

[13] "The preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." See Surowiec v. Capital Title Agency, Inc., 790 F.Supp.2d 997, 1006 (D. Ariz. 2011) (quoting Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 290 (S.D. N.Y. 2009).

"yes." Id.  When asked if the deleted posts had anything to do with this lawsuit, Brent Reynders responded "It's possible. Actually, it was -- I think it had more to do with any copycat companies, law firms like yours trying to file the same frivolous lawsuit."  Id.  When asked about deleting posts related to the marketing of Clenbuterol, one of the products at issue in this case, Brent Reynders responded "I have the right to do whatever I want to do with my Facebook account, regardless of a lawsuit or not. If I wanted to -- if I want to delete every single post on my Facebook page, I have the right to do so."  Id. at Exh. R.  While Brent Reynders declares in support of his opposition brief that no social media posts were "delete[d] [] intentionally for purposes of this litigation" and that any such deletions occurred prior to the litigation, he provides no evidence to support this statement.   Brent Decl. at ¶ 8.  Mr. Reynders does not explain which posts were deleted, including the content of the posts, when the posts were deleted, or why they were deleted other than to opine that it was for "an unrelated, business purpose."  Id. at ¶ 8.  Mr. Reynders merely declares that any deletions were not done "intentionally" to affect this litigation.  Id.  However, as set forth above, Mr. Reynders' deposition testimony contradicts his declaration.  Mr. Reynders attempts to explain the contradictory deposition testimony by characterizing his deposition answers as "chippy" because he was emotional and the deposition was conducted telephonically.  Id. at ¶ 9.  Despite Mr. Reynders' explanation, the evidence establishes that Defendant deleted relevant social media posts after this case was filed and the law does not require that Defendants destroyed or deleted the posts "intentionally for this litigation;" it merely requires destruction after notice to preserve or negligence.  See Kitsap Physicians Serv., 314 F.3d at 1001; see also Reinsdorf, 296 F.R.D. at 627–28 (a culpable state of mind includes negligence).  Accordingly, the second element is satisfied.

The third element also is satisfied as Plaintiff has presented evidence showing that the deleted evidence was relevant to its claims as it "include[d] advertisements, photos, marketing, and misleading statements at issue in this action."  Mot. at 14 (citing Saryan Decl. at ¶ 16, Exhs. M, N).  Defendants do not dispute this claim.  Oppo.  Initially, Defendants' deposition testimony and the lack of any legitimate explanation for the destruction of evidence establishes bad faith.

Even if not bad faith, Plaintiff has established prejudice.  See <u>Reinsdorf</u>, 296 F.R.D. 604, 628 (C.D. Cal. 2013) ("[w]hen evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. . . . By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions.") (quoting <u>Zubulake</u>, 220 F.R.D. at 220.   Defendants contend that "because apparently Plaintiff already has the documents it is seeking from PEP (which PEP does not have), this issue is moot regardless."  Oppo. at 3.   Contrary to Defendants' contention that "Plaintiff complains about 'social media documents' not produced (but which Plaintiff already has)," Plaintiff only has some Facebook and Twitter posts regarding the challenged products which it obtained during its pre-lawsuit investigation.  Saryan Decl. at ¶ 15.   Plaintiff does not have all of the posts and cannot obtain them because all relevant social media posts including the "advertisements, photos, marketing and misleading statements at issue in this action" have been destroyed by Defendants.  Saryan Decl. at ¶ 16.  Given the nature of the litigation and of the evidence that has been deleted, the Court finds that the deleted posts have "impaired the [Plaintiff's] ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence."  <u>In re Hitachi</u>, 2011 WL 3563781, at *6 (citing <u>Leon</u>, 464 F.3d at 959).

       4.   <u>Analysis – Financial Documents, Computer Upgrade Data Loss</u>

     Plaintiff argues that Defendants also spoliated financial information and seeks a second adverse instruction that "the spoliated financial information would demonstrate proximate cause and commercial injury to Plaintiff."  Mot. at 16.   Specifically, Plaintiff argues that Defendants failed to preserve evidence when they performed a computer upgrade which they allege resulted in a loss of all financial data and emails prior to June 2017.  <u>Id.</u> at 15.   Plaintiff argues that Defendants' deposition testimony supports Plaintiff's position that Defendants "took no steps to preserve any evidence once the case began" despite being aware of the risk of data loss.  <u>Id.</u>  Plaintiff notes that this is true despite the fact that Brent Reynders has a background in computer systems.  <u>Id.</u>  Plaintiff further notes that Defendants were informed of this litigation in a June 1, 2016 demand letter and that the complaint was served on Defendants on October 29, 2016.

Therefore, Defendants' duty to preserve evidence began in June 2016, well before the June 2017 computer upgrade. Id. at 16. Finally, Plaintiff argues that Defendants failed to preserve communications between Brent and Fred Reynders regarding Defendants' financial transactions. Id. at 15.

