

FILED

FEB 15 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ MME _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NUTRITION DISTRIBUTION
LLC, an Arizona Limited
Liability Company,

                                    Plaintiff,

v.

PEP RESEARCH, LLC, a Texas
Limited Liability Company doing
business as International Peptide;
BRIAN REYNDERS, an
individual; FRED REYNDERS, an
individual; DOES 1 through 10,
inclusive,

                                    Defendants.

Case No.: 16cv2328-WQH-BLM

**ORDER**

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendants. (ECF No. 47).

## I.   PROCEDURAL BACKGROUND

On September 15, 2016, Plaintiff initiated this action by filing a complaint, alleging violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), against Defendants PEP Research LLC (PEP), Brian Reynders, and Fred Reynders. (ECF No. 1). On December 30, 2016, Plaintiff filed an amended complaint, the operative Complaint in

this action, alleging the same claim.[1]  Plaintiff alleges that Defendants' supplement company, a competitor of Plaintiff, engaged in false and misleading advertising of certain prescription-only drugs and synthetic peptides (the Products).  (ECF No. 9).  The Complaint states that Defendants falsely represent the Products as "research peptides and chemicals" that are "not for human consumption" and "intended for laboratory research only" (the Representations). *Id.* ¶ 1.  Plaintiff alleges the Representations are misleading because Defendants market and advertise the Products for personal use and consumption. *Id.* Plaintiff alleges the Representations are misleading because Defendants do not inform consumers that the Products are banned from sporting events and pose health and safety risks. *Id.*

On August 27, 2018, Defendants filed a Motion for Summary Judgment. (ECF No. 47).  Defendants contend that summary judgment is warranted because Plaintiff cannot demonstrate the Representations were false, misleading, material, or deceived consumers.

On September 18, 2018, Plaintiff filed a Response in Opposition. (ECF No. 60). Plaintiff asserts that genuine issues of triable fact exist as to the falsity of the Representations.  Plaintiff contends that in this case, it is unnecessary for Plaintiff to provide evidence of materiality or commercial injury.  Plaintiff asserts that Defendants raise individual liability and primary jurisdiction in bad faith, and that the Court should award Plaintiff attorneys' fees.  Plaintiff asserts that Brent Reynders engaged in intimidating conduct toward affiliates of Plaintiff, and that the Court should impose terminating sanctions against Defendants.[2]

On September 24, 2018, Defendants filed a Reply. (ECF No. 62).

On January 17, 2019, the Court held oral argument on the Motion. (ECF No. 74).

---

[1] Plaintiff's claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and Plaintiff's claims against Defendants Mastercard International Incorporated, Authorize.net, and Amazon Payments, have been dismissed. (ECF Nos. 15, 21).

[2] Brent Reynders is not a named defendant in this action.

## II. FACTS

Plaintiff provides the declarations and supporting exhibits of Robert Tauler, Plaintiff's counsel, and Kevin Smith, President and Managing Partner of Plaintiff. Attached to Tauler's declaration are screenshots from Defendants' website, showing the products for sale, and the descriptions related to the products. The screenshots state, for example, that one product has "undergone several recent studies . . . reveal[ing] rises in lean body mass and decreases in body fat," and "a considerable rise in strength, well being, along with healing possibilities"; another product "enhance[s] bone toughness as well as stop[s] weakening of bones"; and another product "decreases the risk and severity of atherosclerosis." (ECF No. 60-14 at 2; ECF No. 60-15 at 2; ECF No. 60-16 at 3). One of the webpages states:

> All customers represent and warrant that through their own review and study that they are fully aware and knowledgeable about the following:
> Their government regulations regarding the importation, purchase, possession and use of research products and other peptides.
> The health and safety hazards associated with the handling of our products in a research setting.
> That our products are NOT intended to be used as a food additive, drug, vitamin, supplement, cosmetic or any other inappropriate application. Such a sale would be otherwise denied.

(ECF No. 60-14 at 5). Other webpages state, "Safety Information: For Research Use Only. Not Intended for Diagnostic or Human Use. Information is for educational purposes and product is not intended to treat, cure, or diagnose any condition or disease" and "All products are intended for laboratory and research use only, unless otherwise explicitly stated. They are not intended for human ingestion, use, or for use in products that may be ingested." (ECF No. 60-15 at 4; ECF No. 60-16 at 5–6).