Defendants respond that "this Court already has ruled specifically on this issue" and that "[t]here is no basis for additional sanctions for alleged 'spoliation' which did not occur, much less purposefully." Oppo. at 3 n. 2 (emphasis in original) (citing ECF No. 30 at 18).

Initially, the Court has not ruled on the issue of Defendants' failure to back up their computer system and did not sanction Defendants for the alleged failure. In its March 9, 2018 discovery order, the Court granted in part Plaintiff's motion to compel and request for sanctions and found that

> monetary sanctions are appropriate because the Court is granting the majority of Plaintiff's motion to compel and Defendant's discovery failures were not substantially justified. Fed. R. Civ. P. 37(a)(5)(C). Defendant's failure to obtain and produce documents under its custody and control was not reasonable or justified, especially since Defendant claims to have lost all computer data in June 2017 and it has been aware of this case since at least September 2016. Similarly, Defendant's failure to timely produce all hard-copy and digital responsive documents created after June 2017 is not justified. Also, Defendant's attempt to limit the interrogatories to the six-month time period of June-December 2017 due to the alleged computer mishap is improper and not justified. The Court also finds that there are no "other circumstances mak[ing] an award of expenses unjust" under either subsection. Fed. R. Civ. P. 37(a)(5)(A). Accordingly, the Court will impose sanctions and because the discovery failures involve both legal and factual failures, the Court will impose the sanctions against Defendant and its counsel.

ECF No. 30 at 18. This finding by the Court addressed the lost computer data in terms of whether or not it justified Defendants' failure to provide adequate discovery responses such that sanctions were not appropriate, and did not address the actual failure of Defendants to preserve their financial data or sanction Defendants for failing to preserve data. That issue was not addressed in the Court's previous order and, in fact, the Court noted that "Defendant d[id] not

16CV2328-WQH(BLM)

address Plaintiff's argument that Defendant had a duty to preserve all relevant documents as of September 2016 when Plaintiff initiated this action." Id. at 9.

Next, with respect to the elements of spoliation, Plaintiff has not presented evidence supporting a finding of spoliation of financial data and emails. Mot. The Court finds that the first element of spoliation is satisfied as Defendants do not specifically address the first element and do not dispute that that they had control over their electronic financial data and that they had an obligation to preserve the data. Oppo. Defendants were on notice of the instant litigation when they received Plaintiff's demand letter in June 2016 and at the latest when the initial complaint was filed in September 2016. In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d at 1067 ("[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). Given that Plaintiff's complaint and FAC, both of which were filed and served prior to the June 2017 computer upgrade, set forth Plaintiff's claims in this matter, Defendants were aware of what evidence and documents were potentially relevant to the action. See Perez v. Vezer Indus. Professionals, Inc., 2011 WL 5975854, at *7 (E.D. Cal. Nov. 29, 2011) (finding that defendant, a small company, breached its duty to preserve discoverable information which arose when defendant was served with the complaint, and that the fact that defendant's computer crashed, was no excuse where defendant admitted that he did not back up any of his ESI) (citing Housing Rights Center v. Sterling, 2005 WL 3320739, at *3 (C.D. Cal. March 2, 2005) ("Defense counsel's apparent failure, in this electronic age, to verify with appropriate representatives of their client whether there was an e-mail backup system, cannot be countenanced."). Accordingly, the Court finds that Defendants had control over the evidence on their computers and an obligation to preserve it at the time it was lost during the computer upgrade.

The second element of spoliation, that the evidence was destroyed with a culpable state of mind, also is satisfied. While the Court does not find that there was bad faith with respect to the financial information, Defendants' decision to perform a computer upgrade without backing up any of the information was a conscious disregard of their preservation obligations and was, at the very least, negligent. Defendants do not provide any arguments or evidence to the

contrary. Oppo. See Net-Com Servs., Inc. v. Eupen Cable USA, Inc., 2013 WL 4007785, at *3 (C.D. Cal. Aug. 5, 2013) (finding at least a negligent spoliation of evidence where plaintiff stored its computer hardware and software systems in the garage of a home it rented out and the systems were damaged by the tenants along with the back-up drive after plaintiff's duty to preserve was in effect); see also Blankenship v. Superior Controls, Inc., 2014 WL 12659920, at *4 (E.D. Mich. Sept. 26, 2014) (finding plaintiff negligent when evaluating his culpable state of mind where plaintiff claimed that he lost all of his emails when he performed an operating system upgrade on a different computer at the time a litigation hold was in place and when plaintiff should have understood the importance of preserving documents and evidence.)