Attached to Tauler's declaration are transcript excerpts from the deposition of Brent Reynders. In response to the question, "Is it possible that you paid for these advertisements on worldclassbodybuilding.com?," the transcript shows that Reynders answered, "Anything is possible." (ECF No. 60-18 at 6). In response to the question "And what

3

about the peakmuscle.com? Is it possible that you posted advertisements on peakmuscle.com as well?," the transcript shows that Reynders answered, "Anything is possible. But I don't recall posting anything on there." *Id.*

Smith's declaration states that "Defendants' products are intended for human consumption," because the Products "are sold in liquid form in dropper vials, for easy oral use, along with the amount of liquid to take for an active oral dose." (Smith Decl. ¶ 7, ECF 60-2). Smith states that Defendants advertise to "bodybuilders, athletes, and fitness enthusiasts," using social media and terminology specific to that audience. *Id.* ¶¶ 8–9, 12–14. Smith states that "PEP omits all of the known negative harmful side effects of the products it sells." *Id.* ¶ 15. Attached to Smith's declaration is a social media post of a "[f]ree give away" by International Peptide. (ECF 60-8 at 1). Smith's declaration states this post was a promotion of Defendants' product, and that a customer of Defendants tagged an amateur bodybuilding competitor in the post. *Id.* ¶ 12; *see also* ECF 60-8.

## III. CONTENTIONS

Defendants contend that they are entitled to summary judgment because Plaintiff cannot carry its burden of proof on the elements of a Lanham Act claim. Defendants assert that Plaintiff cannot show the Representations are false or misleading. Defendants assert that the Representations clearly warn purchasers the Products are not for human consumption and intended for laboratory research only. Defendants assert that failures to disclose are not false advertising, and that a particular advertising forum cannot render the Representations "false" within the meaning of the Lanham Act. Defendants assert that Plaintiff cannot show materiality or consumer deception. Defendants further assert that the Representations state the Products are unsafe for human consumption, which tends to deter purchasers and narrow the potential customer base. Defendants assert that Plaintiff cannot show that the Representations caused lost sales or competitive injury.

In opposition, Plaintiff contends that genuine issues of fact exist as to the false or misleading nature of the Representations because the Products were advertised to bodybuilders. Plaintiff asserts that Defendants falsely advertise illicit drugs by using the

Representations as a disclaimers to evade law enforcement scrutiny. Plaintiff contends that the Representations are material because "consumers are naturally concerned about the consequences of taking illegal and harmful substances." (ECF No. 60 at 5). Plaintiff contends that literally false statements give rise to a presumption of deception, making evidence of consumer deception unnecessary. Plaintiff contends that a presumption of injury applies to a direct competitor whose misrepresentation tends to mislead consumers.

## IV. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A material fact is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The party moving for summary judgment "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex*, 477 U.S. at 323); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). For "an issue on which the nonmoving party bears the burden of proof," the movant discharges its summary judgment burden by "pointing out . . . an absence of evidence to support the nonmoving party's case"—not by "*negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 325; *see also Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010). The burden shifts to the nonmovant to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("[A] plaintiff must set forth

non-speculative evidence of specific facts, not sweeping conclusory allegations."). The nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255. A nonmovant "defeat[s] summary judgment" if "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation omitted).

## V.   DISCUSSION

A claim for false online advertising in violation of the Lanham Act requires the plaintiff to establish the following:

> [A] statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement.

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011).[3] A Lanham Act claimant may prove falsity by showing the statement was "literally false, either on its face or by necessary implication," or "literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

"[I]n assessing whether an advertisement is literally false, a court must analyze the message conveyed in full context." *Id.*; *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)). Courts recognize literal falsity by necessary implication when a consumer "will necessarily and unavoidably" receive a false message "from the product's name and advertising." *Novartis Consumer Health v. Johnson & Johnson*, 290 F.3d 578, 588 (3d Cir. 2002); *Design Res. v. Leather Indus. of Am.*, 789 F.3d 495, 502–03 (4th Cir. 2015) (stating "the contested conclusion" must "necessarily flow[] from the ad's statements" or be "logically necessary"); *see also Clorox Co. P.R. v. Proctor & Gamble,*