Because the Court finds that the destruction of the financial data in the computer upgrade was done with a negligent state of mind, the burden shifts to Plaintiff to demonstrate relevance and prejudice with respect to the data. See Cottle-Banks, 2013 WL 2244333, at *14 (negligent destruction of documents did not warrant adverse inference instruction or evidence preclusion where non-spoliating party failed to show relevance and thus was not prejudiced); see also Reinsdorf, 296 F.R.D. 604, 628 (C.D. Cal. 2013) ("when the destruction is negligent, relevance must be proven by the party seeking the sanctions."). Plaintiff has failed to do so. While Defendants lost documents in the computer upgrade, many of the documents should still be in in the possession of third parties over whom Defendants have control or from whom Defendants have a legal right to obtain the documents. Because the Court has again ordered Defendants to produce these documents, it is not clear that Plaintiff will not gain access to the relevant documents or information, that any spoliated documents that cannot be replaced will impair Plaintiff's ability to go to trial or interfere with the rightful decision of the case, or that Plaintiff will be prejudiced to a degree justifying evidentiary sanctions. Accordingly, the Court declines to recommend the use of an adverse jury instruction to sanction Defendants for their failure to preserve and produce the requested financial information.

    5.    Sanctions

Because the Court finds that Defendants destroyed relevant social media evidence, it must now consider the appropriate sanctions for such behavior. Plaintiff requests monetary

sanctions and adverse inference instructions.  As set forth above, the Court has considered the factors required for an adverse inference instruction and concludes that Defendants had an obligation to preserve the social medial evidence at the time the evidence was destroyed, the evidence was destroyed with a culpable state of mind (bad faith), and the evidence was relevant to Plaintiff's claims "such that a reasonable trier of fact could find that it would support that claim or defense." Sherwin-Williams Co., 2015 WL 4077732, at *2–3 (quoting Reinsdorf, 296 F.R.D. at 626); see also Saryan Decl. at Exhs. O, R.  Accordingly, the Court **RECOMMENDS** that the adverse inference instruction requested by Plaintiff that "the social media posts deleted were false advertising of products that compete with Plaintiff," be given.  Mot. at 16; see also Painter v. Atwood, 2014 WL 1089694, *9 (D. Nev. March 18, 2014) (finding an adverse inference appropriate when plaintiff "had an obligation to preserve her Facebook comments; she deleted the comments with a culpable state of mind, and the comments were relevant to Defendants' claim.").

The Court finds that this sanction will (1) properly penalize Defendants as it is their conduct that warrants sanctioning, (2) deter Defendants from destroying additional evidence, (3) place the risk of an erroneous judgment on Defendants who wrongfully created the risk, and (4) restore Plaintiff to the position it would have been in had Defendants not deleted the social media posts.  See In re Hitachi, 2011 WL 3563781, at *6 (citing Advantacare Health Partners L.P., 2004 WL 1837997 at *4).  Defendants were on notice that the posts at issue were relevant and acted in bad faith.  Id.  (citing Glover, 6 F.3d at 1329); see also Painter, 2014 WL 1089694, at 9 (finding an adverse inference regarding Plaintiff's deleted Facebook comments appropriate and noting that "[a]lthough Plaintiff's counsel may have failed to advise Plaintiff that she needed to save her Facebook posts and of the possible consequences for failing to do so, the deletion of a Facebook comment is an intentional act, not an accident, and the Court cannot infer that Plaintiff deleted Facebook comments . . . for an innocent reason").

Plaintiff also seeks monetary sanctions. Mot. at 16.  Because the Court is **RECOMMENDING** an evidentiary sanction, the Court declines to impose monetary sanctions

16CV2328-WQH(BLM)

based upon the spoliation of evidence or the need to file the spoliation motion.[14]

**B.    Conclusion & Recommendation**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) **FINDING** that Defendants spoiled social media evidence, (3) **GRANTING** Plaintiff's motion for an adverse inference instruction "that the social media posts deleted were false advertising of products that compete with Plaintiff," (4) **DENYING** Plaintiff's request for an adverse inference instruction that "the spoliated financial information would demonstrate proximate cause and commercial injury to Plaintiff," and (5) **DENYING** Plaintiff's request for monetary sanctions related to spoliation.

This Report & Recommendation is submitted to the United States District Judge William Q. Hayes case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>August 24, 2018</u>**.  The document should

---

[14] Plaintiff requests that if the Court in not inclined to grant the requested relief, that it consider remedies for Defendants' violation of Fed. R. Civ. P. 37(e).  Mot. at 16, n.3.  That rule provides sanctions for failing to preserve electronically stored information.  It states:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:  (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  For the reasons set forth above, the Court **DENIES** this request as to the missing financial information because it is not clear what evidence is missing or the extent of any prejudice.

16CV2328-WQH(BLM)

be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than September 7, 2018**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:  8/9/2018

Hon. Barbara L. Major
United States Magistrate Judge

16CV2328-WQH(BLM)