---

[3] The interstate commerce requirement of a Lanham Act false advertising claim is "virtually automatic for websites," as for the Representations in this case. *See id.*

228 F.3d 24, 35 (1st Cir. 2000) ("A claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.").

In *Southland*, the Court of Appeals concluded that a bar chart, showing the defendant's turfgrass grew slower than competitors', was literally false. 108 F.3d at 1137–38. The chart expressly used three months of growth data, and was placed near statements like "PROOF THAT BONSAI DWARF GROWTH HABITAT SAVES TIME AND MONEY," "less mowing," "reduced costs," "less clippings," and "slower growth." *Id.* 1138, 1144. The plaintiff's independent tests showed that the defendant's product was comparable to competitors', and that the chart data represented a "unique juvenile" period of slow growth. *Id.* The court stated that a reasonable juror could conclude the bar chart was intended to represent a year's worth of growth data, and determined the chart was literally false. *Id.* (citing *Castrol*, 987 F.2d at 941, 944 (advertising that "Pennzoil motor oil outperforms any leading motor oil against viscosity breakdown" was literally false when plaintiff set forth industry-accepted tests ranking Penzoil below competitors, and showed that defendant's tests measured viscosity loss rather than viscosity breakdown)); *see also Groupe SEB USA, Inc. v. Euro–Pro Operating, LLC*, 774 F.3d 192, 202 (3d Cir. 2014) (advertising that Shark steam irons were "# 1 MOST POWERFUL STEAM" and "MORE POWERFUL STEAM vs. Rowenta," a competitor, was literally false when plaintiff's tests showed "Rowenta steam irons either outperformed or performed as well as the Shark steam irons" because "the proximity of the two claims necessarily and unavoidably conveys a message that Shark steam irons offer the most powerful steam, even when compared to Rowenta steam irons"); *Church & Dwight Co., Inc. v. SDP Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 53, 56, 66 (2d Cir. 2016) (advertising for a home pregnancy test that displayed the word "pregnant" and a number of "weeks" was literally false because the test displayed weeks since ovulation, two weeks different than the medical profession's measure of pregnancy duration, and "a reasonable consumer

7

1 would have assumed" the test "was not giving a different number than a medical
2 professional would give").

3     However, "only an *unambiguous* message can be literally false. 'The greater the
4 degree to which a message relies upon the viewer or consumer to integrate its components
5 and draw the apparent conclusion . . . the less likely it is that . . . literal falsity will be
6 supported.'" *Novartis*, 290 F.3d at 587 (emphasis in original) (quoting *United Indus. Corp.*
7 *v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998)). An advertisement is not literally false
8 if consumers need extrinsic information, assumptions, or inferences to reach the false
9 conclusion. *See Novartis*, 290 F.3d at 588 ("[C]onsumers will only receive a message of
10 superior relief . . . if they assume that a product that provides 'Night Time' relief is more
11 effective than a product that provides 'Extra Strength' or 'Maximum' relief. The [Mylanta]
12 name and advertising alone do not require that this inference will be made."); *Schering–*
13 *Plough Healthcare Prods. v. Schwarz Pharma*, 586 F.3d 500, 513 (7th Cir. 2009)
14 ("Obviously *this* product . . . is prescription only, but it is not obvious, as [plaintiff]
15 contends, either from the labels or from the package inserts . . . that every other product
16 containing polyethylene glycol 3350 is prescription only."); *see also Caltex Plastics, Inc.*
17 *v. Elkay Plastics Co.*, 671 F. App'x 538, 539 (9th Cir. 2016) (concluding where plaintiff
18 submitted no tests or evidence that defendant's product did not meet the "81705 Spec," or
19 that defendant's tests were unreliable, statements that the product "met" the 81705 Spec
20 were not literally false). *Compare Oil Heat Inst. of Oregon v. Nw. Nat. Gas*, 708 F. Supp.
21 1118, 1122–23 (D. Or. 1988) (concluding factfinder could reasonably conclude ad
22 statements of "change filters twice yearly" and "change filters twice yearly; check & clean
23 oil lines & nozzles" were untrue for failure to disclosure material facts, where plaintiff
24 "produced evidence that routine maintenance of gas furnaces requires more than changing
25 filters twice yearly"), *with Chem. Fabrics Corp. v. Textiles Coated, Inc.*, 111 F.3d 143
26 (Fed. Cir. 1997) (unpublished) ("CFC does not show how TCI's omission of negative test
27 results created a literal falsity.").

28

When a plaintiff has shown falsity, deception may be presumed if the defendant intended to deceive customers. *See William H. Morris Co. v. Grp. W. Inc.*, 66 F.3d 255, 258 (9th Cir. 1995); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989); *see also Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1367 (Fed. Cir. 2013) (stating "no extrinsic evidence of consumer confusion is required" to show deception for literally false statements) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)). If "a statement is not literally false and is only misleading in context," then "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris*, 66 F.3d at 258; *see also Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ("[I]f an advertisement is not false on its face . . . the plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what message was conveyed that was sufficient to constitute false advertising.").

When a plaintiff has shown falsity, the burden to prove materiality may be reduced or eliminated. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers."); *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991) ("[A]ctually false claims are presumed material.") (citing *PPX Enterps., Inc. v. Audiofidelity Enterps., Inc.*, 818 F.2d 266, 272 (2nd Cir. 1987)); *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.') (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). *But see Obesity Research Institute v. Fiber Research Int'l*, 310 F. Supp. 3d 1089, 1125 ("The Court is not convinced that the Ninth Circuit has likewise determined that materiality is presumed for actually false statements, nor has [the movant] cited to a Ninth Circuit case stating this."). Absent a presumption, plaintiffs prove materiality with evidence such as surveys

9

or declarations. *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012) (accepting as proof of materiality a consumer declaration stating his purchase was "based on Skyride's online representations . . . that he could redeem the certificates at Skydive Arizona" when those representations were false); *POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at \*11 (C.D. Cal. July 17, 2008) (finding materiality when bottle prominently, falsely, stated contents were 100% pomegranate juice, and when plaintiff set forth evidence of consumer inquiries, marketing research, and testimony showing the marketing importance of the 100% pomegranate label), *aff'd*, 362 F. App'x 577 (9th Cir. 2009); *Obesity Research Institute*, 310 F. Supp. 3d at 1125 (denying summary judgment in favor of movant who relied on materiality and deception presumptions and did not provide evidence to contradict nonmovant's assertion that "the difference between the true and false statements is not material to a consumer").

When a plaintiff has shown the "defendant's misrepresentation has the tendency to deceive consumers," a presumption of commercial injury may apply if "defendant and plaintiff are direct competitors." *TrafficSchool.com, Inc.*, 653 F.3d at 826–27. *But see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138–40 (2014) (requiring "a plaintiff [to] plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations" and using proximate causation, rather than direct or indirect competition, to determine whether an injury supports Lanham Act standing); *Obesity*, 310 F. Supp. 3d at 1127 (accepting as evidence of injury declarations stating that the false statements shut the competitor out of the market and risked damage to the competitor's reputation).

In this case, in order to prevail on the Lanham Act claim, Plaintiff must prove the Representations are literally false or, if the Representations are literally true, Plaintiff must provide evidence showing that the Representations are likely to mislead or confuse consumers. Plaintiff must further prove the Representations are material, deceptive, and caused commercial injury. Plaintiff may benefit from a presumption of deception only by showing that Defendants intended to deceive consumers, or showing that the

Representations are false. *See William H. Morris*, 66 F.3d at 258; *see also Hall*, 705 F.3d at 1367. Plaintiff may benefit from presumptions of materiality or injury only by showing that the Representations are literally false, or by providing evidence that the Representations tend to mislead consumers. *See TrafficSchool.com, Inc.*, 653 F.3d at 826–27; *Obesity Research Institute*, 310 F. Supp. 3d at 1125, 1127. The evidence in the record shows that Defendants' webpages described the benefits of the Products along with labels of "for research purposes only" and "not for human consumption." To demonstrate the Representations are facially false, there must be evidence showing it is false to state the Products are only for research purposes and not to be consumed by humans. Plaintiff asserts that the Products create health risks, which does not tend to show the falsity of stating that the Products are only for research purposes and not to be consumed by humans. *See Design*, 789 F.3d at 503 ("[T]o arrive at this conclusion, one has to follow [Plaintiff's] winding inquiry far outside the face of the ad, which the concept of literal falsity by necessary implication does not allow us to do. And, one has to be willing to accept that the ad means the opposite of what it says, an interpretation we find insupportable."). The record contains no evidence to establish the proper use of the Products. To demonstrate falsity by necessary implication, there must be evidence showing that a particular unambiguous conclusion "necessarily flow[s]" from the Representations in the context of the Product marketing, and that the conclusion is false. *See Design*, 789 F.3d at 503; *see also Novartis*, 290 F.3d at 587 ("[O]nly an *unambiguous* message can be literally false."). There is no evidence in the record demonstrating an unambiguous message necessarily implied by the Representations in the context of the Product marketing. Even an implied unambiguous message could be identified, Plaintiff does not provide evidence showing that any such message is literally false, is intended to deceive, or has the potential to mislead consumers. The Court finds that the record cannot support a finding of falsity or any presumptions related to deception, materiality, or injury.

The record does not contain evidence supporting the Lanham Act elements of deception, materiality, or injury. The record does not contain surveys, market research, or

16cv2328-WQH-BLM

other evidence to prove that consumers are or could be deceived by the Representations. The record does not contain evidence showing that the Representations tend to influence purchasing decisions, to support materiality. The record does not contain evidence showing Plaintiff suffered commercial injury, or showing a connection between such injury and the conduct of Defendants. Defendants have satisfied their burden to "point out . . . an absence of evidence to support the non-moving party's case." *See Sluimer*, 606 F.3d at 586. The burden shifts to Plaintiff to "rais[e] a disputed issue of material fact." *See Horphag*, 475 F.3d at 1035.

Crediting Plaintiff's evidence, the record shows that Defendants advertised to bodybuilders online. The record shows that Defendants' webpages contain the Representations, describe the benefits of the Products, sell the Products with droppers and dosage information, and do not contain information about health risks or anti-doping bans. Plaintiff's evidence does not raise an issue of material fact regarding whether the Representations and product labeling unambiguously give rise to a logically necessary conclusion. Plaintiff's evidence does not raise an issue of material fact regarding whether any such conclusion or the Representations themselves are factually inaccurate, or that the data underlying Defendants' statements is unreliable. *See Southland*, 108 F.3d at 1144; *Caltex*, 671 F. App'x at 539. Plaintiff's evidence does not raise an issue of material fact regarding whether the Representations are literally false, intended to deceive consumers, or have the tendency to mislead consumers.[4] Plaintiff fails to raise a genuine issue of material fact as to the element of falsity, or as to any presumptions of deception, materiality, or injury.

---

[4] To the extent Plaintiff argues that its lack of evidence is attributable to Defendants' shortcomings during the discovery process, Plaintiff fails to "show (1) . . . set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *See State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

1     Plaintiff has failed to provide evidence raising an issue of material fact regarding the

2    necessary proof of deception, materiality, or injury, absent presumptions. Plaintiff's

3    evidence does not raise an issue of fact regarding whether consumers would be confused

4    by the Representations. Plaintiff's evidence does not raise an issue of fact regarding

5    whether the Representations influence a consumer's decision to purchase the Products.

6    Plaintiff's evidence does not raise an issue of fact regarding whether Plaintiff suffered

7    commercial injury. The undisputed facts show that Plaintiff lacks evidence to support the

8    Lanham Act claim. *See Schering–Plough*, 586 F.3d at 513 ("[Plaintiff] cannot just intone

9    'literal falsity' and by doing so prove a violation of the Lanham Act.").[5] Based on the

10   evidence in the record, "a reasonable juror drawing all inferences in favor" of Plaintiff

11   could not return a verdict in Plaintiff's favor. *See Zetwick*, 850 F.3d at 441.

12     Plaintiff has failed to provide admissible evidence beyond the pleadings showing a

13   genuine issue of material fact as to the falsity of Defendants' statements. *See Horphag*,

14   475 F.3d 1035. Summary judgment on the Lanham Act claim in favor of Defendants is

15   appropriate.

16   **VI.   CONCLUSION**

17     IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (ECF

18   No. 47) is granted.

19

20   DATED: *2/15/19*

21                        **WILLIAM Q. HAYES**

22                        United States District Judge

23

24

25

26

27

---

28   [5] The Court does not reach issues regarding evidence of business competition, lost sales, individual liability, unclean hands, or primary jurisdiction.